## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCO CILLUFFO, JEFFREY QUARLES, PAMELA DOZE, CARL JEAN-LOUIS, and RANDALL LAUREANO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUBARU OF AMERICA, INC. and SUBARU CORPORATION,<br><br>Defendants. | Case No. 1:23-cv-01897-RBK-MJS<br><br>**JURY TRIAL DEMANDED**<br><br><br>**<u>CLASS ACTION</u>** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Marco Cilluffo, Jeffrey Quarles, Pamela Doze, Carl Jean-Louis, and Randall Laureano ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to them and on information and belief as to all other matters, by and through undersigned counsel, hereby bring this Class Action Complaint against Defendants Subaru of America, Inc. ("SOA") and Subaru Corporation ("SC") (together "Subaru" or "Defendants").

## <u>INTRODUCTION</u>

1.      Plaintiffs bring this action on behalf of themselves, and all similarly situated persons in the United States who are current or former owners or lessees

1

of 2019-2023 Subaru Outback, Legacy, Forester, and WRX vehicles ("Class Vehicles" or "Vehicles")[1] that have a Subaru Starlink infotainment system ("Starlink" or "Starlink system") that has been rendered partially or wholly inoperable due to a defect in the Starlink system.

2.      Each Class Vehicle is equipped with a Starlink system. The Starlink system is a touchscreen multimedia and video interface—often referred to as an in-car entertainment or in-vehicle infotainment system—in the Class Vehicles' center consoles that includes, among other things: the visual for the backup camera, controls for the audio and radio system, cell phone connectivity, weather information, the navigation system, and more. The main physical component of the infotainment system is called the head unit. On information and belief, the same generation of head unit is equipped in all Class Vehicles.

3.      Below is what Subaru promises its customers with respect to the Starlink system[2]:

---

[1] Plaintiffs reserve the right to modify the vehicle models and model years included in the definition of Class Vehicles as more information becomes available during discovery.

[2] https://www.subaru.com/vehicle-info/subaru-starlink.html



STARLINK brings multimedia content, smartphone connectivity, seamless navigation, extra safety, and everyday convenience to Subaru vehicles. This suite of on-board technology helps make every drive more entertaining, confident, and enjoyable.

# STARLINK Safety and Security

STARLINK Safety and Security helps keep you and your Subaru safe whether you're in your vehicle, at your computer, or on your mobile device. Safety and Security services include Automatic Collision Notification, Enhanced Roadside Assistance, Stolen Vehicle Recovery, and the added convenience of Remote Services[1].

# STARLINK Multimedia

STARLINK Multimedia connects you and your Subaru to music, news, navigation, podcasts, and more. Wireless Bluetooth® pairing and hands-free smartphone operation allow for safe and easy access to your favorite apps and content.

4.    Contrary to the above statements, which appear directly on Subaru's website, the Starlink system does not provide "seamless navigation," "extra safety," and "everyday convenience"; does not "help[] make every drive more [. . .] confident, and enjoyable"; does not "help[] keep you and your Subaru safe"; and does not provide "safe and easy access" to connected features. Instead, Subaru sells and leases Class Vehicles equipped with defective Starlink systems that fail intermittently or altogether, causing serious inconvenience and safety concerns for lessees and owners, their passengers, and other drivers on the road.

5.    As discussed in more detail below, the Starlink system suffers a defect that causes the infotainment system to freeze, become non-responsive, experience "ghost touch" or phantom input, shut off, reboot, work intermittently or not at all, and suffer other malfunctions, causing great inconvenience and safety concerns. This defect and its attendant manifestations present a safety defect due to its distracting

and frustrating effects on occupants as well as its impact on Vehicles' safety features. A Starlink system that is rebooting, shut off, or suffering from other malfunctions often results in the disabling of safety features, including EyeSight, which Defendants advertise as a life-saving feature that "scan[s] the road for unanticipated dangers," "monitors traffic movement, optimizes cruise control, and warns you if you sway outside your lane", "appl[ies] full braking force in emergency situations, helping you avoid or reduce frontal impacts."[3] On information and belief, these problems are all related to the same defect.

6.     Subaru is aware of this problem. Subaru learned of the defect through pre-release Vehicle testing including with respect to the Starlink system, and such testing replicated actual consumer use of the Starlink system over variable intervals of time. Because the defect often manifests so quickly in Class Vehicles, Subaru's pre-sale testing of the Vehicles necessarily would have revealed the defect to it.

7.     Subaru's knowledge of the defect is also supported by related service bulletins acknowledging the issue; by the numerous consumers who have complained about the issue on the National Highway Traffic Safety Administration (NHTSA) website and on other websites such as Subaru message boards; and by the consumers who have brought in their Class Vehicles for repairs related to the issue. Subaru's service bulletins reflect that it has taken several steps to try and fix some

---

[3] https://www.subaru.com/eyesight.html.

of the issues in the Starlink system, but it has acknowledged that some of the issues will likely require display screen replacement. Subaru customers who present their Vehicles for evaluation or a repair at Subaru's dealerships are often told that the defect is a known issue.

8.    Subaru's attempts to remove the defect to date have failed. Class Vehicle owners and lessees who take their Vehicles to dealerships have received repair attempts or software updates that do not fix the problems or receive replacement head units subject to the same defect. Worse still, consumers routinely are forced to pay for a repair or attempted repair out of their own pockets, only to experience the issues persisting.

9.    Subaru is no stranger to issues with its Starlink system and should have been aware of its vulnerabilities. Indeed, Subaru previously settled a class action lawsuit in 2019 relating to similar issues in model year 2017 and 2018 Subaru vehicles. *See Udeen, et al. v. Subaru of America, Inc., et al.*, Case No. 1:18-cv-17334 (D.N.J. June 30, 2020) (granting final approval to class action settlement between plaintiffs and Subaru relating to similar defect in Starlink system in 2017 and 2018 Subaru vehicles) ("*Udeen*"). The *Udeen* litigation specifically dealt with issues in the Starlink system head unit in 2017-2018 Impreza and 2018 Forester, Outback, Legacy, Crosstrek, and BRZ vehicles.

10.    The Starlink system defect has caused many Class Vehicle owners and lessees significant inconvenience and the loss of use of key features. Many owners and lessees have had to take their Vehicles to the dealership, often on multiple occasions, and nevertheless continue to have problems with their Starlink systems. Some owners have had their head units replaced only to find that the issues persist. Many consumers have paid hundreds or thousands of dollars at their own expense to replace the Starlink system's head unit.

11.    To redress the harms to Plaintiffs and class members, Plaintiffs bring claims for violations of Arizona, New York, New Hampshire, Washington, and California state consumer protection statutes, breaches of express and implied warranties, common law fraud, and unjust enrichment.

12.    The allegations herein are based on personal knowledge as to Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## **JURISDICTION AND VENUE**

13.    The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2)(A) because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed class member is of diverse citizenship from Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000),

excluding interest and costs. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.    The Court has personal jurisdiction over Subaru and venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, Subaru's principal place of business is in this District, and Subaru conducts substantial business in this District.

15.    At all pertinent times, Subaru was engaged in the marketing, advertisement, sale, and lease of the Class Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

**Plaintiffs**

***Plaintiff Marco Cilluffo***

16.    Plaintiff Marco Cilluffo is a resident of the state of New Hampshire.

17.    In or about December 2021, Plaintiff purchased a new 2021 Subaru WRX from Prime Subaru, an authorized Subaru dealer and repair center located in Manchester, New Hampshire.

18.    Plaintiff purchased his Vehicle for personal, family, or household use.

19.    Shortly after purchase, the Starlink system in Plaintiff's Vehicle began freezing, lagging, blacking out, rebooting, and failing to connect or remain connected with Plaintiff's phone. Within six months after purchasing the Vehicle,

Plaintiff Cilluffo took his vehicle in for service at Prime Subaru and informed the dealership of the problems he was having with the Starlink system. In or about August 2022, Plaintiff Cilluffo took his vehicle to Granite Subaru, in Hudson, New Hampshire, and reported the same problems. On both occasions, he was told there was nothing the dealerships could do to address the issues. Plaintiff Cilluffo continues to experience the Starlink system defect.

20.    At the time of purchasing his Vehicle, Plaintiff Cilluffo did not know that his Vehicle was equipped with a defective Starlink system. Had Subaru disclosed this on its website, through its dealerships, in its warranty manuals, or elsewhere prior to Plaintiff purchasing his Class Vehicle, Plaintiff would not have purchased his Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Defendants to provide the full picture of information regarding his Vehicle and relied upon the idea that Defendants would not withhold material information about the Vehicle. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

### *Plaintiff Jeffrey Quarles*

21.    Plaintiff Jeffrey Quarles is a permanent resident of the state of Washington.

22.    In or about September 2019, Plaintiff purchased a new 2019 Subaru Forester from Rairdon's Subaru of Auburn, an authorized Subaru dealer and repair

center located in Auburn, Washington.

23.    Plaintiff purchased his Vehicle for personal, family, or household use.

24.    Shortly after purchase, the Starlink system in Plaintiff's Vehicle began freezing, lagging, failing to power on, exhibiting symptoms of "ghost touch", failing to connect and remain connected with Plaintiff's phone. Plaintiff also experiences a significant delay in the operation of his backup camera that requires him to wait a long time until the camera turns on, creating a safety concern while backing up. During numerous visits to Rairdon's Subaru from January 2020 to April 2022, Plaintiff Quarles informed the dealership of the problems he was having with the Starlink system, yet he was told there was nothing they could do to address his issues and the Starlink system in his Vehicle had the most up to date software and hardware. Plaintiff Quarles still continues to experience the Starlink system defect.

25.    At the time of purchasing his Vehicle, Plaintiff Quarles did not know that his Vehicle was equipped with a defective Starlink system. Had Subaru disclosed this on its website, through its dealerships, in its warranty manuals, or elsewhere prior to Plaintiff purchasing his Class Vehicle, Plaintiff would not have purchased his Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Defendants to provide the full picture of information regarding his Vehicle and relied upon the idea that Defendants would not withhold material

information about the Vehicle. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

*Plaintiff Pamela Doze*

26.    Plaintiff Pamela Doze is a resident of the state of Arizona.

27.    In or about April 2022, Plaintiff purchased a new 2022 Subaru Outback from Findlay Subaru, an authorized Subaru dealer and repair center located in Prescott, Arizona.

28.    Plaintiff purchased her Vehicle for personal, family, or household use.

29.    Soon after purchasing her Vehicle, Plaintiff noticed issues with the Starlink system. Several times a week, she experiences music cutting in and out, radio channels jumping, screen going all black, and EyeSight getting disabled. Shortly after noticing these issues, Plaintiff Doze informed the Findlay Subaru of the problems with the Starlink system when she took her Vehicle in for a routine visit. In or about January, Plaintiff Doze mentioned the problem again at the six-month service appointment at the same dealership. Plaintiff was informed that the dealership is aware of the problem and that there was not a fix for her issues at that time. Plaintiff Doze continues to experience the Starlink defect in her Vehicle.

30.    At the time of purchasing her Vehicle, Plaintiff Doze did not know that her Vehicle was equipped with a defective Starlink system. Plaintiff Doze relied on Subaru's misrepresentations and omissions regarding the functionality of the

11

Starlink system in purchasing her Vehicle. Had Subaru disclosed the Starlink system defect on its website, through its dealerships, in its warranty manuals, or elsewhere prior to Plaintiff purchasing her Class Vehicle, Plaintiff would not have purchased her Vehicle, or would not have paid the purchase price that she did. Plaintiff relied upon Defendants to provide the full picture of information regarding her Vehicle and relied upon the idea that Defendants would not withhold material information about the Vehicle. As a result, Plaintiff received less than what she paid for her Vehicle and did not receive the benefit of her bargain.

### *Plaintiff Carl Jean-Louis*

31.    Plaintiff Carl Jean-Louis is a resident of the state of New York.

32.    In or about July 2019, Plaintiff leased a new 2019 Subaru WRX from Hassett Subaru, an authorized Subaru dealer and repair center located in Wantagh, New York.

33.    Near the end of the 3-year lease, Plaintiff Jean-Louis purchased the Vehicle in or around February 2022.

34.    Plaintiff uses his Vehicle for personal, family, or household use.

35.    Soon after leasing the vehicle, Plaintiff Jean-Louis noticed the Starlink system in his Vehicle would freeze upon activating streaming applications such as Amazon Music, SoundCloud, and Apple Music and that there is a 10-15 second delay in stereo powering on experienced after starting car. Plaintiff also experiences

issues with Bluetooth connection. Plaintiff experiences these issues several times a week. In or about October 2019, Plaintiff Jean-Louis informed the dealership of his problems with the Starlink system during a service appointment. Plaintiff Jean-Louis continues to experience the Starlink system defect.

36.     At the time of leasing his Vehicle, and then purchasing his Vehicle off the lease, Plaintiff Jean-Louis did not know that his Vehicle was equipped with a defective Starlink system. Had Plaintiff Jean-Louis known that the Class Vehicles were defective, he would not have purchased the Vehicle. Plaintiff relied upon Defendants to provide the full picture of information regarding his Vehicle and relied upon the idea that Defendants would not withhold material information about the Vehicle. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

### *Plaintiff Randall Laureano*

37.     Plaintiff Randall Laureano is a resident of the state of California.

38.     In or about February 2019, Plaintiff purchased a new 2019 Subaru WRX STI from Subaru Pacific, an authorized Subaru dealership located in Hawthorne, California. Prior to purchase, Plaintiff inspected the Monroney window sticker posted by Subaru on his Vehicle, which did not mention the Starlink issues.

39.     Plaintiff uses his Vehicle for personal, family, or household use.

13

40.     Plaintiff began experiencing the Starlink system defect shortly after purchasing the Vehicle. The Starlink system in Plaintiff Laureano's Vehicle randomly and frequently freezes and restarts. This happens as few as once or twice per week, up to multiple times per week. When the Starlink system reboots, it also switches the audio input/source.

41.     Plaintiff called Subaru Pacific approximately three months after he bought his vehicle to report the problems he was experiencing and request help with resolving the issues. The dealership informed him the issues he was having with Starlink were "normal," and took no measures to remedy the Starlink system issues.

42.     At the time of purchasing his Vehicle, Plaintiff Laureano did not know that his Vehicle was equipped with a defective Starlink system. Plaintiff Laureano relied on Subaru's misrepresentations and omissions regarding the functionality of the Starlink system in purchasing his Vehicle. Had Subaru disclosed the Starlink system defect on its website, through its dealerships, in its warranty manuals, or elsewhere prior to Plaintiff purchasing his Vehicle, Plaintiff would not have purchased the Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Defendants to provide the full picture of information regarding his Vehicle and relied upon the idea that Defendants would not withhold material information about the Vehicle. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

14

**Defendants**

43.    Defendant Subaru Corporation (formerly known as Fuji Heavy Industries, Ltd.) is a Japanese corporation with its principal place of business in Tokyo, Japan. Subaru Corporation is engaged in the business of designing, manufacturing, warranting, marketing, advertising, selling, and servicing Subaru vehicles around the world, including through a network of more than 600 dealerships in the United States.

44.    Defendant Subaru of America, Inc., is a New Jersey corporation with its principal place of business located in Camden, New Jersey. Subaru of America operates as a wholly owned U.S. sales and marketing subsidiary of Defendant Subaru Corporation. It distributes, advertises, markets, sells, warrants and services Subaru vehicles in the United States.

45.    The design, manufacture, distribution, service, repair, modification, and installation of the Starlink system and other components within the Class Vehicles were controlled exclusively by Subaru Corporation, Subaru of America, and their agents and affiliates.

46.    There exists, and at all relevant times existed, a unity of ownership between Subaru Corporation, Subaru of America, and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

47.    Subaru of America communicates with Subaru Corporation concerning virtually all aspects of the Subaru products Subaru of America distributes, sells, warrants, and services within the United States, including appropriate repairs for defects and whether Subaru will repair defective parts and assemblies.

48.    Subaru Corporation and Subaru of America jointly develop sales and marketing materials, advertisements, owner's manuals, warranty booklets, and maintenance recommendations and schedules for the Class Vehicles, as well as Technical Service Bulletins that Subaru issues to authorized dealerships to address known defects.

49.    Subaru Corporation and Subaru of America also jointly design, determine the substance of, and affix to Subaru vehicles the window stickers visible on every new Subaru vehicle offered for sale at their authorized dealerships. Subaru controls the content of these "Monroney" stickers—its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Subaru are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. § 1231 *et seq*., which, among other things, prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

50.    Defendants engage in continuous and substantial business in the state of New Jersey.

## **FACTUAL BACKGROUND**

51.    Over the last two decades, in-vehicle infotainment systems have become ubiquitous in new vehicles. These systems attract buyers and lessees who want to manage available technology while on the road, while minimizing distractions, and maximizing safety. Infotainment systems are essentially the gateway between the user and the vehicle's safety, navigation, communications, entertainment, and smart phone connectivity features in the vehicle.

52.    Starlink is Subaru's infotainment system. It is a touchscreen multimedia and video interface in the center console of Subaru's vehicles that includes the visual for the backup camera, controls the audio and radio system, cell phone connectivity, weather information, navigation, and more. Drivers can connect their smart phone to the Starlink system via Bluetooth, Apple CarPlay, or Android Auto. The Starlink infotainment system and touchscreen are depicted below[4]:

---

[4] https://www.subaru.com/vehicle-info/subaru-starlink.html



53.    The Class Vehicles feature an updated Starlink system from previous model years, which featured the Harman Gen 3 head units that were the subject of the *Udeen* litigation. On information and belief, the updated Starlink system for the Class Vehicles is manufactured by Japanese supplier Denso. The newer Denso head units in the Class Vehicles are claimed to have "cured" the Starlink system issues with the previous Harman Gen 3 head units.[5]

54.    The Starlink system features prominently in Defendants' marketing and advertising for Class Vehicles. For example, Subaru's website contains numerous advertisements and videos demonstrating the Starlink system operating with ease.[6]

---

[5] https://www.gearpatrol.com/cars/a623615/subarus-new-infotainment-system-cures-the-brands-worst-problem/.
[6] https://www.subaru.com/subaru-starlink/starlink-multimedia.html.

The website claims that Starlink do or provide all of the following: "seamless navigation," "extra safety," "everyday convenience," "help[] make every drive more [. . .] confident, and enjoyable," "help[] keep you and your Subaru safe," provides "safe and easy access" to connected features; and "offers advanced connectivity."[7]

55.    None of these statements are reflective of reported driver experiences or Starlink's performance. The Starlink system suffers from a range of issues caused by a defect in the infotainment system, including system freezing and re-booting, shutting off, audio skipping when connected to Bluetooth, radio channels skipping, non-responsive touch screen, detection of phantom or "ghost" inputs on the touch screen, and screen flashing, among other manifestations and malfunctions.

56.    Beyond severe inconvenience, the defect in the Starlink system presents a safety issue. Rebooting, freezing, and non-responsive infotainment screens can pose a driver distraction. This can also impact operability of connected features, including the backup camera, which is a critical safety feature. If a backup camera screen freezes or the system re-boots or shuts off during a backup, Class Vehicle owners and lessees who rely on backup camera screen may not realize that the displayed rear view is not in real time (if frozen) or may lose the camera view (if the system re-boots or goes blank) and may hit a pedestrian or experience a collision.

_____

[7] *Id.*; https://www.subaru.com/vehicle-info/subaru-starlink.html.

57.    Back-over crashes kill hundreds of people each year and injure thousands more.[8] Recognizing the danger posed by back-over crashes, in 2008 Congress passed the Cameron Gulbransen Kids Transportation Safety Act of 2007, requiring regulators to enact measures requiring the adoption of technology to improve rearview visibility, which was finally embodied in Federal Motor Vehicle Safety Standard number 111. The Cameron Gulbransen Kids Transportation Safety Act of 2007 states that the reason for requiring a rearview camera is "to reduce death and injury resulting from backing incidents, particularly involving small children and disabled persons." Pub. L. No. 110-189, 122 Stat. 639, 640 (2008). Accordingly, functioning backup cameras are a requirement of baseline vehicle functionality and a minimum level of quality in the Vehicles.

58.    Skipping radio stations, phantom input, non-responsiveness to touch screen input, and system re-booting, freezing, flashing, and failing also create driver distraction and divert a driver's focus from the road, posing additional safety risks.

59.    Class Vehicle owners and lessees who experience the defect are without a functioning in-vehicle infotainment system. And during the time in which Vehicle owners and lessees take their Subarus in for service or a repair, they are left without

---

[8] *See* Nathan Bomey, *Backup cameras now required in new cars in the U.S.*, USA TODAY (May 2, 2018, 8:14 AM), https://www.usatoday.com/story/money/cars/2018/05/02/backup-cameras/572079002/.

access to their Vehicles. If a replacement head unit is installed, it frequently experiences the same issues, because Defendants have not fixed the defect.

60.    Some owners and lessees report that when they take their defective Subaru in for a repair, replacement head units are not available due to a backorder. Consumers whose Vehicles are out of warranty are also told they will be responsible for the cost of replacement, which can be thousands of dollars.

61.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of message boards and other websites where consumers have complained of the exact same head unit defect with the Class Vehicles.

62.    The following are a handful of the numerous complaints submitted on the NHTSA website and on other websites and forums by Class Vehicle owners[9] (all sic):

From NHTSA, Outback 2019, 1/18/2023[10]

The contact owns a 2019 Subaru Outback. The contact stated that while driving at various speeds, or while the vehicle was parked, the Infotainment system and screen made abnormal sounds with the screen flashing. The contact stated that the Navigation and Bluetooth also malfunctioned. The vehicle was taken to a dealer where the failure was diagnosed as a malfunctioning audio unit that needed to be replaced. The contact stated that the repairs were not completed because the parts

---

[9] The following complaints are reproduced as they appear online. Any typographical errors are attributable to the original author.
[10] https://www.nhtsa.gov/vehicle/2019/SUBARU/OUTBACK/SW/AWD.

were on backorder. The manufacturer was not made aware of the failure. The approximate failure mileage was 34,000.

From NHTSA, Outback 2019, 2/20/2020[11]

APPLE CARPLAY AND STARLINK WILL FREEZE AND MAKE A LOUD "RINGING SOUND" UNTIL VEHICLE IS TURNED OFF AND TURN BACKED ON.

From NHTSA, Outback 2019, 1/11/2019[12]

NAVIGATION SYSTEM FAILURE! I HAVE 3200 MILES ON MY 2019 OUTBACK AND SINCE DAY 1 HAVE HAD PROBLEMS USING THE NAV SYSTEM. THE SYSTEM FREEZES UP COMPLETELY CAUSING EVERYTHING NOT WORK RADIO BACK UP CAMERA ETC. SYSTEMS STAYS ON AT NIGHT DRAINING BATTERY. IT SPORADICALLY WORKS AND WORKS LESS AND LESS EVERY DAY HAD A DEAD BATTERY ALREADY ON A 2019 VEHICLE. *TR

From NHTSA, Outback 2020, 6/2/2022[13]

Starlink Head System/software malfunctions while driving. This shuts down all safety systems, back up camera, radio. Heating system cannot be controlled while shut down. System restarts automatically after a few minutes but settings, etc may need to be restored. This creates a distraction that could lead to a collision or loss of vehicle control. Investigation reveals that many have this problem with the 11.6" Starlink display. A recall should be initiated for repair/replacement of problem components. Note that two software updates have been completed at the dealer to correct this problem to no avail.

From NHTSA, Outback 2020, 3/18/2022[14]

---

[11] *Id.*

[12] *Id.*

[13] https://www.nhtsa.gov/vehicle/2020/SUBARU/OUTBACK/SUV/AWD.

[14] *Id.*

Head unit shuts off while driving with no warning, and no clear cause. All safety features shut off including Eyesight and rear brake assist (shows as off in instrumental panel). It has happened multiple times in the past several months ( at least seven times) Head unit then appears to restart while underway, as if I had just entered and started the vehicle. Contacted dealer who said "the radio sometimes shuts off". I explained that it was the entire head unit and safety features. It was simply left with them saying they have know of it happening, but no action or follow up was recommended. Time of incident is an estimate. Electronics seem to be slow to start when vehicle is first started. Was not able to get photos while driving.

From NHTSA, Outback 2020, 6/24/2021[15]

The main control module goes completely blank while driving, eventually rebooting itself. Just recently I have documented blanking on April 9th, May 1, May 9, May 30, and June 13. One instance of the voice for navigation going silent on May 14 also occurred. The module was replaced today and on the way home from the dealership, it went blank again.

From NHTSA, Outback 2021, 9/13/2022[16]

Vehicle infotainment system refused to start up without long delay (20 seconds or so) preventing various safety systems from initializing. This has been a recurring problem with this vehicle for two years.

From NHTSA, Outback 2021, 9/20/2022[17]

The infotainment system is so buggy and slow it's dangerously distracting. It crashes all the time and takes a few minutes to reboot which is not good when you're using navigation. The volume randomly will go to 100% and the only way to fix it is to restart the car. I've had it happen maybe 10 times. It's very startling and it's painful to the ears. The most dangerous problem with the infotainment system, however, is how inconsistently slow it is. When you tap to open the HVAC menu,

---

[15] *Id.*

[16] https://www.nhtsa.gov/vehicle/2021/SUBARU/OUTBACK/SUV/AWD.

[17] *Id.*

for example, it can take 1-45 seconds to open. That means you have to keep your eyes off the road waiting for a response. If you don't, the menu disappears right away. Then when you're waiting for a response, the driver monitor starts beeping loudly and flashes "Stay Alert". Even Subaru's own safety systems think the response time is unacceptable. I called Subaru about the issue but their primary purpose just seems to be deflecting complaints and and gaslighting. We've been expecting fixes for years and it never comes. Either Subaru doesn't know how to fix it or they don't want to. The system falls under the 3/36 warranty which means that by the time the find a fix, most of the cars won't be covered.

From NHTSA, Outback 2021, 6/26/2022[18]

On multiple occasions I have had the infotainment system (the touchscreen) either freeze, go completely blank, or reset itself while driving. Most often this has happened while using Apple Car Play but that's not always the case. When this occurs, I also get a message that EyeSight is not available. While this has not caused me to have an accident the potential is there. I have had the screen go blank while using navigation in an unfamiliar area, I've had it go blank while driving down the highway. It's very distracting and you can easily miss your exit or worse. Subaru has no fix for this other than updating the software approximately every 6 months in hopes it will solve things. To me this is totally unacceptable.

From NHTSA, Outback 2021, 4/18/2022[19]

I believe there is a software defect associated with the infotainment system. The system also includes car information such as car data, audio/radio, navigation as well as other items related to modern car's functionality. The issue is when a mobile is plugged into one of the two from USB port, the infotainment will randomly reboot itself. When this happens the screen turns black/bland while rebooting occurs. This can happen even while the vehicle is in motion possibly causing severe distraction resulting a safety issue. (Imaging driving down the highway and your car reboots without warning.) Reboot takes about two minutes

---

[18] *Id.*

[19] *Id.*

during this time the vehicle is drill drivable but is very disconcerting to the driver. This issue is also a major topic with online forums such as www.subaruoutback.org under the Gen 6: 2020-Future section. https://www.subaruoutback.org/threads/2020-outback-software-gigathread.517684/page-340#post-6235066 Attempts to reach the dealership has not proven to be resolvable.

From NHTSA, Outback 2022, 12/17/2022[20]

Subarus forward looking eyesight and rear auto braking functions will stop working periodically also the stereo/infotainment system will go blank causing you to no longer access the the safety features of the car or any controls for the heating/AC system.

From NHTSA, Outback 2022, 9/22/2022[21]

Rab system not working, no foward or reverse cameras work. No climate control access, no radio, no GPS, can't access any touch screen controls

From NHTSA, Outback 2023, 3/22/2023[22]

I purchased a new 2023 Subaru Outback in December 2022. The two displays on my 2023 Subaru Outback (both the main entertainment one and the tiny dash one) randomly restart without notice and/or freeze and are unresponsive. This disables adaptive cruise control, EyeSight warnings, lane departure warnings, front collision warnings, rear back up camera, navigation, Apple Car Play, phone capabilities, and electrical display odometer. Even in reverse, the backup camera will appear at times and then freeze, so the image I am looking at on the display is not true. I noticed this the other day when I was in reverse and saw a mother and child walking outside of my review mirrors that never appeared on the camera. I have taken it to my Subaru dealer where they had trouble twice uploading new software onto the car. They finally uploaded the "new" software and the issue persists. This last issued occurred today 3/22/2023 - I was on a 10 minute drive and

---

[20] *Id.*

[21] *Id.*

[22] https://www.nhtsa.gov/vehicle/2023/SUBARU/OUTBACK/SW/AWD.

the software restarted at least 11 times in the short 10 minutes. I am unsure what else this electrical/software issue impacts but it seems to be a safety one if I cannot trust the rear camera, departure or collision warnings, or cruise control. Luckily, I have never been in cruise control when the system malfunctions, as I'm not sure what the result would be. This has occurred at random speeds, as slow as 12mph, as fast as 60mph. It has happened when I have been on phone calls and when I have not been on phone calls. I have photos and videos of the unresponsiveness, and have attached the invoice for when I got it serviced on 3/20/2023. This is a serious issue and it seems Subaru does not have a fix at this time. Since this is a new car, I was also told that if this happens after my warranty, it will be MY responsibility to pay for the updated software and to fix this glitch, and that they will charge me for service and the update.

From NHTSA, Outback 2023, 1/20/2023[23]

Starlink not working and requires DCM. This controls tracking and safety features of this car. This is the 2nd failure.

From NHTSA, Outback 2023, 11/3/2022[24]

Some of the starling services associated with my 2023 Subaru Outback are not functioning as they should. The vehicle was purchased on 10/28/2022 and on 10/29/2022 I took it back to the dealer. I was told by the service department that the issue would have to be dealt with by the sales department since it was a Starling issue. The sale team then looked into the issue and I was told that the software update hasn't been sent to the car yet and to give it until Monday 10/31/2022 to upload. On Monday I took the car back to the dealer as the services were still to working. They called Starlink and told the representative there what was going on. They then put me on the phone with Starlink and the representative told me I might would consider taking the car to another dealer. The dealer then stated to give it a couple weeks to see it the update comes through. I have emailed Subaru Customer Service now twice with no response from the, The case numbers are Case#?221031-2000801and Case number 221103-1400147.

---

[23] *Id.*
[24] *Id.*

<u>From NHTSA, Legacy 2020, 11/30/2022</u>[25]

This vehicle is equipped with the Subaru "Eyesight" system which is a number of safety features like automatic cruise control, lane keep assist, and others. About once a week on average while driving the entire system will shut down and the screen will go dark. You lose the radio, bluetooth, navigation, and all the Eyesight systems. After about 30 seconds it will reboot and things will come back online but this is a major safety issue because you loose systems that help with safety. The dealership said it's a known software issue and there's nothing they can do until an update is available. I called Subaru USA customer support in September and they said an update would be available by the end of October and nothing was released. I called in early November and they said they were still working on it but had no release date.

<u>From NHTSA, Legacy 2020, 6/12/2021</u>[26]

1. The infotainment system crashed (happens often), which caused the touchscreen in the center control stack to turn black and become unresponsive. This also caused the EyeSight safety system, adaptive cruise control (with lane keep assist), and reverse auto braking to all shut down (my dashboard lit up with warning lights and errors). 2. Not only is this an annoyance, but having all of the safety systems in my car unexpectedly shut down is extremely unsafe, especially adaptive cruise control. Other functions of my car, such as the radio and climate controls are also inaccessible when this happens. 3. A Subaru dealer has replaced the touchscreen in my vehicle to try and remedy the slowness and crashing, but it did not seem to fix anything. My car safety systems have not shut down prior to this incident, but on this day (June 6th), they did when the system crashed, which was after the replacement. After waiting weeks to get a replacement which didn't fix anything, I felt as if I needed to go elsewhere for help with this issue. 4. Only the manufacturer has inspected this issue, and I've also emailed Subaru directly after this incident, as to which I have not gotten a response yet (emailed on Monday, June 7th). 5. The warning lamps (for EyeSight, reverse auto breaking, and adaptive cruise control) all

---

[25] https://www.nhtsa.gov/vehicle/2020/SUBARU/LEGACY/4%252520DR/AWD.
[26] *Id*.

appeared on my dashboard as soon as the infotainment system crashed on June 6th. Prior to this, my vehicle had no warning lamps. They went away a few minutes after the system rebooted (all while I was driving on the highway), and system functionality returned to normal. Other Notes: This vehicle only has about 15k miles on it, and is only 1 year and 3 months old. Issues like this should not be happening. Before the replacement of the touchscreen, I had issues with it being extremely laggy and crashing, but my car's safety systems never shut down before. This is a new issue, which prompted me to report it to NHTSA.

From NHTSA, Legacy 2020, 2/15/2021[27]

RADIO AND CONTROL UNIT RANDOMLY RESTARTS AND FREEZES, AFFECTING THE RADIO FROM WORKING, THE VEHICLE CONTROL AND DRIVING ASSISTANCE OPTIONS, AND THE TWO USB PORTS WHICH ARE THE ONLY POWER SOURCES IN THE VEHICLE FROM WORKING CORRECTLY. I HAVE NO AUDIO AND CANNOT RESET THE RADIO AND CANNOT CHANGE VEHICLE CONTROL FUNCTIONS. WHEN I SELECT CERTAIN BUTTONS IT DOES NOTHING.

From NHTSA, Legacy 2021, 9/12/2021[28]

There seems to be an issue with the infotainment system. The system will randomly turn off which also turns off the safety features. I would like to associate this while CarPlay is in use, but I have witnessed it happen without CarPlay. Subaru has already replaced the head unit under warranty, but the problem continues. For the cost of the car, this should not be an issue.

From NHTSA, Legacy 2022, 12/2/2022[29]

The DCM/Telematics unit has now failed twice in this vehicle, despite already being completely replaced a first time. All remote app controls fail. Starlink call connection buttons are unresponsive despite the car being in a clear, unobstructed coverage area. The only indications of

---

[27] *Id.*

[28] https://www.nhtsa.gov/vehicle/2021/SUBARU/LEGACY/4%252520DR/AWD.

[29] *Id.*

failure are attempts to send remote commands via the app and the lack of a green LED next to the Starlink buttons. This presents a safety issue because the system is not presenting an obvious sign of failure and critical items like "Automatic Collision Notification" and remote immobilization will fail by assumption due to the connection/electrical problems.

From NHTSA, Legacy 2022, 4/27/2022[30]

On average about twice per month, the touch screen will lock up. This causes the entire system to crash turning off cruise control, emergency braking, lane departure, lane keep assist, and almost every other "smart" function of the vehicle. There is no specific action that causes this, it is purely random. The "lock-up" can last anywhere from 30 seconds to several minutes. The dash notifications telling you that all of the assistance features have turned off don't come on until the system has rebooted, even though they stopped functioning at the same time the "lock-up" started. On a typical day, there is a significant delay in controlling these features via the touch screen. Minor issues where the assistance features are delayed by several seconds have happened often, but this does not result in a complete system reboot. The best way I can describe it is as if the vehicle is controlled by a computer running Windows Vista with so many viruses it can barely function. Even just adjusting the electric seats or stereo volume can have up to a 30-second delay from user input to the system response. I have noticed that during these delays, the assistance features (like lane keep and collision warning) are also delayed.

From NHTSA, Forester 2019, 5/4/2020[31]

THE TOUCH SCREEN SYSTEM (RADIO-AM/FM AND SATELLITE) FREQUENTLY DO NOT WORK ON THE TOUCH SCREEN SYSTEM. TURNING OFF THE ENGINE, TAKING THE KEY OUT AND REPEATING THE STARTING PROCESS OF THE VECHICLE DOES NOT FIX THE PROBLEM. IT OCCURS ABOUT 1 OUT OF 3 TIMES STARTING AND/OR DRIVING THE VEHICLE. YOU NEVER KNOW WHEN THIS ELECTRONIC

---

[30] *Id.*

[31] https://www.nhtsa.gov/vehicle/2019/SUBARU/FORESTER/SUV/AWD.

SYSTEM IS GOING TO WORK OR NOT. SUBURU NEEDS TO RECALL AND FIX THIS ISSUE. IT HAPPENS WHEN THE VEHICLE IS STARTED, STATIONARY, OR DRIVING. IT MAY NOT WORK FOR SEVERAL DAYS, THEN STARTS WORKING AGAIN.

From NHTSA, Forester 2019, 6/11/2019[32]

I TOOK DELIVERY OF A 2019 SUBURU FORRESTER ON FRIDAY JUNE 7, 2019. LESS THAN 3 DAYS LATER THE ENTIRE STARLINK COMMAND HEAD UNIT FAILED LEAVING THE BACKUP CAMERA, RADIO, AUDIO, CELL PHONE AND NAVIGATION SYSTEMS INOPERABLE. THE DEALER COULD NOT FIX THE PROBLEM. A NEW UNIT MUST BE ORDERED.

From NHTSA, Forester 2019, 2/25/2020[33]

INFORTAINMENT TOUCH SCREEN BECOME UNRESPONSIVE TIME TO TIME, CAUSING UNNECESSARY DISTRACTION TO OPERATE RADIO, NAVIGATION.

From NHTSA, Forester 2019, 7/9/2019[34]

WHEN I START MY CAR VIA SUBARU STARLINK THE FOLLOWING TECHNICAL ISSUES OCCUR VOICE OVER BLUETOOTH GETS DISTORTED, APPLE CARPLAY DOES NOT CONNECT OR AFFECTS RADIO FIRST WAS NOTICED JAN 23, 2019. ALSO, POWER REAR GATE DOOR WOULD FAIL AND WOULD NOT OPEN WITH REAR GATE BUTTON, DASH BUTTON OR VIA KEY FOB AS THIS ON AND OFF PROBLEM ALSO NOTICED AFTER CAR IS STARTED VIA REMOTE APP STARLINK. POWER GATE PROBLEM REPORTED FIRST ON JAN 23, 2019 AND CONTINUES THROUGH THE PRESENT DATE. EYESIGHT FAILED ON JUL 06, 2019 WHEN CAR WAS STARTED VIA STARLINK, JUL 07, 2019 EYESIGHT BACK ON AND FAILED AGAIN ON JUL 08, 2019 WHEN CAR WAS

---

[32] *Id.*

[33] *Id*.

[34] *Id*.

MANUALLY STARTED FROM PARKING POSITION. WHEN EYESIGHT FAILS IT EFFECT VEHICLE DYNAMIC CONTROL WHICH ANALYZES STEERING ANGLE, ENGINE SPEED AND BRAKING CONDITIONS. ALSO, CRUISE CONTROL FAILS TO WORK ANS WELL SUBARU REVERSE AUTOMATIC BREAKING. TOTAL MILES ON THE CAR 7321 AS OF JUL 08, 2019.

From NHTSA, Forester 2020, 2/7/2022[35]

The contact owns a 2020 Subaru Forester. The contact stated that while driving at an undisclosed speed, the radio system malfunctioned, which caused the blind-spot detection system, headlights, and instrument panel to fail to operate as needed. Additionally, the eyesight system would inadvertently engage, which caused the vehicle to stop without warning. The contact restarted the vehicle to correct the failure. The vehicle was taken to the dealer, and AutoNation Subaru Scottsdale (15678 N Northsight Blvd, Scottsdale, AZ 85260) and diagnosed with radio software failure. The dealer replaced the radio on three separate occasions; however, the failure recurred. The dealer also reconnected the eyesight system and resolved the eyesight system failure. The manufacturer was made aware of the failure. The failure mileage was approximately 1,000.

From NHTSA, Forester 2022, 1/13/2023[36]

2 incidents. First day we took car home the vehicle infotainment system failed while phone was connected to Apple CarPlay. Screen went black and there was a loud noise like interference. Has happened repeatedly since, supposedly due to needing a firmware update but it's been a well documented problem in Subaru automobiles for several years and the manufacturer has done nothing to alleviate the flaw. Second incident involves the windshield cracking in the lower driver side with no apparent cause from anything striking the windshield. Again, this is a well documented issue and there are several complaints on nhtsa.gov from other unhappy customers

---

[35] https://www.nhtsa.gov/vehicle/2020/SUBARU/FORESTER/SUV/AWD.
[36] https://www.nhtsa.gov/vehicle/2022/SUBARU/FORESTER/SUV/AWD.

<u>From NHTSA, WRX 2019, 8/22/2022</u>[37]

The STARLINK 7-inch Multimedia Plus unit gets locked-up, sometime not responsive to touch, skips around to different songs, in a phantom way scans different radio stations, disconnects phone calls.

<u>From NHTSA, WRX 2019, 7/21/2020</u>[38]

THE SCREEN FREAKS OUT. IT FREEZES, JACKS UP THE VOLUME SOMETIMES AND JUST FEELS LIKE THE SCREEN HAS A MIND OF ITS OWN. IT GOES BLACK SOMETIMES BUT OVERALL JUST FREEZING. ITS REALLY ANNOYING AND FRUSTRATING WHEN THE VOLUME STARTS BLARING OR DECIDES TO NOT LET YOU LISTEN TO IT AT ALL. IT'S USUALLY WHEN ITS IN MOTION. IT HAPPENS RANDOMLY. I HAVE NOT NOTICED A PATTERN AS TO WHEN THE FAULTS HAPPEN.

<u>From NHTSA, WRX 2022, 2/5/2023</u>[39]

Infotaiment system goes to a blank screen periodicaly. Sound frm radio works but screen is balnk, no way to reset. Wifi updates are up to date. Whenthis happens it disables the eye sight camera causes a safety concern with automatic branking/collision. When the car sits overnight, then the next day it seems to go back to normal. This has happened 4 times already in the 2 months I have oened this vechicle.

<u>SandyVaj, Reddit, Nov. 2022</u>[40]

Have a '19 Limited V6 and the channels on the satellite radio keep changing on their own. It's actually even weirder than that cause it won't just switch to a channel it bouces back & forth between 2-3 channels rapidly for 30-45 seconds before stopping, then it stays put on whatever channel it stopped on. The weird part is it doesn't happen again unless

---

[37] https://www.nhtsa.gov/vehicle/2019/SUBARU/WRX/4%252520DR/AWD.
[38] *Id*.
[39] https://www.nhtsa.gov/vehicle/2022/SUBARU/WRX/4%252520DR/AWD.
[40] https://www.reddit.com/r/subaruoutback/comments/xwe1ho/radio_changing_stations_on_its_own/.

I try to manually switch back to the channel I was originally listening to.

cjo11us, Subaru Outback Owner's Forum, 2/25/2022[41]

Here is a note regarding this problem that I submitted to the dealer and corporate customer service about 3 weeks ago. No response yet. The Dealer is aware of the issue but has no idea what is being done or when the issue might be resolved. As I mentioned in an earlier post, the folks writing, testing and releasing this software should be looking for different lines of work.

I have a 2021 Outback XT purchased in Nov of 2020. I am having a problem with the Head End system (Map, GPS, Radio, Bluetooth phone connection) as I understand many others are. While driving, the entire system will shut down and remain down for a short time (1 minute or so) and then reboot with all functionalities returning. On one occasion the call that I was on when the system shut down actually stayed up during reboot and was waiting for me when the reboot completed. I reported the issue within 3 months of purchase and was told that there was no specific fix available and that I had the latest software. This was in February 2021. This has happened several times since and I have just learned to live with it. On the last reboot the system came back with unintelligible audio for Bluetooth and connected phone audio, which is not a minor inconvenience but a serious problem as I am on the road for work a good amount of time and rely on hands free communications. The most recent service visit provided a software update that did not remedy the audio problem and i have since had the system reboot several more times with no change. I purchased two Subaru's in November of 2020 (an Outback and an Assent). I will not be purchasing Subaru in the future.

---

[41] https://www.subaruoutback.org/threads/2021-outback-head-end-nav-screen-audio-etc-failure.541596/.

Rob, Edmunds Outback 2021, 6/27/2022[42]

**Horrible Electronics!!**

Note: Me & the family have owned SEVEN Subarus dating back to 2007…

Purchased a 2021 touring. As many have stated, love the ride and quieter cab, however, the electronics are HORRIBLE. I repeat, HORRIBLE!! Unpredictable nuisances since I've owned the car. Screen has completely shut down several times, losing power for up to 10 minutes. (ALL controls). Radio has whacked out on three occasions BLARING an unbelievable crackle that could pierce your eardrums. Navigation is useless and unintuitive. Screen is hypersensitive and seldom makes the desired selection.  WHO AT SUBARU validated and approved this control center design and supplier?!?!? THEY MUST GO!!!!!!!  I'm REALLY disappointed that such a great car is supported by such an AWFUL electronic control system :(

AngieC, Edmunds Outback 2021, 9/20/2022[43]

**Who doesn't love a Subie? Me!**

I have had lots of problems with my center console tech. It stops working, freezes, goes black, and sometimes just has a mind of its own. I have had it in the shop twice, the first time they told me it was an iPhone compatibly issue, which was not true the second time the guy was honest and said it was a known issue and they would order a new one but it was back ordered. It has been months, I called and they never ordered it! Still having issues, it operates literally everything! AC, radio, Navi, even some of the safety features shut down when it stops working. I also had an AC problem that they just "recharged" not fixed. It has less than 26000 miles and I cannot wait to get rid of it! It auto brakes for no reason, but they "couldn't find and problem". Buyer beware. Subaru knows it put out crap but they aren't owning it. Oh!!

---

[42] https://www.edmunds.com/subaru/outback/2021/consumer-reviews/?pagesize=50.

[43] https://www.edmunds.com/subaru/outback/2021/consumer-reviews/?pagesize=50.

And the windshield randomly cracked over night while parked in my driveway. TWICE!

RJWV90, Edmunds Legacy 2020, 9/22/2020[44]

**They almost had it…**

Purchased a new 2020 Legacy Premium in March, 2020. Let's just say it's been more of a hassle than a good experience. This is my first Subaru and definitely my last. The car has been in the service center SIX times for touchscreen failures. Update performed - still issues, unit replaced - still issues, audio control unit replaced - still issues. After the dealership had my car for 20 days now, I receive a call stating that Subaru and Technical Support has come to a conclusion; good news? So I thought. There is an issue with the pre-downloaded Pandora App and Apple CarPlay. The interference also messes with all of the Eyesight systems and cause them to go offline. The apps are interfering with each other and that is what is causing the failures. They don't have a fix for it and I am being told that I will just have to deal with it until a fix/update is released. So pretty much I am driving around in a $32,000 tin can on wheels since the touchscreen controls EVERYTHING! The Legacy and Outback have the same software and touchscreen. Currently, I am in an Outback as a loaner and that unit is far worse than mine is. Buyer beware! Do yourself a favor and go with the Ascent.

63.    Subaru is and at all relevant times has been aware of the defect in the Starlink system.

64.    In the first place, it has received numerous complaints from consumers about this issue, including directly from consumers and indirectly through its authorized dealerships, which are agents of Subaru. Consumers also routinely present their Vehicles to Subaru's dealerships for a defect-related repair, placing

---

[44] https://www.edmunds.com/subaru/legacy/2022/consumer-reviews/?pagesize=50.

Subaru on notice of the issue because Subaru has access to and receives data from its authorized dealerships concerning defects and repairs.

65.    As reproduced above, Subaru also had knowledge of the numerous complaints to NHTSA and on consumer forums dedicated to Subaru ownership, all of which Subaru routinely monitors. Numerous consumer complaints reveal that the defect can and does manifest within the first few thousand miles of driving a Vehicle.

66.    Subaru has also issued Technical Service Bulletins ("TSBs") relating to problems with the infotainment system and head unit in the Class Vehicles. The TSBs relate to software updates, guidance on installation of the updates, a replacement of the Center Information Display in order to correct touchscreen problems, and troubleshooting tips to diagnose problems with Bluetooth and phone connectivity. For certain touchscreen issues, two TSBs,[45] dated May 12 and May 13, 2022, expressly state that the unit will require replacement and no software reprogramming will provide remedy. Despite numerous bulletins and attempts to address the issues discussed above, Vehicle owners continue to experience problems with their Starlink systems.

67.    Subaru has introduced numerous updates to Class Vehicles' Starlink systems, available directly to owners and lessees or dealers. Nevertheless, the issues outlined above remain unresolved.

---

[45] TSB numbers: 15-295-22; 15-296-22.

68.    Subaru also became aware of the defect through its rigorous pre-sale testing, which replicates actual consumer use of the Starlink system. Subaru's testing of the Starlink system includes actual use of the system, cycling the Starlink system on and off through boot up and re-boot processes, and interacting with Starlink including through use of the touchscreen, over various durations of time. Through its pre-sale testing of Starlink, the numerous issues complained of concerning Starlink revealed themselves to Subaru, placing Subaru on notice of the defect.

69.    Subaru was also alerted to the defect due to prior similar failures in and issues with Starlink in prior Subaru model years that were the subject of the settled *Udeen* Starlink litigation.

70.    Despite knowing about these problems with the head units, Subaru continued to include the defective head units in (at least) 2019 and later Outback, Legacy, Forester, and WRX vehicles and continued to sell and lease these vehicles without eliminating the defect and without disclosing it to Plaintiffs and class members, e.g., in warranty manuals, on Subaru's website, on Vehicle Monroney stickers, or elsewhere.

71.    Because of Subaru's actions, Class Vehicle owners and lessees have suffered damages in the form of loss of use of key features of their Class Vehicles for extended periods of time, loss of safety features, loss of entertainment features,

and lost time; expenses involved in contacting Subaru and waiting at dealerships; and paying out of pocket for expensive head unit repairs and replacements.

## CLASS ALLEGATIONS

72.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the class(es) defined as follows:

**Nationwide Class**
All persons in the United States that purchased or leased a Class Vehicle equipped with a Subaru Starlink infotainment system for end use and not for resale.

73.     In the alternative, Plaintiffs seek certification of the following classes:

**Arizona Class**
All persons in the state of Arizona that purchased or leased a Class Vehicle equipped with a Subaru Starlink infotainment system for end use and not for resale.

**New York Class**
All persons in the state of New York that purchased or leased a Class Vehicle equipped with a Subaru Starlink infotainment system for end use and not for resale.

**New Hampshire Class**
All persons in the state of New Hampshire that purchased or leased a Class Vehicle equipped with a Subaru Starlink infotainment system for end use and not for resale.

**Washington Purchasers Class**
All persons that purchased or leased a Class Vehicle in the state of Washington equipped with a Subaru Starlink infotainment system for end use and not for resale.

**California Class**
All persons in the state of California that purchased or leased a Class Vehicle equipped with a Subaru Starlink infotainment system for end use and not for resale.

74.    Excluded from the classes are: (i) Subaru and its officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all class members who timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action. Plaintiffs reserve the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

75.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

76.    **Numerosity:** The class is so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual class members are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that tens of thousands of Class Vehicles affected by the issues alleged herein have been sold and leased nationwide. Upon information and belief, class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails,

dealership records and files, etc.) Defendants maintain regarding its sales and leases of Class Vehicles.

77.    **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

a.    whether Defendants engaged in the conduct alleged herein;

b.    whether the Starlink systems in the Class Vehicles are defective;

c.    whether Defendants placed Class Vehicles into the stream of commerce in the United States with knowledge of the defect in the Starlink systems;

d.    whether Defendants had pre-sale knowledge of the defect;

e.    whether Defendants omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

f.    whether Defendants' omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

g.    whether Defendants breached warranties with Plaintiffs and the other class members when they produced, distributed, and sold the Class Vehicles;

h.   whether Plaintiffs' and the other class members' Class Vehicles were worth less than as represented as a result of the conduct alleged herein;

i.   whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damages; and

j.   whether Plaintiffs and the other class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

78.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

79.   **Typicality:** Plaintiffs' claims are typical of the claims of the other class members because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct described above. Like Plaintiffs, class members also purchased or leased Class Vehicles equipped with defective Starlink systems. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is

available to Defendants that are unique to Plaintiffs. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all class members. Plaintiffs and all class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in selling/leasing and failing to remedy the Class Vehicles with telematics systems that would be phased out.

80.    **Adequacy:** Plaintiffs are adequate class representatives because they will fairly represent the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class they represent and have the resources to do so. Neither Plaintiffs nor their counsel have interests adverse or antagonistic to those of the class.

81.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Even if

class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

82.    Defendants have acted, and refuse to act, on grounds generally applicable to the class, thereby making appropriate final equitable relief with respect to the class as a whole.

## **CLAIMS FOR RELIEF**

### **COUNT I**

### **COMMON LAW FRAUD/FRAUDULENT CONCEALMENT**
### **(On Behalf of Plaintiffs and the State Classes)**

83.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

84.    This claim is brought by Plaintiffs on behalf of the state classes under the laws of their respective home states.

85.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect with the Starlink system. A reasonable consumer would have expected that the Starlink system would not be

defective and pose a serious safety risk.

86.    The facts concealed or not disclosed by Defendants to Plaintiffs and class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price.

87.    Defendants had a duty to disclose the true performance of the Class Vehicles and the Starlink system because knowledge of the defect and its details were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by, Plaintiffs and class members. Defendants also had a duty to disclose because they made many general affirmative representations about the qualities of their vehicles with respect to the Starlink system, including references as to convenience, safety, and general operability, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual performance of their vehicles.

88.    Had Plaintiffs and the class known about the defective nature of the Class Vehicles and their Starlink systems, they would not have purchased or leased the Class Vehicles or would have paid less for them.

89.    As a result, Plaintiffs and the other class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of

the resulting problems.

90.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and class members rely upon them.

91.    Plaintiffs and class members reasonably relied on these omissions and suffered damages as a result. To the extent that Defendants' conduct was willful, oppressive or malicious, Plaintiffs and class members are entitled to an award of punitive damages.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiffs and the Nationwide Classes, or in the Alternative, the State Classes)

92.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.    This claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes.

94.    Defendants are "merchants" as defined under the Uniform Commercial Code ("UCC").

95.    The Class Vehicles are "goods" as defined under the UCC.

96.    Defendants expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendants specifically warranted attributes and qualities of the Starlink systems in the Class Vehicles as

detailed above, including with respect to performance, quality, operability, convenience, and safety.

97.     Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

98.     Defendants breached their warranties by selling to Plaintiffs and the class members the Class Vehicles with known infotainment system problems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly, presenting an unreasonable safety risk. Defendants also breached their warranty by failing to provide an adequate repair when Plaintiffs and class members presented their Class Vehicles to authorized Subaru dealers following manifestation of the Starlink system defect.

99.     These warranties formed the basis of the bargain that was reached when Plaintiffs and other class members purchased or leased their Class Vehicles equipped with defective Starlink systems.

100.    Plaintiffs experienced the Starlink system defect within the warranty period. Despite the existence of express warranties (including but not limited to Subaru's New Vehicle Limited Warranty), Defendants failed to inform Plaintiffs and class members that the Class Vehicles are defective and failed to fix or eliminate the defect.

101.   As a result of Defendants' actions, Plaintiffs and class members have suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, diminished value, substantial loss in value and resale value of the vehicles, and other related damages.

102.   Defendants were provided notice of the issues complained of herein by numerous consumer complaints filed against it, and the instant lawsuit, within a reasonable amount of time.

103.   Plaintiffs and the class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT III**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiffs and the Nationwide Classes,**
**or in the Alternative, the State Classes)**

104.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105.   This claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes.

106.   Defendants are "merchants" as defined under the UCC.

107.   The Class Vehicles are "goods" as defined under the UCC.

108.   A warranty that the Class Vehicles were in merchantable quality and

condition is implied by law in transactions for the purchase and lease of Class Vehicles. Defendants impliedly warranted that the Class Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and substantial freedom from defects.

109.    The Class Vehicles, when sold and leased, and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that the Starlink infotainment systems—a central component to the Class Vehicles—are prone to a multitude of operational issues due to a common defect. The Starlink system defect renders that Class Vehicles unmerchantable, as they are unreliable, unsafe, partially or fully inoperable, and not substantially free from defects.

110.    Defendants were provided notice of the issues complained of herein by numerous complaints filed against them, and the filing of the instant lawsuit, within a reasonable amount of time.

111.    Plaintiffs and the other class members have had sufficient direct dealings with either Defendants or their agents (e.g., dealerships and technical support) to establish privity of contract between Defendants on one hand, and Plaintiffs and each of the class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the class members are intended third-party beneficiaries of contracts between Defendants and their dealers, and

specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

112.  As a direct and proximate result of the breach of said warranties, Plaintiffs and class members were injured, and are entitled to damages.

## COUNT IV

### VIOLATIONS OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### N.H. Rev. Stat. Ann. § 358-A:2 ("NHCPA")
### (On Behalf of Plaintiff Cilluffo and the New Hampshire Class)

113.  Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

114.  Plaintiff Cilluffo brings this claim on behalf of the New Hampshire Class under New Hampshire law.

115.  Plaintiff Cilluffo and Subaru are "persons" under the NHCPA. N.H. Rev. Stat. Ann. § 358-A:1(I).

116.  Subaru's sale of Vehicles to Plaintiff Cilluffo and New Hampshire Class members falls within the ambit of "trade" and "commerce." N.H. Rev. Stat. Ann. § 358-A:1(II).

117.  The NHCPA makes it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of

any trade or commerce" and enumerates seventeen unlawful types of unfairly competitive or deceptive acts. N.H. Rev. Stat. Ann. § 358-A:2. This statutory list is not exhaustive, and other actions may constitute prohibited conduct as long as they are of the same type as proscribed by the enumerated categories.

118.    In selling the Vehicles while omitting or concealing the Starlink system defect, Subaru engaged in at least the following violations of the NHCPA:

    a.    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . .";

    b.    "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

    c.    "Advertising goods or services with intent not to sell them as advertised."

119.    The offending conduct alleged herein occurred in, and was part of trade or commerce that had direct or indirect effects on Plaintiff Cilluffo and the people of New Hampshire.

120.    Pursuant to N.H. Rev. Stat. Ann. § 358-A:10(I), Plaintiff Cilluffo seeks damages on behalf of himself and New Hampshire Class members in the amount of the greater of actual damages or $1,000 for each violation of the NHCPA. Because

Subaru's conduct was committed willfully and knowingly, Plaintiff Cilluffo and the other New Hampshire Class members are entitled to recover up to three times their actual damages, but no less than two times actual damages.

121.    Plaintiff Cilluffo also seeks attorney's fees and costs, and equitable relief, including an injunction, as the court deems necessary and proper.

## COUNT V

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (On Behalf of Plaintiff Jean-Louis and the New York Class)

122.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

123.    Plaintiff Jean-Louis brings this claim on behalf of the New York Class under New York law.

124.    New York General Business Law § 349 states, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

125.    Subaru engaged in "business," "trade," or "commerce" within the meaning of N.Y. Gen. Bus. Law § 349(a).

126.    Plaintiff Jean-Louis is a "person" within the meaning of N.Y. Gen. Bus. Law § 349(h).

127.    Subaru's sale of the Vehicles, while omitting or concealing the Starlink system defect is a "deceptive act or practice" under N.Y. Gen. Bus. Law § 349.

128.   Subaru's sale and advertisement of the Vehicle had an impact on consumers at large.

129.   Had Plaintiff Jean-Louis and the other Class members been aware of the omitted and misrepresented facts, i.e., that the Vehicles they purchased and leased were defective and, therefore, unreliable, unsafe, and partially or fully inoperable, Plaintiff Jean-Louis and the other New York Class members would not have purchased and leased the Vehicles or would have paid significantly less for them than they actually paid.

130.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff Jean-Louis seeks damages on behalf of himself and the New York Class in the amount of the greater of actual damages or $50 for each violation of N.Y. Gen. Bus. Law § 349. Because Subaru's conduct was committed willfully and knowingly, Plaintiff Jean-Louis and the other New York Class members are entitled to recover up to three times their actual damages up to $1,000.

131.   Plaintiff Jean-Louis also seeks equitable relief, including and injunction, as the court deems necessary and proper.

**COUNT VI**

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW §§ 19.86.010 et seq. ("WCPA")**
**(On Behalf of Plaintiff Quarles and the Washington Class)**

132.   Plaintiffs reallege and incorporate by reference the preceding

paragraphs as if fully set forth herein.

133.  Plaintiff Quarles brings this claim on behalf of the Washington Class under Washington law.

134.  Plaintiff Quarles and Subaru are "persons" under the WCPA. RCW § 19.86.010(1).

135.  Subaru's sale of Vehicles to Plaintiff Quarles and Washington Class members constitutes as "trade" and "commerce" under the WCPA. RCW § 19.86.010(2).

136.  The WCPA states, "Unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce are hereby declared unlawful." RCW § 19.86.020. Subaru's advertisement and sale of vehicles to Plaintiff Quarles and the Washington Class members is an "unfair or deceptive practice" under the WCPA.

137.  Subaru's unfair or deceptive practices affect the public interest as they have repeatedly and have the potential for repetition.

138.  Had Plaintiff and the other Washington Class members been aware of the omitted and misrepresented facts, i.e., that the Vehicles they purchased and leased were defective and, therefore, unreliable, unsafe, and partially or fully inoperable, Plaintiff Quarles and the other Class members would not have purchased

and leased the Vehicles or would have paid significantly less for them than they actually paid.

139.   Pursuant to RCW § 19.86.090, Plaintiff Quarles seeks actual damages and treble damages of up to three times the amount of actual damages, as well as punitive damages, on behalf of himself and Washington Class members.

140.   Plaintiff Quarles also seeks attorney's fees and equitable relief, including an injunction, as the court deems necessary and proper.

## COUNT VII

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### Ariz. Rev. Stat. §§ 44.1521 et seq. ("ACFA")
### (On Behalf of Plaintiff Doze and the Arizona Class)

141.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

142.   Plaintiff Doze brings this claim on behalf of the Arizona Class under Arizona law.

143.   Plaintiff Doze and Subaru are "persons" under the ACFA. Ariz. Rev. Stat. § 44.1521(6).

144.   Subaru's marketing and sale of Vehicles to Plaintiff Doze and the Arizona Class members involve "advertisement" and "sale" of "merchandise" within the meaning of Ariz. Rev. Stat. § 44.1521.

145.   The ACFA states, "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. Ann. § 44-1522. Subaru's sale of vehicles to Plaintiff Doze and the Arizona Class members, as alleged above, is a "deceptive or unfair act or practice" under the ACFA.

146.   Defendant knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect.

147.   Plaintiff Doze and the Arizona Class members reasonably relied upon Defendant's knowing misrepresentations, concealment and omissions. As a direct and proximate result of Defendant's misrepresentations, omissions and active concealment of material facts regarding the Starlink defect, Plaintiff Doze and the Arizona Class members have suffered actual damages in an amount to be determined at trial.

148.   Had Plaintiff Doze and the other Arizona Class members been aware of the omitted and misrepresented facts, i.e., that the Vehicles they purchased and leased were defective and, therefore, unreliable, unsafe, and partially or fully

inoperable, Plaintiff Doze and the other Class members would not have purchased or leased the Vehicles or would have paid significantly less for them than they actually paid.

149.    Plaintiff Doze seeks actual damages, treble damages, punitive damages, and equitable relief, including an injunction, as the court deems necessary and proper, on behalf of herself and the Arizona Class members.

**COUNT VIII**

**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES Cal. Civ. Code §§ 1791.2 and 1793.2(d) (On Behalf of Plaintiff Laureano and the California Class)**

150.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

151.    Plaintiff Laureano brings this claim on behalf of the California Class under California law.

152.    The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

153.    Plaintiff Laureano and California Class members who purchased or leased the Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

154.    Subaru is a "manufacturer" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

155.   California Civil Code § 1791.2(a) states:

"Express warranty" means: (1) A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance; . . . .

156.   Subaru provided express warranties to Plaintiff Laureano and California Class members regarding Vehicles within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, including that the Starlink system would function properly as discussed *supra*.

157.   Subaru breached the express warranty by selling and leasing Vehicles equipped with the Starlink system defect. Furthermore, Subaru breached the express warranty by refusing to remedy the defect, which requires repair or replacement, within the applicable warranty period by providing free repairs or replacements. Additionally, Subaru failed to promptly replace or buy back Class Vehicles from Plaintiff Laureano and California Class members.

158.   As a direct and legal result of Subaru's breaches of its express warranty, Plaintiff Laureano and California Class members received goods with a diminished value due to the defect, and have been injured by the diminished value, diagnostic and repair costs, and loss of vehicle use.

159.   Under Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff Laureano and California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Vehicles, or the overpayment or diminution in value of their Vehicles.

160.   Under Cal. Civ. Code § 1794, Plaintiff Laureano and California Class members are entitled to costs and attorneys' fees.

## COUNT IX

**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES**
**Cal. Civ. Code §§ 1791.1 and 1792**
**(On Behalf of Plaintiff Laureano and the California Class)**

161.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

162.   Plaintiff Laureano brings this claim on behalf of the California Class under California law.

163.   The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

164.   Subaru is a "manufacturer" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

165.   Subaru impliedly warranted to Plaintiff Laureano and Class members that the Vehicles were "merchantable" within the meaning of Cal. Civ. Code

§§ 1791.1(a) and 1792. However, the Vehicles do not have the quality that a buyer would reasonably expect.

166.   California Civil Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

a. Pass without objection in the trade under the contract description.

b. Are fit for the ordinary purposes for which such goods are used.

c. Are adequately contained, packaged, and labeled.

d. Conform to the promises or affirmations of fact made on the container or label.

167.   The Class Vehicles would not pass without objection in the trade of passenger vehicle sales because they are equipped with a defect that may cause random freezing and rebooting of the Starlink system during normal use, thereby causing a loss of control and/or unavailability of infotainment and safety systems without warning. The defect means that the Class Vehicles do not meet the promises and/or affirmations made by Subaru regarding the Starlink system. The defect also renders the Vehicles unsafe, and thus, not fit for ordinary purposes.

168.   The Class Vehicles are not adequately labeled because the labeling fails to disclose the defect.

59

169.   Subaru breached the implied warranty of merchantability by selling and leasing Vehicles equipped with the Starlink system defect. Furthermore, the defect has prevented Plaintiff Laureano and California Class members from receiving the benefit of their bargain and caused the Vehicles to diminish in value.

170.   As a direct and legal result of Subaru's breach of the implied warranty of merchantability, Plaintiff Laureano and California Class members received goods with a dangerous condition that substantially impairs their value and use.

171.   Plaintiff Laureano and California Class members have been damaged as a result of the diminished value of the Vehicles.

172.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff Laureano and California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Vehicles, or the overpayment or diminution in value of their Vehicles.

173.   Under Cal. Civ. Code § 1794, Plaintiff Laureano and the California Class members are entitled to costs and attorneys' fees.

## COUNT X

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL")
(On Behalf of Plaintiff Laureano and the California Class)**

174.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

175.   Plaintiff Laureano brings this claim on behalf of the California Class under California law.

176.   Plaintiff Laureano, California Class members, and Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

177.   California's FAL prohibits false advertising. Cal. Bus. & Prof. Code § 17500.

178.   In the course of its business, through its agents, employees, and/or subsidiaries, Subaru violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Vehicles.

179.   Subaru engaged in untrue and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17500 by misrepresenting Class Vehicles as being safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Starlink issues in the Vehicles.

180.   Subaru made, or caused to be made, and disseminated throughout California advertising, marketing, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Subaru, to be untrue and misleading to consumers, including Plaintiff Laureano and California Class members.

181.    Subaru's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, had a tendency and capacity to mislead and create a false impression in consumers, and were likely to—and did in fact—deceive reasonable consumers, including Plaintiff Laureano and California Class members, about the true safety and reliability of the Vehicles, and the quality and true value of the Vehicles.

182.    Subaru's scheme and concealment of the Starlink system defect and true characteristics of the Vehicles were material to Plaintiff Laureano and California Class members, as Subaru intended. Had Plaintiff Laureano and California Class members known the truth, they would not have purchased or leased the Vehicles, or would have paid significantly less for them.

183.    Plaintiff Laureano and California Class members relied on Subaru and had no way of discerning that those representations were false and misleading, or otherwise learning the facts Subaru had concealed or failed to disclose. Plaintiff Laureano and California Class members did not, and could not, unravel Subaru's deception on their own.

184.    Subaru had an ongoing duty to Plaintiff Laureano and the California Class members to refrain from unfair or deceptive practices under the California FAL in the course of its business. Subaru owed them a duty to disclose all material facts concerning the Starlink defect in the Class Vehicles because Subaru possessed

exclusive knowledge, they intentionally concealed the defect from Plaintiff Laureano and California Class members, and/or Subaru made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

185.  Plaintiff Laureano and California Class members suffered ascertainable losses and actual damages as a direct and legal result of Subaru's concealment, misrepresentations, and/or failure to disclose material information.

186.  Subaru's violations present a continuing risk to Plaintiff Laureano and California Class members, as well as to the general public. Subaru's unlawful acts and practices complained of herein affect the public interest.

187.  Plaintiff Laureano and California Class members seek an order enjoining Subaru's false advertising, any such orders or judgments as may be necessary to restore Plaintiff Laureano and California Class members any monies acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

### COUNT XI

**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750, *et seq.* ("CLRA")**
**(On Behalf of Plaintiff Laureano and the California Class)**

188.  Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

189.   Plaintiff Laureano brings this claim on behalf of the California Class under California law.

190.   The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

191.   Plaintiff Laureano, California Class members, and Subaru are "persons" within the meaning of Cal. Civ. Code § 1761(c).

192.   Plaintiff Laureano and California Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

193.   The California CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

194.   In the course of its business, through its agents, employees, and/or subsidiaries, Subaru violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts relating to the reliability, safety, and performance of Class Vehicles, as detailed *supra*.

195.   Subaru engaged in one or more of the following unfair or deceptive business practices, as defined in Cal. Civ. Code § 1770(a), by misrepresenting Class

Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the Starlink system defect and the dangers and risks posed by it:

- representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5);

- representing that the Vehicles are of a particular standard, quality and grade when they are not, in violation of Cal. Civ. Code § 1770(a)(7);

- advertising the Vehicles with the intent not to sell or lease them as advertised, in violation of Cal. Civ. Code § 1770(a)(9); and

- representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of Cal. Civ. Code § 1770(a)(16).

196. Subaru's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to—and did in fact—deceive reasonable consumers, including Plaintiff Laureano and California Class members, and about the true safety, reliability, quality, and value of the Vehicles.

197.   Subaru's scheme and concealment of the Starlink defect and true characteristics of the Vehicles were material to Plaintiff Laureano and California Class members, as Subaru intended. Had Plaintiff Laureano and California Class members known the truth, they would not have purchased or leased their Vehicles or would have paid significantly less for them.

198.   Plaintiff Laureano and California Class members had no way of discerning that Subaru's representations were false and misleading, or otherwise learning the facts that Subaru concealed or failed to disclose. Plaintiff Laureano and California Class members did not, and could not, unravel Subaru's deception on their own.

199.   Subaru had an ongoing duty to Plaintiff Laureano and California Class members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Subaru owed Plaintiff Laureano and California Class members a duty to disclose all the material facts concerning the Starlink defect in the Class Vehicles because Subaru possessed exclusive knowledge, intentionally concealed the defect from Plaintiff Laureano and California Class members, and/or made representations that were rendered misleading because the representations were contradicted by withheld facts.

200.   Plaintiff Laureano and California Class members suffered ascertainable losses and actual damages as a direct and legal result of Subaru's concealment, misrepresentations, and/or failure to disclose material information.

201.   Subaru's violations present a continuing risk to Plaintiff Laureano and California Class members, as well as to the general public. Subaru's unlawful acts and practices complained of herein affect the public interest.

202.   Subaru was provided with notice of the issues raised in this count and this Complaint by numerous reports by consumers to the National Highway Transportation Safety Administration regarding the Defect in Class Vehicles, as referenced *supra*.

203.   Pursuant to Cal. Civ. Code § 1780(a), at this time Plaintiff Laureano and the California Class members seek an order enjoining Subaru's unfair or deceptive acts or practices.

204.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Laureano sent a letter to Subaru on April 26, 2023 notifying Subaru of its CLRA violations and affording it the opportunity to correct its business practices and rectify the harm it has caused. Plaintiff Laureano sent the CLRA notice via certified mail, return receipt requested, to Subaru's principal place of business. Should Subaru fail to correct its business practices or provide the relief requested within 30 days, Plaintiffs will amend this Complaint to seek monetary damages under CLRA.

## COUNT XII

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
#### Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")
#### (On Behalf of Plaintiff Laureano and the California Class)

205.    Plaintiffs realleges and incorporate by reference the preceding paragraphs as if fully set forth herein.

206.    Plaintiff Laureano brings this claim on behalf of the California Class under California law.

207.    California's UCL prohibits any "unlawful, unfair or fraudulent business act or practices."

208.    In the course of its business, Subaru violated the UCL by engaging in the following unlawful, unfair, and fraudulent business acts and practices:

  a.  selling and leasing Vehicles with a known defect rendering the Vehicles unsafe and unfit for normal use;

  b.  breaching California statutory and common law implied warranties associated with the Vehicles;

  c.  violating, among other laws, federal automotive labeling laws, the CLRA, and the Song-Beverly Act; and

  d.  failing to adequately fix, repair, or otherwise remediate the Starlink issues in the Class Vehicles.

209.   Had Plaintiff Laureano and California Class members known of the Starlink defect, they would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

210.   Plaintiff Laureano and California Class members suffered an ascertainable loss of money and property as a direct and legal result of Subaru's violations of the UCL, as set forth *supra*.

211.   Pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*, Plaintiff Laureano and California Class members seek any such orders or judgments as may be necessary to restore to Plaintiff Laureano and California Class members any monies acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the UCL.

212.   Further, Plaintiff Laureano and California Class members request injunctive relief to remedy the violations of the UCL by Subaru, including a full repair of the Defect and replacement of all necessary parts, an extension of the warranties for Class Vehicles so that all repairs and parts replacements related to the defect are covered by such warranties and do not result in out-of-pocket costs to Plaintiff Laureano and California Class members, the provision of loaner vehicles while the work to correct the defect is being performed, and all other applicable relief.

213.    Plaintiff Laureano and California Class members currently lack an adequate remedy at law for all the harms caused by Subaru and the Starlink system defect. Only through injunctive and restitutionary relief will Plaintiff Laureano and California Class members be able to obtain a complete repair of the defect and an extension of Subaru's warranties to cover that work, as well as restitution of the monies Plaintiff Laureano and California Class members have already spent in efforts to repair the Class Vehicles and finding alternative modes of transportation.

## COUNT XIII

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Classes)

214.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

215.    This claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes.

216.    This claim is pleaded in the alternative to the other claims.

217.    As the intended and expected result of its conscious wrongdoing, Defendants have profited and benefited from the purchase and lease of Class Vehicles equipped with defective Starlink systems.

218.    Defendants have voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants' misconduct alleged herein, Plaintiffs and the class were not receiving Class Vehicles

of the quality, nature, fitness, or value that had been represented by Defendants, and that a reasonable consumer would expect. Specifically, Plaintiffs and the class members expected that when they purchased or leased Class Vehicles, they would not be equipped with a defective infotainment system.

219.   Defendants have been unjustly enriched by their fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiffs and the class, at the expense of these parties.

220.   Equity and good conscience militate against permitting Defendants to retain these profits and benefits.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.    Certification of the proposed class(es), appointment of Plaintiffs and their counsel to represent the proposed class members, and notice to the proposed class to be paid by Defendants;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Class Action Complaint;

C.    Injunctive and equitable relief in the form of a recall or free head unit

replacement program, or buyback of the Class Vehicles;

D.      Costs, restitution, damages, including punitive damages, penalties, and

disgorgement in an amount to be determined at trial;

E.      An Order requiring Defendants to pay both pre- and post-judgment

interest on any amounts awarded;

F.      An award of costs and attorneys' fees; and

G.      Such other or further relief as may be appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, request a

jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.


Dated:  April 26, 2023                  Respectfully submitted,

                                        */s/ Andrew W. Ferich*
                                        Andrew W. Ferich (NJ Bar No. 015052012)
                                        **AHDOOT & WOLFSON, PC**
                                        201 King of Prussia Road, Suite 650
                                        Radnor, Pennsylvania 19087
                                        Telephone: (310) 474-9111
                                        Facsimile: (310) 474-8585
                                        aferich@ahdootwolfson.com

                                        Bradley K. King (NJ Bar No. 081472013)
                                        Robert R. Ahdoot (*pro hac vice* to be filed)
                                        **AHDOOT & WOLFSON, PC**
                                        2600 W. Olive Avenue, Suite 500
                                        Burbank, California 91505
                                        Telephone: (310) 474-9111
                                        Facsimile: (310) 474-8585

bking@ahdootwolfson.com
rahdoot@ahdootwolfson.com

Gayle M. Blatt (*pro hac vice* to be filed)
P. Camille Guerra (*pro hac vice* to be filed)
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT**
**& PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
gmb@cglaw.com
camille@cglaw.com

*Attorneys for Plaintiffs and the Putative*
*Classes*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

Dated: April 26, 2023                         */s/ Andrew W. Ferich*
                                              Andrew W. Ferich