Neal Walters (020901993)
Casey Watkins (060122014)
Kristen Petagna (324202020)
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel , NJ 08054-0015
(856) 761-3400
(856) 761-1020 fax
waltersn@ballardspahr.com
watkinsc@ballardspahr.com
petagnak@ballardsparh.com

*Attorneys for Defendants Subaru Corporation
and Subaru of America, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Marco Cilluffo, Jeffrey Quarles, Pamela Doze, and Carl Jean-Louis, Randall Laureano, Margo Chui, Laura MacDonald, Paul Griffin, Jacob Plavnick, Thomas Hennessy, Marc Ferrelli, Jill Yesko, Karen Fitzgerald, Edwin Nieves, Nancy Hennessy, and Theresa Sydoriak,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs; <br><br> v. <br><br> **Subaru of America, Inc. and Subaru Corporation,** <br><br> Defendants. | Case No. 1:23-cv-01897-RBK-MJS <br><br> **Brief in Support of Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint** |

DMFIRM #408737369 v1

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ..................................................................................... 2

    A.    Plaintiffs' allegations ................................................................. 2

    B.    The alleged design defect............................................................ 3

    C.    The warranties made by Subaru of America, Inc. ...................... 4

    D.    The claims and relief sought ...................................................... 4

III.  ARGUMENT........................................................................................... 6

    A.    Plaintiffs lack standing to pursue claims on behalf of putative class members in unrepresented states. ................................ 6

    B.    The claims of nonresident Plaintiffs asserting violations of New Jersey law should be dismissed. .......................................... 7

        1.    New Jersey's choice-of-law rules apply. ....................... 7

        2.    Conflicts exist between the laws of New Jersey and Plaintiffs' home states............................................... 8

        3.    Plaintiffs' home states have the most significant relationship................. 11

    C.    Plaintiffs' warranty claims suffer from several deficiencies. ............................. 14

        1.    SBR made no express warranties to Plaintiffs. ........................ 14

        2.    To the extent Plaintiffs' breach of warranty claims are based on unsubstantiated statements made outside of the Warranty and Maintenance Booklet, they must be dismissed. ........................ 14

        3.    Certain Plaintiffs' implied warranty claims fail for lack of the requisite privity. ......................... 16

        4.    Certain Plaintiffs' warranty claims should be dismissed for failure to provide the requisite pre-suit notice....................... 19

        5.    Certain Plaintiffs' express warranty claims fail because they do not sufficiently allege that they provided SOA with an opportunity to repair their vehicles or that the New Vehicle Limited Warranty was breached. ......................... 20

        6.    Plaintiff Laureano's breach of express warranty claim under the Song-Beverly Act fails as a matter of law. ............................. 22

        7.    Certain Plaintiffs' express warranty claims must fail because they failed to plead the requisite reliance. ......................... 23

        8.    The Hennessys' implied warranty claim is subsumed by New Jersey's Product Liability Act................................. 23

    D.    Plaintiffs' statutory and common law fraud claims fail....................................... 24

        1.    Plaintiffs allege no actionable affirmative misrepresentations. ............... 24

DMFIRM #408737369 v1

2.  Plaintiffs do not allege any facts showing reliance and/or causation. .................................................................. 25

3.  Plaintiffs' fraud claims fail because they do not plead the requisite element of intent. .................................................. 28

4.  Subaru did not owe a duty to disclose any alleged defect. ...................... 33

E.  Certain Plaintiffs' fraudulent concealment claims are barred by the economic loss doctrine. ................................................................ 34

F.  Plaintiff Jean-Louis purchased his leased vehicle years after experiencing issues with the Starlink System and thus, fails to plead a common-law or statutory fraud claim. ................................................................. 35

G.  Plaintiff Doze's common law fraud claim fails because she was never a party to the same transaction with Subaru. ...................................... 36

H.  Certain Plaintiffs' claims are untimely. .............................................. 36

1.  Plaintiff Jean-Louis' NYGBL claim ........................................... 36

2.  Certain California Plaintiffs' claims ........................................... 36

I.  Plaintiff Quarles' common law fraud and unjust enrichment claims ................... 37

J.  The Hennessys' NJCFA claim should be dismissed for failure to allege facts establishing an ascertainable loss. .............................................. 38

K.  Plaintiffs Laureano, Chui, Nieves, and MacDonald's UCL and FAL claims must be dismissed to the extent they seek monetary relief. ................................. 39

L.  Plaintiffs seek injunctive relief they lack standing to pursue. .............................. 39

M.  Plaintiffs do not adequately allege claims for unjust enrichment. ........................ 39

1.  Plaintiffs fail to allege the absence of an adequate remedy at law. .......... 39

2.  The subject of Plaintiffs' unjust enrichment claim is identical to the subject of their warranty claims against Subaru. .................................... 40

3.  Plaintiffs' unjust enrichment claims fail because Plaintiffs did not purchase their vehicles directly from Subaru. ........................................... 40

IV.  CONCLUSION ................................................................................ 40

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alban v. BMW of N. Am., LLC*,
   No. 09-5398, 2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011)................................30, 31

*Banh v. Am. Honda Motor Co.*,
   No. 19-05984, 2019 U.S. Dist. LEXIS 230700 (C.D. Cal. Dec. 17, 2019) ......................10, 20

*Baranco v. Ford Motor Co.*,
   294 F. Supp. 3d 950 (N.D. Cal. 2018) ...................................................................................22

*Burdt v. Whirlpool Corp.*,
   No. 15-01563, 2015 U.S. Dist. LEXIS 102761 (N.D. Cal. Aug. 5, 2015) .............................32

*Carideo v. Dell, Inc.*,
   706 F. Supp. 2d 1122 (W.D. Wash. 2010) (Washington requires knowledge) ......................28

*Catalano v. BMW of N. Am., Ltd. Liab. Co.*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016)................................................................17, 26, 28, 29

*Cavanagh v. Ford Motor Co.*,
   No. 13-4584, 2014 U.S. Dist. LEXIS 68504 (E.D.N.Y. May 19, 2014) ..................................9

*Cont'l 332 Fund, LLC v. Albertelli*,
   No. 17-41, 2018 U.S. Dist. LEXIS 23283 (M.D. Fla. Feb. 13, 2018) ....................................9

*Costa v. FCA US LLC*,
   542 F. Supp. 3d 83 (D. Mass. 2021) (Massachusetts requires reliance and
   causation) .......................................................................................................................26, 28

*Cox v. Chrysler Grp., LLC*,
   No. 14-7573, 2015 U.S. Dist. LEXIS 133393 (D.N.J. Sept. 30, 2015) .................................21

*Cummings v. Blue Diamond Growers*,
   No. 22-141, 2023 U.S. Dist. LEXIS 87395 (N.D. Fla. May 15, 2023) ..................................20

*Cummings v. FCA US L.L.C.*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019)..................................................................................32

*Davis v. Hain Celestial Grp., Inc.*,
   297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..................................................................................29

*Defillippo v. Whirlpool Corp.*,
   No. 18-12523, 2019 U.S. Dist. LEXIS 148304 (D.N.J. Aug. 30, 2019) ................................40

*Diaz v. FCA US LLC*,
No. 21-906, 2022 U.S. Dist. LEXIS 158865 (D. Del. Sept. 2, 2022)................................17, 18

*Duran v. Henkel of Am., Inc.*,
450 F. Supp. 3d 337 (S.D.N.Y. 2020)..................................................................................35

*Elias v. Ungar's Food Prods., Inc.*,
252 F.R.D. 233 (D.N.J. 2008)...............................................................................................9

*Fisher v. Honda N. Am., Inc.*,
No. 13-09285, 2014 U.S. Dist. LEXIS 84570 (C.D. Cal. June 12, 2014) ..............................30

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
No. 03-4558, 2012 U.S. Dist. LEXIS 13887 (D.N.J. Feb. 6, 2012) .......................................16

*Galati v. Commerce Bancorp, Inc.*,
No. 04-3252, 2005 U.S. Dist. LEXIS 26851 (D.N.J. Nov. 7, 2005) ......................................16

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ...............................................................................16

*Gonzalez v. Ford Motor Co.*,
No. 19-652, 2019 U.S. Dist. LEXIS 50844 (C.D. Cal. Mar. 22, 2019)..................................22

*Gotthelf v. Toyota Motor Sales, U.S.A.*,
525 F. App'x 94 (3d Cir. 2013) ...........................................................................................30

*Granillo v. FCA US LLC*,
No. 16-153, 2016 U.S. Dist. LEXIS 116573 (D.N.J. Aug. 29, 2016) ....................................30

*Guerra v. Dematic Corp.*,
No. 18-00376, 2023 U.S. Dist. LEXIS 76093 (D. Nev. May 1, 2023)...................................26

*Henderson v. Volvo Cars of North Am.*,
LLC, 2010 U.S. Dist. LEXIS 73624 (D.N.J. July 21, 2010) .................................................26

*Hernandez v. HP Inc.*,
No. 22-23482, 2023 U.S. Dist. LEXIS 89914 (S.D. Fla. May 23, 2023) .........................10, 20

*Kaplan v. GE*,
No. 22-05296, 2023 U.S. Dist. LEXIS 113125 (D.N.J. June 30, 2023)...........................10, 24

*Khalid v. Microsoft Corp.*,
409 F. Supp. 3d 1023 (W.D. Wash. Sept. 4, 2019)..............................................................37

*Knafo v. Jaguar Land Rover N. Am. LLC*,
No. 18-01401, 2019 U.S. Dist. LEXIS 210836 (C.D. Cal. July 12, 2019)............................23

DMFIRM #408737369 v1

*Kovalev v. Lidl US LLC*,
    2022 U.S. Dist. LEXIS 230259 (E.D. Pa. Dec. 21, 2022) ......................................................15

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. Mar. 31, 2014) ...................................................................37

*Mahoney v. Endo Health Sols., Inc.*,
    No. 15-9841, 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) ..................................8

*Maniscalco v. Bro. Int'l Corp.*,
    709 F.3d 202 (3d Cir. 2013).........................................................................................12, 13

*Martell v. GM LLC*,
    492 F. Supp. 3d 1131 (D. Or. 2020) ..................................................................................27

*McMahon v. Volkswagen Aktiengesellschaft*,
    No. 22-01537, 2023 U.S. Dist. LEXIS 105309 (D.N.J. June 16, 2023)................29, 30, 31, 32

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012).............................................................................................39

*McQueen v. BMW of N. Am.*,
    LLC, No. 12-06674, 2014 U.S. Dist. LEXIS 21084 (D.N.J. Feb. 20, 2014)...........................32

*Metcalfe v. Biomet, Inc.*,
    No. 18-456, 2019 U.S. Dist. LEXIS 7000 (D.N.J. Jan. 15, 2019)............................................9

*Milisits v. FCA US LLC*,
    No. 20-11578, 2021 U.S. Dist. LEXIS 138434 (E.D. Mich. July 26, 2021) ............................8

*Myers v. BMW of N. Am.*,
    LLC, No. 16-00412, 2016 U.S. Dist. LEXIS 140768 (N.D. Cal. Oct. 11, 2016)..............25, 29

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................................................9

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ...............................................................................10

*Nomo Agroindustrial SA DE CV v. Enza Zaden N. Am., Inc.*,
    492 F. Supp. 2d 1175 (D. Ariz. 2007) ..................................................................................9

*O'Boyle v. Braverman*,
    337 F. App'x 162 (3d Cir. 2009) .........................................................................................7

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ...............................................................................16

iii

*Parrott v. Family Dollar, Inc.*,
No. 17-22, 2019 U.S. Dist. LEXIS 160569 (N.D. Ill. Sept. 20, 2019) ..............................10, 19

*Pineda v. Nissan N. Am., Inc.*,
No. 22-0239, 2023 U.S. Dist. LEXIS 8065 (C.D. Cal. Jan. 17, 2023) ...................................35

*Plotts v. Am. Honda Motor Co.*,
No. 22-04529, 2023 U.S. Dist. LEXIS 100987 (C.D. Cal. June 9, 2023) ...............................8

*Plumlee v. Pfizer, Inc.*,
No. 13-00414, 2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014) ...............................37

*Ponzio v. Mercedes-Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020) ........................................................................ *passim*

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. November 24, 2020) ....................................................14

*Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*,
693 F.3d 48 (1st Cir. Aug. 29, 2012) .....................................................................34

*Roffman v. REBBL, Inc.*,
No. 22-05290, 2023 U.S. Dist. LEXIS 16166 (N.D. Cal. Jan. 31, 2023)................................39

*Sarkesian v. Ford Motor Co.*,
No. 22-00966, 2023 U.S. Dist. LEXIS 67999 (S.D. Cal. Apr. 17, 2023).........................10, 37

*Schechter v. Hyundai Motor Am.*,
No. 18-13634, 2020 U.S. Dist. LEXIS 55598 (D.N.J. Mar. 31, 2020)...................................12

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d 776 (N.D. Cal. Feb. 9, 2017) ........................................................22

*Siegemund v. Shapland*,
307 F. Supp. 2d 113 (D. Me. 2004) .......................................................................34

*Silfee v. Auto. Data Processing, Inc.*,
696 F. App'x 576 (3d Cir. 2017) ...........................................................................1

*Stevenson v. Mazda Motor of Am., Inc.*,
No. 14-5250, 2015 U.S. Dist. LEXIS 70945 (D.N.J. June 2, 2015).................................26, 27

*Strzakowlski v. GMC*,
No. 4-4740, 2005 U.S. Dist. LEXIS 18111 (D.N.J. Aug. 16, 2005) .....................................10

*In re Subaru Battery Drain Prods. Liab. Litig.*,
No. 20-03095, 2021 U.S. Dist. LEXIS 62373 (D.N.J. Mar. 31, 2021)........................... *passim*

iv

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
No. 03-9608, 2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23, 2004) ...................................4

*Tatum v. Chrysler Grp. LLC*,
No. 10-4269, 2011 U.S. Dist. LEXIS 32362 (D.N.J. Mar. 28, 2011).......................................15

*Taylor v. N.J.*,
No. 13-6594, 2014 U.S. Dist. LEXIS 118088 (D.N.J. Aug. 25, 2014) ...................................14

*Tomassini v. FCA US LLC*,
No. 14-1226, 2020 U.S. Dist. LEXIS 70683 (N.D.N.Y. Apr. 22, 2020)................................36

*Wilkins v. Navy Fed. Credit Union*,
No. 22-2916, 2023 U.S. Dist. LEXIS 8491 (D.N.J. Jan. 18, 2023).........................................15

*Yagudayev v. BMW of N. Am., LLC*,
No. 20-897, 2020 U.S. Dist. LEXIS 212385 (D.N.J. Nov. 13, 2020) .........................10, 18, 36

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) .....................................................................................8

**State Cases**

*Alloway v. Gen. Marine Indus., L.P.*,
695 A.2d 264 (N.J. 1997)..........................................................................................................9

*Babb v. Regal Marine Indus.*,
No. 43934-4, 2015 Wash. App. LEXIS 369 (Ct. App. Feb. 24, 2015)...............................8, 18

*Bachar v. Terry York Motor Cars*,
No. 21-18290, 2021 Cal. Super. LEXIS 71621 (Nov. 18, 2021)............................................29

*Bannister v. Agard*,
125 A.D.3d 797 (N.Y. 2d Dep't 2015) ...................................................................................35

*In re Cadillac V8-6-4 Class Action*,
461 A.2d 736 (N.J. 1983)........................................................................................................21

*Chaurasia v. Gen. Motors Corp.*,
126 P.3d 165 (Ariz. Ct. App. 2006).........................................................................................8

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996)................................................................................................19, 29

*Copper Sands Homeowners Ass'n v. Flamingo 94*,
No. 08-573517, 2017 Nev. Dist. LEXIS 63 (NV Dist. Ct. 2017)............................................9

*Estate of Cronin v. G4 Dental Enters. Llc*,
No. 84075, 2023 Nev. App. ....................................................................................................26

v

*Daniels v. Select Portfolio Servicing, Inc.*,
 246 Cal. App. 4th 1150, 201 Cal. Rptr. 3d 390 (2016)............................................................28

*Deegan v. Windermere Real Estate/Center-Isle, Inc.*,
 391 P.3d 582 (2017)..................................................................................................................29

*Egan v. Dorlon Terrace Ass'n*,
 No. 21-6052274, 2022 Conn. Super. LEXIS 299 (Super. Ct. Mar. 10, 2022)........................28

*Erny v. Estate of Merola*,
 171 N.J. 86 (2002) ....................................................................................................................13

*Felley v. Singleton*,
 705 N.E.2d 930 (Ill. App. Ct. 1999) .........................................................................................10

*Gaidon v. Guardian Life Ins. Co. of Am.*,
 96 N.Y.2d 201 (N.Y. 2001) ......................................................................................................36

*Gawara v. United States Brass Corp.*,
 63 Cal. App. 4th 1341 (1998) ...................................................................................................27

*Hoffman v. 162 N. Wolfe LLC*,
 228 Cal. App. 4th 1178 (2014) .................................................................................................25

*Kalpake v. Regas*,
 No. 17-1282, 2018 IL App (1st) 171282-U (App. Ct. Mar. 30, 2018) .....................................26

*Kelleher v. Marvin Lumber & Cedar Co.*,
 891 A.2d 477 (N.H. 2005) ..........................................................................................................9

*Kenney v. Hillhouse, Inc.*,
 No. 10-309, 2011 Me. Super. LEXIS 7 (2011)..........................................................................28

*King v. Philip Morris, Inc.*,
 No. 99-856, 2000 N.H. Super. LEXIS 5 (Sup. Ct. Nov. 2, 2000) .....................................26, 28

*Kunkle v. W. Wireless Corp.*,
 Nos. 55067-5-I, 55164-7-I, 2006 Wash. App. LEXIS 1283 (Ct. App. June 19,
 2006) .........................................................................................................................................26

*Larkey v. Health Net Life Ins. Co.*,
 No. 11-0523, 2012 Ariz. App. .................................................................................................25

*In re Lead Paint Litig.*,
 924 A.2d 484 (N.J. 2007)..........................................................................................................24

*Leigh-Pink v. Rio Props.*,
 LLC, 512 P.3d 322 (Nev. 2022) ...............................................................................................28

vi

*Margolis v. Sandy Spring Bank*,
   110 A.3d 784 (Md. 2015) .......................................................................................29

*Martin v. Ort*,
   No. 15-195, 2016 Me. Super. LEXIS 15 (Sup. Ct. Feb. 3, 2016)............................................26

*McAfee v. Select Portfolio Servicing, Inc.*,
   193 Wash. App. 220, 370 P.3d 25 (2016)..................................................................26

*McIntyre v. McIntyre*,
   No. 2685, 2020 Md. App. LEXIS 876 (App. Sep. 3, 2020) ......................................................28

*In re Miller Testamentary Credit Shelter Tr.*,
   462 P.3d 878 (Wash. App. Div. 2020)..................................................................37

*Pascucci v. Cooper*,
   No. 125016433, 2014 Conn. Super. LEXIS 209 (Super. Ct. Jan. 24, 2014) ...........................25

*Phillips v. DePaul Univ.*,
   19 N.E.3d 1019 (Ill. App. Ct. 2014) .......................................................................29

*Phillips v. DePaul Univ.*,
   385 Ill. Dec. 823 (App. Ct. 2014) ..........................................................................26

*Prentice v. R.J. Reynolds Tobacco Co.*,
   338 So. 3d 831 (Fla. 2022)............................................................................25, 28

R.*J. Reynolds Tobacco Co. v. Eighth Judicial Dist. Court*,
   514 P.3d 425 (Nev. 2022) .....................................................................................29

*Rivas v. Estate of Melillo*,
   No. 1531-13, 2015 N.J. Super............................................................................28

*Sanders v. Harris*,
   No. 19-0835, 2021 Ariz. App. ................................................................................25

*Sicignano v. Pearce*,
   No. 22-6126506, 2023 Conn. Super. LEXIS 73 (Super. Ct. Jan. 19, 2023)............................25

*Sixth & Lenora Apts., L.L.C. v. Aquatherm Gmbh*,
   No. 17-20015, 2020 Wash. Super. LEXIS 8463....................................................................9

St*ueve Bros. Farms, LLC v. Berger Kahn*,
   222 Cal. App. 4th 303 (2013) ................................................................................28

*Sullivan v. Pulte Home Corp.*,
   290 P.3d 446 (Ariz. Ct. App. 2012)..........................................................................29

vii

DMFIRM #408737369 v1

*Sun Chem. Corp. v. Fike Corp.*,
235 A.3d 145 (N.J. 2020)........................................................................................24

*P.V. ex rel. T.V. v. Camp Jaycee*,
962 A.2d 453 (N.J. 2008)..........................................................................................7

*Union Ink Co. v. AT&T Corp.*,
801 A.2d 361 (Super. Ct. App. Div. 2002) .............................................................26

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395
Pension Tr. Fund*, 38 P.3d 12 (Ariz. 2002) ...........................................................28

*Worden v. 3203 Farmington LLC*,
No. 1373, 2023 Md. App. LEXIS 381 (App. June 7, 2023)....................................26

**Federal Statutes**

15 U.S.C. § 2310(e) ......................................................................................................21

**State Statutes**

ALM GL Chapter 106, § 2-313 .....................................................................................9

Arizona Consumer Fraud Act §§ 44.1521 *et seq.*.................................................25, 29

California's Consumer Legal Remedies Act §§ 1750 ............................................ *passim*

California's Unfair Competition Law §§ 17200 .................................................... *passim*

New Jersey's Product Liability Act ...............................................................................23

Song-Beverly Consumer Warranty Act ................................................................ *passim*

Cal. Bus. & Prof. Code § 17208 ...................................................................................37

Cal. Civ. Code § 1783...................................................................................................37

Cal. Civ. Proc. Code § 338(d).......................................................................................37

Cal. Code Civ. Proc. § 338(a).......................................................................................37

Cal. Com. Code § 2725.................................................................................................37

Cal. Veh. Code § 11713.3(o)(1)......................................................................................4

Conn. Gen. Stat. § 42a-2-313, cmt. 3.............................................................................9

Connecticut Unfair Trade Practices Act, §§ 42-110A ..............................................6, 25

Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 .........................6

Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1 .................................................6

Maryland Consumer Protection Act §§ 13-101 ...................................................6, 25, 29

Md. Code Ann., Transp. § 15-203(b)(2) ........................................................................4

N.J.S.A. 12A:2-316....................................................................................................15

N.J.S.A. § 2A:58C-1 *et seq*...........................................................................................23

N.Y. Veh. & Traf. Law § 463(2)(bb)...............................................................................4

Nevada Deceptive Trade Practices Act § 598.0903...........................................................6

New Jersey Consumer Fraud Act § 56:8-1 ......................................................................6

New York General Business Law § 349
    ......................................................................................5, 25, 26, 28, 29, 35, 36

Wash. Rev. Code § 4.16.080(3)-(4) ..............................................................................10

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................26, 27

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 27

**Regulations**

N.J.A.C. 13:21-15.2–.4 ................................................................................................4

**Other Authorities**

Justice, *Economic Effects of State Bans on Direct Manufacturer Sales to Car Buyers* (2009), www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-car-buyers ................................................................................4

Restatement (Second) of Conflict of Laws ....................................................................7

DMFIRM #408737369 v1

## I.    INTRODUCTION

Plaintiffs bring this putative class action against Defendants Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR," together with SOA, the "Defendants" or "Subaru"). They allege that each of the sixteen Plaintiffs either purchased or leased a vehicle, which was equipped with a supposedly "defective" Starlink In-Vehicle Technology system ("Starlink System"). Plaintiffs allege faults in the navigation, communication, and entertainment features of the Starlink System installed in their cars. The Plaintiffs attempt to assert claims for breach of warranties, unjust enrichment, statutory fraud, and common-law fraud on behalf of the potential class of purchasers they seek to represent. They demand monetary damages and broad injunctive and equitable relief, which includes options such as a recall, a free head unit replacement campaign, or the buyback of the Class Vehicles.

Contemporaneously with the filing of this motion for failure to state a claim pursuant to Rule 12(b) (6), and pursuant to a binding arbitration agreement, the Subaru Defendants have also filed a petition to compel arbitration and, therefore, remove from this matter, most of the named class representatives, including Plaintiffs Doze, Plavnick, Fitzgerald, Griffin, Sydoriak, Macdonald, Ferrelli, and Chui, along with their corresponding state sub-classes, except for California.[1] Even if those Plaintiffs somehow evade the binding terms of the arbitration agreements, as described herein, their individual claims nonetheless fail due to pleading

---

[1] The aforementioned Plaintiffs voluntarily agreed to the Starlink Terms and Conditions, which require that individual arbitrations—not class actions—shall govern the Plaintiffs' disputes. This shall affect the state sub-classes in Arizona, Nevada, Illinois, Connecticut, Maine and Massachusetts. The petition to compel arbitration and a motion to stay the litigation seeks to enforce this provision, which waives the applicable Plaintiffs' right to pursue this matter in court. In the Third Circuit, the Court must decide the motion to compel arbitration prior to deciding the motion to dismiss in order to appreciate fully the scope of the relevant requests for dismissal. *See Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (quoting *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016) ("Arbitrability is a 'gateway' issue, so 'a court should address the arbitrability of the plaintiff's claim *at the outset* of the litigation.'")).

1

deficiencies.[2] To preserve all of the Subaru Defendants' rights, this motion is presented as though each Plaintiff will continue in this forum.

The Second Amended Complaint incorrectly pursues nationwide claims applying New Jersey law by all Plaintiffs, spread across eleven diverse states. These state laws are in conflict with those of New Jersey. When the appropriate law is applied to each Plaintiff, various claims for breach of express and implied warranties, unjust enrichment, and fraud must be dismissed. Regarding the warranty claims, most Plaintiffs lack standing to bring claims against Defendants due to the absence of privity, and Plaintiffs' failure to provide to Subaru the obligatory notice of the action. Plaintiffs' conclusory allegations regarding purported affirmative misrepresentations equate to nothing more than mere puffery. Further, their accusations of fraudulent concealment fall short, as there are no facts supporting their claims that Defendants had a duty to disclose, or had knowledge of, any defect with the requisite particularity. Finally, along with other individualized state statutory failures, the applicable statutes of limitation bar certain state-specific causes of action.

Defendants respectfully request that this Court dismiss portions of the Second Amended Complaint for failing to state a claim upon which relief may be granted.

## II.  BACKGROUND

### A.  Plaintiffs' allegations

The Second Amended Complaint ("SAC") includes sixteen Plaintiffs asserting claims arising from their purchase and use of fifteen Subaru vehicles. For each Plaintiff, the information on their name, vehicle, and states of residence, purchase location, and repair location is as follows:

---

[2] The only Plaintiffs not subject to the Starlink Terms and Conditions (and the included class action waiver and arbitration agreement) are Plaintiffs Cilluffo, Quarles, Louis, Laureano, Nieves, Thomas and Nancy Hennessy, and Yesko. A majority of their individual claims nonetheless fail as a matter of law.

DMFIRM #408737369 v1

| Name | Vehicle[3] | Resident | Purchase/Lease | Repair |
|---|---|---|---|---|
| Marco Cilluffo | 2021 Subaru WRX | New Hampshire | New Hampshire | New Hampshire |
| Jeffrey Quarles | 2019 Subaru Forester | Washington | Washington | Washington |
| Pamela Doze † | 2022 Subaru Forester | Arizona | Arizona | Arizona |
| Carl Jean-Louis | 2019 Subaru Outback | New York | New York | Not specified |
| Randall Laureano | 2019 Subaru WRX Sti | California | California | California |
| Margo Chui † | 2020 Subaru Outback | California | California | California |
| Edwin Nieves | 2019 Subaru WRX Sti | California | California | California |
| Laura MacDonald † | 2021 Subaru Outback | California | California | California |
| Karen Fitzgerald† | 2022 Subaru Outback | Florida | Nevada | Not specified |
| Nancy and Thomas Hennessy | 2022 Subaru Outback | New Jersey | New Jersey | New Jersey |
| Paul Griffin † | 2021 Subaru Outback | Illinois | Illinois | Illinois |
| Jacob Plavnick † | Pre-Owned 2021 Subaru Outback | Maine | Maine | Maine |
| Theresa Sydoriak † | 2022 Subaru Crosstrek | Connecticut | Connecticut | Connecticut |
| Jill Yesko | 2020 Subaru Outback | Maryland | Maryland | Maryland |
| Marc Ferrelli † | 2021 Subaru Crosstrek | Massachusetts | Massachusetts | Massachusetts |

*See* SAC ¶¶ 16-118.[4]

### B. The alleged design defect

Plaintiffs allege that the Starlink System "suffers from a latent defect that causes the infotainment system to freeze, become non-responsive, experience 'ghost touch' or phantom input,

---

[3] A reference to a year in connection with a vehicle model refers to the model year of that vehicle, which does not necessarily relate to the calendar year.

[4] "†" indicates that the corresponding Plaintiff is bound by the terms of the arbitration agreement and class action waiver.

3

shut off, reboot, work intermittently or not at all." Based on that alleged defect, plaintiffs assert claims of statutory consumer fraud, common law fraud, unjust enrichment, and breach of warranty. SAC ¶ 5.

### C.    The warranties made by Subaru of America, Inc.

SOA does not design or manufacture Subaru vehicles. SBR, a Japanese entity, is the "manufacturer engaged in the development and manufacture of Subaru vehicles, parts, and accessories." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, No. 03-9608, 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). SOA is the "United States importer and distributor of Subaru brand vehicles, parts and accessories." *Id.* at *6. SOA does not sell vehicles directly to consumers; rather, independent franchisee authorized retailers sell the vehicles to consumers.[5] *See* SAC ¶¶ 17, 22, 27, 32, 38, 44, 52, 57, 62, 71, 80, 88, 93, 102, 110 (alleging Plaintiffs purchased or leased vehicles from "authorized Subaru dealer[s]"). SBR does not sell or market vehicles to consumers in the United States. Instead, it relies on its U.S. distributor, SOA, to distribute, and market Subaru brand vehicles. *Subaru Distribs. Corp.*, 2004 U.S. Dist. LEXIS 27086, at *6. SOA is the warrantor of such vehicles.

### D.    The claims and relief sought

Plaintiffs seek to represent a nationwide class comprising "[a]ll persons in the United States that purchased or leased a [2019-2023 Subaru Outback, Legacy, Forester, Crosstrek, and WRX

---

[5] That is required by law because "direct manufacturer auto sales are prohibited in almost every state by franchise laws requiring that new cars be sold only by dealers." Gerald R. Bodisch, US Department of Justice, *Economic Effects of State Bans on Direct Manufacturer Sales to Car Buyers* (2009), www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-car-buyers. Indeed, the vast majority of states either prohibit manufacturers or domestic distributors from directly selling internal combustion engine vehicles, like the Class Vehicles, and require that such vehicles be sold through independent franchisees or they prohibit direct sales if an existing franchisee system is in place. *See, e.g.*, N.J.A.C. 13:21-15.2–.4. (requiring proof of franchise agreement with a manufacturer to sell vehicles in the state); Md. Code Ann., Transp. § 15-203(b)(2) (West) (requiring a franchise agreement with a manufacturer); Cal. Veh. Code § 11713.3(o)(1) (Deering) (making it unlawful for a manufacturer "[t]o compete with a dealer in the same line-make operating under an agreement or franchise from a manufacturer or distributor in the relevant market area"); N.Y. Veh. & Traf. Law § 463(2)(bb) (prohibiting a franchisor from acquiring an interest in the dealerships).

4

("Class Vehicle")] equipped with a Subaru Starlink infotainment system for end use and not for resale." SAC ¶ 148. Alternatively, the SAC seeks to certify twelve statewide classes under Arizona, California, Connecticut, Illinois, Maine, Maryland, Massachusetts, Nevada, New Hampshire, New Jersey, New York, and Washington law. *Id.* ¶ 149

Plaintiffs assert nineteen causes of action against Subaru.

| Count | Cause of Action | Asserted By |
|---|---|---|
| One | Common Law Fraud/Fraudulent Concealment | All Plaintiffs and the State Classes |
| Two | Breach of Express Warranty | All Plaintiffs and the Nationwide Class, or in the Alternative, the State Classes |
| Three | Breach of the Implied Warranty of Merchantability | All Plaintiffs and the Nationwide Class, or in the Alternative, the State Classes |
| Four | Violation of the New Hampshire Consumer Protection Act § 358-A:2 ("NHCPA") | Plaintiff Cilluffo and the New Hampshire Class |
| Five | Violation of New York General Business Law § 349 ("NYGBL") | Plaintiff Jean-Louis and the New York Class |
| Six | Violation of Washington Consumer Protection Act §§ 19.86.010 ("WCPA") | Plaintiff Quarles and the Washington Class |
| Seven | Violation of Arizona Consumer Fraud Act §§ 44.1521 *et seq.* ("ACFA") | Plaintiff Doze and the Arizona Class |
| Eight | Violation of the Song-Beverly Consumer Warranty Act for Breach of Express Warranty §§ 1791.2 and 1793.2(d) | Plaintiff Laureano, Plaintiff Chui, Plaintiff Nieves, Plaintiff MacDonald, and the California Class |
| Nine: | Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty §§ 1791.2 and 1792 | Plaintiff Laureano, Plaintiff Chui, Plaintiff Nieves, Plaintiff MacDonald, and the California Class |
| Ten: | Violation of California's False Advertising Law §§ 17500 ("FAL") | Plaintiff Laureano, Plaintiff Chui, Plaintiff Nieves, Plaintiff MacDonald, and the California Class |
| Eleven | Violation of California's Consumer Legal Remedies Act §§ 1750 ("CLRA") | Plaintiff Laureano, Plaintiff Chui, Plaintiff Nieves, Plaintiff MacDonald, and the California Class |
| Twelve | Violation of California's Unfair Competition Law §§ 17200 ("UCL") | Plaintiff Laureano, Plaintiff Chui, Plaintiff Nieves, Plaintiff MacDonald, and the California Class |

5

DMFIRM #408737369 v1

| Thirteen | Violation of the New Jersey Consumer Fraud Act § 56:8-1 ("NJCFA") | All Plaintiffs and the Nationwide Class or in the Alternative the State Classes[6] |
|---|---|---|
| Fourteen | Violation of the Maryland Consumer Protection Act §§ 13-101 ("MCPA") | Plaintiff Jill Yesko and the Maryland Class |
| Fifteen | Violation of the Connecticut Unfair Trade Practices Act, §§ 42-110A ("CUTPA") | Plaintiff Theresa Sydoriak and the Connecticut Class |
| Sixteen | Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 ("ICFA") | Plaintiff Paul Griffin and the Illinois Class |
| Seventeen | Violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1 ("IUDTPA") | Plaintiff Paul Griffin and the Illinois Class |
| Eighteen | Violation of the Nevada Deceptive Trade Practices Act § 598.0903 ("NDTPA") | Plaintiff Karen Fitzgerald and the Nevada Purchasers Class |
| Nineteen | Unjust Enrichment | All Plaintiffs and the Nationwide Class, or in the Alternative, the State Classes |

Subaru now moves to dismiss Plaintiffs' SAC.

## III.    ARGUMENT

### A.    Plaintiffs lack standing to pursue claims on behalf of putative class members in unrepresented states.

Plaintiffs in this class action propose to assert four claims on behalf of a putative "nationwide class:" breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), Violation of the NJCFA (Count XIII), and unjust enrichment (Count XIX). However, Plaintiffs neither reside nor purchased their vehicles in most of the states in the proposed "nationwide" class.

As this Court recently held in *Cohen v. Subaru of Am., Inc.*, relying on "the well-settled principle that 'a plaintiff must demonstrate standing for each claim he seeks to press,'" named plaintiffs in a putative class action "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury." No. 20-8442, 2022 U.S. Dist.

---

[6] The heading to Count XIII states it is asserted on behalf of Plaintiffs Thomas and Nancy Hennessy and the New Jersey class; however, the second paragraph of Count XIII states "[t]his claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes." SAC ¶ 296.

6

LEXIS 42511, at *17 (D.N.J. Mar. 10, 2022) (quoting *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 221 (D.N.J. 2020)). Accordingly, Plaintiffs' nationwide claims in this action should be dismissed for lack of standing to the extent they purport to encompass states other than those in which a named Plaintiff purchased his or her vehicle. *Id.* (dismissing nationwide claims, like those asserted here, to the extent they encompassed states other than the states represented by the named plaintiffs).

**B.    The claims of nonresident Plaintiffs asserting violations of New Jersey law should be dismissed.**

Other than Plaintiffs Nancy and Thomas Hennessy—New Jersey residents—each of the Plaintiffs purchased, used, and claim to have experienced the alleged issues with their vehicles in states other than New Jersey. As to them, the New Jersey claims—including breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), Violation of the NJCFA (Count XIII), and unjust enrichment (Count XIX)—must be dismissed for failure to state a claim.

**1.    New Jersey's choice-of-law rules apply.**

New Jersey's choice-of-law rules apply to this case.[7] *O'Boyle v. Braverman*, 337 F. App'x 162, 165 (3d Cir. 2009). The first step is "to determine whether there is an actual conflict between New Jersey law and the laws of the other relevant jurisdictions." *Burd*, 2021 U.S. Dist. LEXIS 62373, at *33. Where a conflict exists, New Jersey follows the "most significant relationship test" of the Restatement (Second) of Conflict of Laws to determine which state's law applies. *See id.* at *34. There is a presumption the law of the state of injury applies "unless another state has a more significant relationship to the parties and issues." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).

---

[7] *See Cohen*, 2022 U.S. Dist. LEXIS 42496, at *19-22 (making a choice of law determination at the motion to dismiss stage); *see also In re Subaru Battery Drain Prods. Liab. Litig.* ("*Burd*"), No. 20-03095, 2021 U.S. Dist. LEXIS 62373, at *32 (D.N.J. Mar. 31, 2021) (holding that in the Third Circuit "the choice of law analysis in a putative class action can be done at the motion to dismiss stage" and thereafter analyzing each claim's choice of law determinations accordingly).

DMFIRM #408737369 v1

 2.     **Conflicts exist between the laws of New Jersey and Plaintiffs' home states.**

a.     **Contract claims**

Various conflicts exist between New Jersey and the Plaintiffs' home states regarding the contract claims.

First, Arizona, Connecticut, Illinois, Nevada, New York, Florida, and Washington require plaintiffs asserting implied warranty claims to have vertical privity with the defendant. *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty."); *Milisits v. FCA US LLC*, No. 20-11578, 2021 U.S. Dist. LEXIS 138434, at *19-21 (E.D. Mich. July 26, 2021) (summarizing case law in Connecticut which holds that vertical privity between plaintiff and defendant is required to proceed on a claim for implied warranties and asserting that there is no exception for third-party beneficiaries); *Plotts v. Am. Honda Motor Co.*, No. 22-04529, 2023 U.S. Dist. LEXIS 100987, at *31-33 (C.D. Cal. June 9, 2023) (quoting *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004)) ("In actions for breach of implied warranty of merchantability [in Illinois]. . . [i]n order for a plaintiff to file a claim for economic damages . . . he or she must be in vertical privity of contract with the seller."); *Mahoney v. Endo Health Sols., Inc.*, No. 15-9841, 2016 U.S. Dist. LEXIS 94732, at *13 (S.D.N.Y. July 20, 2016) (quoting *Lexow & Jenkins v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25, 26 (N.Y. App. Div. 2nd Dept. 1986) (holding that privity is required for a breach of warranty claim where there is no personal injury and that "no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss . . . is alleged.")); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 830 (C.D. Cal. 2022) (quoting *Belcher v. Nev. Rock & Sand Co.*, 516 F.2d 859, 860 (9th Cir. 1975)) (the court reiterated that "[u]nder Nevada law, 'contractual privity is a prerequisite for a breach of warranty action" and dismissed the breach of implied warranty claim where "plaintiff purchased a vehicle from an authorized dealership" because such purchase did not create privity with the manufacturing defendants); *Babb v. Regal Marine Indus.*, No. 43934-4, 2015 Wash. App. LEXIS 369, at *5 (Ct.

8

App. Feb. 24, 2015) (noting that the Washington Supreme Court has dismissed "claims for breach of implied warranties of merchantability where privity between purchaser and manufacturer was absent."). New Jersey does not impose a privity requirement for warranty claims. *See Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 275 (N.J. 1997).

Second, certain states have varying definitions of what constitutes the "basis of the bargain" for express warranty obligations. New Jersey law does not strictly require reliance on the warranty at the time of purchase. *See Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008) (citing *Bregman Screen & Lumber Co. v. Bechefsky*, 83 A.2d 804 (N.J. App. Div. 1951)). In New Jersey, as well as in California, Connecticut, Maine, New Hampshire and Washington,[8] in order for a warranty to become the "basis of the bargain" the Plaintiff must have been aware of the warranty's existence for it to be considered part of the bargain. New York, Arizona, Massachusetts, Nevada and Florida, on the other hand, require reliance to adequately plead a breach of warranty. *Taupier v. Davol*, Inc., 490 F. Supp. 3d 430, 438 (D. Mass. 2020); *Cont'l 332 Fund, LLC v. Albertelli*, No. 17-41, 2018 U.S. Dist. LEXIS 23283, at *15 (M.D. Fla. Feb. 13, 2018); *Cavanagh v. Ford Motor Co.*, No. 13-4584, 2014 U.S. Dist. LEXIS 68504, at *12 (E.D.N.Y. May 19, 2014); *Nomo Agroindustrial SA DE CV v. Enza Zaden N. Am., Inc.*, 492 F. Supp. 2d 1175, 1184 (D. Ariz. 2007); *Copper Sands Homeowners Ass'n v. Flamingo 94*, No. 08-573517, 2017 Nev. Dist. LEXIS 63, at *8-9 (NV Dist. Ct. 2017). Illinois follows a different

---

[8] *Metcalfe v. Biomet, Inc.*, No. 18-456, 2019 U.S. Dist. LEXIS 7000, at *6 (D.N.J. Jan. 15, 2019) (quoting *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992) ("In New Jersey, 'a plaintiff effectuates the basis of the bargain requirement of section 12A:2-313 by proving that she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise.'")); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972 (N.D. Cal. 2014) (in California, reliance is not necessary but the warranties must be known at the time of the agreement in order to become a part of the bargain); Conn. Gen. Stat. § 42a-2-313, cmt. 3 (in Connecticut, reliance is not necessary but the warranties "about the goods *during* a bargain are regarded as part of the description of those goods") (emphasis added); ALM GL ch. 106, § 2-313 (Maine requires the same); *Sixth & Lenora Apts., L.L.C. v. Aquatherm Gmbh*, No. 17-20015, 2020 Wash. Super. LEXIS 8463, at *4 (Washington requires that the plaintiff be at least aware of the representations that made up the bargain); *Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2005) (New Hampshire requires the same).

9

approach, holding that a seller's affirmations prior to or at the time of sale create a rebuttable presumption of reliance by the purchaser. *Felley v. Singleton*, 705 N.E.2d 930, 934 (Ill. App. Ct. 1999). However, "[w]hen privity is lacking, the background rule mandates pleading and proving reliance." *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 917 (N.D. Cal. 2018).

Third, both Illinois and Florida require pre-suit notification to a remote seller/manufacturer to succeed on express and implied warranty claims; failure to provide such notification requires dismissal of the claims. *Parrott v. Family Dollar, Inc.*, No. 17-22, 2019 U.S. Dist. LEXIS 160569, at *5-7 (N.D. Ill. Sept. 20, 2019); *Hernandez v. HP Inc.*, No. 22-23482, 2023 U.S. Dist. LEXIS 89914, at *11 (S.D. Fla. May 23, 2023). In addition, Nevada requires pre-suit notification to the seller within a reasonable time after the vehicle owner discovers any breach, and that Plaintiff plead the date of such notification. *Banh v. Am. Honda Motor Co.*, No. 19-05984, 2019 U.S. Dist. LEXIS 230700, at *30 (C.D. Cal. Dec. 17, 2019). Unlike these states, New Jersey has no such requirement. *Strzakowlski v. GMC*, No. 4-4740, 2005 U.S. Dist. LEXIS 18111, at *10-11 (D.N.J. Aug. 16, 2005) (holding that New Jersey does not require notice manufacturer and, if anything, filing a complaint would suffice).

### b.    Fraudulent omission

Unlike New Jersey, Arizona law does not impose a duty to disclose for fraudulent concealment claims; instead, such claims may be brought only "between counterparties to a transaction." *Yagudayev v. BMW of N. Am., LLC*, No. 20-897, 2020 U.S. Dist. LEXIS 212385, at *24 (D.N.J. Nov. 13, 2020). Additionally, California's statute of limitations for common law fraud claims, as well as unjust enrichment claims sounding in fraud, is three years, whereas New Jersey's statute of limitations is six years for both claims. *Sarkesian v. Ford Motor Co.*, No. 22-00966, 2023 U.S. Dist. LEXIS 67999, at *9 (S.D. Cal. Apr. 17, 2023); *Kaplan v. GE*, No. 22-05296, 2023 U.S. Dist. LEXIS 113125, at *12 (D.N.J. June 30, 2023). Similarly, unlike New Jersey, Washington's statute of limitations for common law fraud and unjust enrichment claims is three years. Wash. Rev. Code § 4.16.080(3)-(4).

10

DMFIRM #408737369 v1

Therefore, for the above referenced claims, a true conflict exists requiring a consideration of the most significant relationship test to determine which conflicting state's law applies.

### 3.    Plaintiffs' home states have the most significant relationship.

Having determined that conflicts exist between the laws of New Jersey and Plaintiffs' home states, the Court must determine which state has the most significant relationship to each claim. *See supra* at 7-11; *infra* at 16-20, 23, 36-38. The analysis involves the application of the elements outlined in Restatement § 188, specifically applicable to the contract claims, Restatement § 148, specifically applicable to the fraud claims, as well as the general elements provided in Restatement § 6, which apply to every claim.

### a.    Contract claims – Restatement § 188

Plaintiffs' warranty-based causes of action are governed by Restatement § 188. That section considers: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. If the place of negotiating and the place of performance are in the same state, the law of that state is presumed to apply. *See* Restatement § 188(3).

With the exception of Plaintiff Fitzgerald,[9] the non-New Jersey Plaintiffs negotiated their vehicle purchases, drove and purportedly experienced the alleged Starlink System problems, and presented their vehicles for repair, in their respective home states outside of New Jersey. SAC ¶¶ 16-118. Therefore, the presumption applied in favor of each plaintiff's home state. Even if the presumption provided by § 188(3) did not apply, four of the five factors favor the law of Plaintiffs'

---

[9] Unlike the other named Plaintiffs, Plaintiff Fitzgerald did not purchase her vehicle in her home state (Florida) and instead bought it in Nevada. Plaintiff alleges that she visited an authorized dealership to complain about the Starlink System; however, she failed to specify whether she visited a dealership in Florida (her home state), Nevada (state of purchase), or another state. It is likely that she visited a dealership within her own home state. Nonetheless, given Plaintiff's failure to specify, Subaru's motion to dismiss includes analysis for the warranty claims under both Nevada and Florida law. In either situation, there is nothing in the SAC that would suggest she complained to a New Jersey dealership. Thus, the Restatement factors still do not weigh in favor of New Jersey.

11

home states, as they were the places of contracting, negotiation, performance, and location of the vehicles. The fifth and final factor is, at best, a draw. Therefore, the law of each Plaintiff's home state governs their respective contract claims.

### b.    Fraud claims: Restatement § 148

Restatement § 148 governs the choice-of-law analysis applicable to fraud claims (Count I). The Court must weigh (1) the place where the plaintiff acted in reliance upon the defendant's representations; (2) the place where the plaintiff received the representation; (3) the place where the defendant made the representations; (4) the residence or place of incorporation and place of business of the parties; (5) the place where the tangible thing, which is the subject of the transaction between the parties, was at the time; and (6) the place where a plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement § 148(2).

These factors overwhelmingly favor the law of Plaintiffs Quarles, Doze, Laureano, Chui, and Nieves' home states. Factors (1), (2), and (5)—the place where Plaintiff acted in reliance, where Plaintiff received the alleged representations, and where the tangible thing was situated—all favor Arizona, California, and Washington. *See, e.g.*, *Maniscalco v. Bro. Int'l Corp.*, 709 F.3d 202, 208 (3d Cir. 2013). Factor (4)—the residence of the parties—favors Plaintiffs' home states. *Id.* (citing Restatement § 148 cmt. i (noting residence of plaintiff is more important than residence of defendant)). Factor (6), which "applies within the context of contract disputes, is irrelevant to the present litigation 'since there is no contract performance required by Plaintiff.'" *Schechter v. Hyundai Motor Am.*, No. 18-13634, 2020 U.S. Dist. LEXIS 55598, at *17-8 (D.N.J. Mar. 31, 2020) (quoting *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 448 (D.N.J. 2012)).

Only one of the six factors—the place where the defendant made the representations— could weigh in favor of New Jersey. That factor, however, is irrelevant because no Defendant made any representations to Plaintiffs, who purchased their vehicle from a third party.

12

The "overwhelming majority of courts" in similar cases have concluded that the law of the plaintiff's home state must govern. *Maniscalco*, 709 F.3d at 209. Therefore, the law of their home states governs Plaintiff Doze, Quarles, Laureano, Chui, and Nieves' fraud claims.

### c.     All claims – Restatement § 6

Restatement § 6, applies to all claims. That section serves only to reinforce the conclusion that the law of Plaintiffs' home states governs. That section considers: (1) interstate comity; (2) the interests of the parties; (3) the underlying field of law; (4) the interests of judicial administration; and (5) the interests of the states. The Supreme Court of New Jersey has noted that factors (2) and (4) carry the least weight. *See Erny v. Estate of Merola*, 171 N.J. 86, 101–02 (2002). On the first factor—interstate comity—the Third Circuit has been clear:

> [T]he interests of interstate comity favor applying the law of the [plaintiff's] own state. Applying New Jersey law to every potential out-of-state claimant would frustrate the policies of each [plaintiff's] state.

*Maniscalco*, 709 F.3d at 209 (internal citation omitted). On the second factor—the interests of the parties—the Third Circuit has been equally clear: "Because the only contacts between the parties took place in [the plaintiff's home state], it is reasonable to assume that they expected that [that state's] law would apply." *Id.* at 209–10.

The third factor—the underlying field of law—slightly favors the law of each Plaintiff's home state. Contract claims serve two purposes: compensating injured parties, which favors Plaintiffs' home states, and deterring corporate misconduct, which favors New Jersey—where SOA is located. *See id.* at 210. The fourth factor—the interests of judicial administration—might favor New Jersey, as applying a single state's law might be simpler, but those interests "must yield to the interests of the other factors." *Id.* (citing *Fu v. Fu*, 733 A.2d 1133, 1142 (1999)). Finally, the fifth factor—the interests of the states—plainly favors the law of Plaintiffs' home states, as "the interest [of the home state] in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud." *Id.*

13

Restatement § 6 overwhelmingly supports applying the law of each Plaintiff's home state, further reinforcing the application of the claim-specific elements of Restatement § 188. To the extent non-New Jersey Plaintiffs bring claims under New Jersey law, those claims must be dismissed.

### C.    Plaintiffs' warranty claims suffer from several deficiencies.

#### 1.    SBR made no express warranties to Plaintiffs.

Plaintiffs' breach of express warranty claims against SBR (Counts I and VIII) fail at the outset because SBR was not a party to the express written warranties. As this Court noted in *Powell*, the Warranty and Maintenance Booklet conspicuously states, "[t]hese warranties are made by Subaru of America, Inc. ("SOA")." *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 882 (D.N.J. November 24, 2020). There is no mention of SBR as a warrantor in that document, and Plaintiffs do not otherwise plead any contact with SBR in connection with their vehicle purchases. *Id.* "It is settled law that non-parties to a contract cannot be held liable for a breach of that agreement." *Taylor v. N.J.*, No. 13-6594, 2014 U.S. Dist. LEXIS 118088, at *28 (D.N.J. Aug. 25, 2014). Thus, Counts I and VIII, to the extent based on SBR's breach of an express warranty, must be dismissed.

#### 2.    To the extent Plaintiffs' breach of warranty claims are based on unsubstantiated statements made outside of the Warranty and Maintenance Booklet, they must be dismissed.

Plaintiffs place significant emphasis on marketing and promotional materials referencing the features and capabilities of the Starlink System as the basis for their breach of warranty claims (Counts I and VIII). *See* SAC ¶¶ 172, 233. However, those materials do not contain any express warranties made by SOA with respect to Plaintiffs' vehicles.

The only warranties made by SOA are the written warranties provided to Plaintiffs in the Warranty and Maintenance Booklet that accompanies each new vehicle. *See* Walters Decl. Ex. A, at 7 (2020 Wnty. & Maint. Booklet). That Warranty Booklet states:

> THESE WARRANTIES AND THE EMISSION RELATED
> WARRANTIES APPEARING ELSEWHERE IN THIS BOOKLET

14

> ARE THE ONLY EXPRESS WARRANTIES BY SOA ON THE VEHICLE AND ON GENUINE SUBARU OPTIONAL ACCESSORIES INSTALLED ON THE VEHICLE PRIOR TO DELIVERY.

That disclaimer is clear and conspicuous. *See* N.J.S.A. 12A:2-316.

In addition, it is well-settled generic statements related to safety, quality, reliability, and convenience constitute, at most, non-actionable puffery; and therefore, cannot create an express warranty. *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *48 (finding that the complaint failed to allege any actionable misrepresentations where the only affirmative representations identified in the complaint were Subaru advertisements and sales brochures that "generally promot[ed] the safety, dependability, and reliability of Subaru vehicles"); *Cohen*, No. 20-08442, Consolidated Amended Class Action Complaint (ECF No. 33) ¶¶ 291-306; *Burd*, 2021 U.S. Dist. LEXIS 62373, at *75 n.21 (D.N.J. Mar. 31, 2021) (holding that marketing materials "generally touting the quality, durability and reliability of Subaru vehicles" [i.e. "Outback models [have] 'go-everywhere capability;'" "Class Vehicles are built to minimize limits and maximize versatility, durability and all- round safety;" "you'll always drive with confidence, thanks to legendary Subaru quality, durability, and reliability;" and "Subaru also touts that 97% of the vehicles it has sold in the past 10 years are still on the road today"] . . . amount[] to mere puffery [and are] not actionable") (citing *Burd*, No. 20-3095, Consolidated Class Action Complaint ¶ 166);  *Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 U.S. Dist. LEXIS 8491, at *45 (D.N.J. Jan. 18, 2023)(finding that marketing statements related to safety and security are puffery as they are neither concrete nor measurable); *Kovalev v. Lidl US LLC*, 2022 U.S. Dist. LEXIS 230259, at *35 (E.D. Pa. Dec. 21, 2022) ("Here, 'New & Improved' and 'High Quality' are examples of puffery. . . . While these terms convey a positive image, they offer no significant measurable value. Instead, they are more fairly characterized as the opinion of the seller or commendation of the goods, thereby rendering the claim for breach of an express warranty nonactionable."); *Tatum v. Chrysler Grp. LLC*, No. 10-4269, 2011 U.S. Dist. LEXIS 32362, at *13-15 (D.N.J. Mar. 28, 2011) (collecting cases) (holding that generalized statements about reliability and durability constitute "non-actionable

15

hyperbole or puffery" rather than express warranties); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2012 U.S. Dist. LEXIS 13887, at *46 n.8 (D.N.J. Feb. 6, 2012); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal. 2012) (finding statements that the defendant "underscores [its] strategy to provide a seamless, secure, context-aware experience across [its] product portfolio and to deliver innovation at unmatched scale" nonactionable puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("[G]eneralized and vague statements of product superiority such as superb, uncompromising quality" and "longer battery life are . . . all non-actionable puffery."); *Galati v. Commerce Bancorp, Inc.*, No. 04-3252, 2005 U.S. Dist. LEXIS 26851, at *1 (D.N.J. Nov. 7, 2005) (finding remarks attributing growth to the defendants' "unique business model" and "convenience" to be nonactionable puffery).

Thus, Plaintiffs' express warranty claims in Counts I and VIII cannot survive to the extent they are based on statements purportedly made outside of the Warranty and Maintenance Booklet and must be dismissed.

### 3. Certain Plaintiffs' implied warranty claims fail for lack of the requisite privity.

Plaintiffs Doze (Arizona), Sydoriak (Connecticut), Griffin (Illinois), Fitzgerald (Nevada/Florida), Jean-Louis (New York), and Quarles (Washington) must assert that they are in direct vertical privity with Subaru or, in states where exceptions are applicable, provide sufficient allegations to demonstrate an exception is met. *See supra* at 8-9. The SAC affirms the lack of privity between Plaintiffs and Subaru. Specifically, Plaintiffs assert that they bought the subject vehicles from third-party dealerships, not directly from Defendants. *See* SAC ¶¶ 22 (Quarles), 27 (Doze), 32- 33 (Jean-Louis), 62 (Fitzgerald), 80 (Griffin), 93 (Sydoriak).

Plaintiffs attempt to circumvent the privity requirements by making conclusory allegations that (1) they were intended third-party beneficiaries of contracts between Subaru and their dealers, and/or (2) they had direct dealings with Subaru or their agents. Neither are sufficiently pled and dismissal is warranted.

16

First, New York and Florida recognize a narrow third-party beneficiary exception to the privity requirements. *Diaz v. FCA US LLC*, No. 21-906, 2022 U.S. Dist. LEXIS 158865, at \*117, \*122 (D. Del. Sept. 2, 2022). To meet this exception under Florida law, a plaintiff is required to sufficiently allege facts that demonstrate "the contracting parties [i.e. authorized dealerships and Subaru] . . . 'clearly express[ed],' through their dealings, their 'intent to create a right primarily and directly benefiting a third party." *Id.* (quoting *Warren v. Monahan Beaches Jewelry Ctr., Inc.*, 548 So. 2d 870, 872 (Fla. Dist. Ct. App. 1989)). Similarly, under New York law, a plaintiff is required to sufficiently allege facts that demonstrate "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Id.* (citing *State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000)). Conclusory allegations—such as those set forth in the SAC—are woefully deficient under both New York and Florida law. *See* SAC ¶ 187; *Diaz*, 2022 U.S. Dist. LEXIS 158865, at \*117-18, \*122-23 (dismissing New York and Florida implied warranty claims where the Plaintiffs failed to allege any "actual facts as to the nature and content of the alleged agreements between [defendant] and its dealerships—must less to show evidence of the contracting parties' intent" and holding "Plaintiffs cannot merely assume, without any facts to support their assumption, that they are the intended beneficiaries of those agreements"); *Catalano v. BMW of N. Am., Ltd. Liab. Co.*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016) (dismissing allegations that class member vehicle buyers were third-party beneficiaries based solely on the theory that the defendants knew that consumers were the end users of their vehicles and where "the [Complaint] does not cite any provisions from the alleged contracts between BMW and dealerships indicating that the class members were intended third-party beneficiaries of those agreements").

Washington also acknowledges an intended beneficiary exception to the privity requirement, but only where the manufacturer directly communicated with the consumer about the specifications for the design of the product eventually provided to the consumer and where the

17

manufacturer was aware of the consumer's identity. *See Babb v. Regal Marine Indus.*, No. 43934-4-II, 2015 Wash. App. LEXIS 369, at *10 (Ct. App. Feb. 24, 2015) (citing *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496 (Wash. 1967) (holding that where the defendant knew the individual plaintiff's identity, designed the product to the plaintiff's specification, and delivered the components directly to the plaintiff, the plaintiff could prevail even though it only had contractual privity with the non-party seller. Here, Plaintiff Quarles does not allege that Subaru knew his identity, that the car was manufactured to his specifications communicated directly to Subaru, or that any personalized relationship existed. As a result, this exception is inapplicable, and the claim fails as a matter of law. *See generally* SAC.

Second, Florida recognizes an exception for direct dealings between the defendant and plaintiff. However, Florida's direct dealings exception is not met in this case, where the plaintiff, in a conclusory fashion, merely alleges "sufficient direct dealings with either [Subaru] or its agent dealerships to establish privity" through speaking with a dealership's sales representative or viewing a defendant's marketing materials prior to purchase. *Diaz*, 2022 U.S. Dist. LEXIS 158865, at *112-13. Neither allegation amounts to what the exception requires: direct dealings with Subaru.

Third, New York and Florida each recognize an exception when plaintiffs plead facts that plausibly demonstrate an agency relationship between the defendants and the dealerships from which the plaintiffs purchased the Class Vehicles. *Diaz*, 2022 U.S. Dist. LEXIS 158865, at *113, *119-20. Here, Plaintiffs Jean-Louis, Fitzgerald, and Quarles rely exclusively on the third-party beneficiary and direct dealings exceptions. SAC ⁋ 187. In support of the direct dealings exception, Plaintiffs baldly assert the dealerships are Subaru's agents; however, Plaintiffs fail to provide <u>any</u> fact indicating that Subaru exercises any control over the dealers sufficient to withstand its burden. As such, the agency exception to the privity requirement is not applicable. *Diaz v. FCA US LLC*, 2022 U.S. Dist. LEXIS 158865, *121 (holding New York and Florida plaintiffs failed to allege facts sufficiently alleging an agency relationship between a manufacturer and its dealerships where the only allegations included were either "too conclusory to be plausible, or only serve [to] reemphasize the dealerships' 'authorized' status"); *see also Yagudayev*, 2020 U.S. Dist. LEXIS

18

212385, *25 (quoting *Zeno v. Ford Motor Co., Inc.*, 480 F. Supp. 2d 825, 845-46 (W.D. Pa. 2007) (recognizing that courts within the Third Circuit "have observed that 'automobile dealerships generally are not agents of automobile manufacturers regarding the selling of vehicles' absent affirmative evidence to the contrary" and holding a plaintiff failed to sufficiently allege agency where the complaint plead no facts to demonstrating agency with regards to sales)).

### 4. Certain Plaintiffs' warranty claims should be dismissed for failure to provide the requisite pre-suit notice.

#### a. Plaintiff Griffin (Illinois)

Illinois requires that plaintiffs asserting warranty claims must provide the manufacturer pre-suit notice within a reasonable time after they discover, or should have discovered, the alleged breach. 810 ILCS 5/2-607(3) (a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). Notice to an authorized dealer is insufficient nor is knowledge of general problems with a product sufficient to satisfy Illinois' notice requirement to manufacturers of a product. Illinois demands "actual knowledge of the defect of the particular product" to fulfill the pre-suit notice obligation for warranty claims against the manufacturer when direct notice is not provided. *Parrott*, 2019 U.S. Dist. LEXIS 160569, at *5 (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 587 (Ill. 1996)). Actual knowledge is not satisfied where the seller or manufacturer was only "aware of problems with a particular product." *Connick*, 675 N.E.2d at 590. Instead, "the notice requirement … is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id.* The SAC does not contain any allegation that Plaintiff Griffin provided actual notice to Subaru or that Subaru was aware of the alleged breach of warranty claims specific to Plaintiff Griffin's vehicle within a reasonable time after he experienced issues with his Starlink System. *See* SAC ¶¶ 79-86, 178, 186.

#### b. Plaintiff Fitzgerald (Florida/Nevada)

Plaintiff Fitzgerald's warranty claims fail under both Florida and Nevada law. First, Florida mandates that Plaintiff Fitzgerald provide the manufacturer with pre-suit notice within a

19

reasonable time after discovering the alleged breach. *Hernandez*, 2023 U.S. Dist. LEXIS 89914, *10-1 (finding pre-suit notice to a manufacturer was required because "[i]nterpreting Section 672.607(3)(a) in a manner that would not require notice to a manufacturer would defeat legislative intent"). Unlike New Jersey, Florida's pre-suit notice requirement is not satisfied by the filing of the complaint. *Cummings v. Blue Diamond Growers*, No. 22-141, 2023 U.S. Dist. LEXIS 87395, at *11-2 (N.D. Fla. May 15, 2023)("[T]he whole point of the notice requirement is to allow a defendant to cure the defect and thus to make good its warranty without a lawsuit. . . . Accordingly, notice by filing the complaint is legally insufficient.").

Second, even if pre-suit notice is not required to the manufacturer, Plaintiff Fitzgerald's warranty claims still fail because she did not plead when she provided pre-suit notice to the authorized dealership. Both Nevada and Florida necessitate that Plaintiff Fitzgerald provide notice *within a reasonable time* after the injury occurred. Consequently, Plaintiff Fitzgerald must include allegations regarding *when* such notice was provided. *See Banh*, 2019 U.S. Dist. LEXIS 230700, at *30 (quoting Nev. Rev. Stat. Ann. § 104.2607 (dismissing plaintiff's Nevada warranty claims where plaintiff only alleged that "she called [the dealership] about the issues she was experiencing with the infotainment system, [but] she does not allege when this took place" and holding "[t]o sufficiently allege pre-suit notice, Plaintiff must allege facts from which the Court can plausibly infer that notice was given 'within a reasonable time.'")).

Here, Plaintiff Fitzgerald only alleges that she "has taken her Vehicle to an authorized Subaru dealership on several occasions complaining of the Starlink issue," but does not specify when she took the car to the dealership. SAC ⁋ 65. Therefore, Plaintiff Fitzgerald's warranty claims must be dismissed under both Florida and Nevada law.

> **5.      Certain Plaintiffs' express warranty claims fail because they do not sufficiently allege that they provided SOA with an opportunity to repair their vehicles or that the New Vehicle Limited Warranty was breached.**

Plaintiffs can pursue no relief unless they can plausibly allege either that (1) SOA was given notice and an opportunity to repair their vehicles, or (2) the New Vehicle Limited Warranty

20

("NVLW") failed in its essential purpose due to numerous failed repair attempts. *See Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 U.S. Dist. LEXIS 133393, at *21 (D.N.J. Sept. 30, 2015); *see also* 15 U.S.C. § 2310(e) ("No action … may be brought under subsection (d) … under any written or implied warranty or service contract … unless the [warrantor] … is afforded a reasonable opportunity to cure such failure to comply."); *In re Cadillac V8-6-4 Class Action*, 461 A.2d 736, 744 (N.J. 1983) ("[C]onsumers must provide an automobile dealer with an opportunity to cure the defect"). Multiple Plaintiffs fail to clear that hurdle.

First, Plaintiffs Jean-Louis does not allege that he brought his vehicle to a Subaru dealership for examination or repair of a Starlink issue, nor that a Subaru dealership denied him service under the NVLW. SAC ¶ 35 ("In or about October 2019, Plaintiff Jean-Louis informed the dealership of his problems with the Starlink system during a service appointment. Plaintiff Jean-Louis continues to experience the Starlink system defect."). The express warranties provided by SOA, forming the basis of Plaintiffs' express warranty claims, require that the vehicle be presented to an authorized Subaru retailer for warranty repairs. *See, e.g.*, Walters Decl., Ex. A, at 6 (2020 Warranty & Maint. Booklet) ("When a warranty repair is needed, your vehicle must be brought to an Authorized SUBARU Retailer's place of business.").

Second, Plaintiffs Jean-Louis, Griffin, and Sydoriak fail to allege that they presented their vehicles for repair or diagnosis on numerous occasions under the NVLW. *See* SAC ¶¶ 35 (Plaintiff Jean-Louis alleging only one contact with a dealership, without specifying whether it was a Subaru dealership, to address issues with the Starlink System); ¶ 84 (Plaintiff Griffin alleging only one unsuccessful repair and fails to allege that he presented his vehicle to a Subaru dealership following the unsuccessful repair); ¶ 98 (Plaintiff Sydoriak alleging only one unsuccessful repair and fails to allege that she presented her vehicle to a Subaru dealership following the unsuccessful repair). That fact that those Plaintiffs claim they experienced an issue with their vehicles after receiving a

21

free repair[10] does not amount to a breach of the New Vehicle Limited Warranty, and those Plaintiffs must still comply with the presentment requirement of that warranty. *Burd,* 2021 U.S. Dist. LEXIS 62373, at \*45-46 (dismissing certain plaintiffs' express warranty claims where they "only gave Defendants one attempt to repair their vehicles" because "they did not provide Defendants adequate opportunity to remedy the alleged Battery Defect as [SOA's] Limited Warranty requires"); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 783-784 (N.D. Cal. Feb. 9, 2017) ("While there would likely be some point at which repeated failure of replacement drives would deprive consumers of the essential purpose of the warranty, the Court declines to hold, in the absence of authority, that a mere two successive failures within the warranty period—or in other words, only one unsuccessful replacement—can meet that test where a warranty both specifically contemplates replacement of defective drives and provides the same warranty coverage for replacement drives"); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 973–74 (N.D. Cal. 2018) (dismissing breach of express warranty claims when automaker complied with "repair, replace, or adjust" provision of warranty even if battery drain defect arose again).

### 6.     Plaintiff Laureano's breach of express warranty claim under the Song-Beverly Act fails as a matter of law.

Plaintiff Laureano fails to demonstrate two essential elements of a breach of express warranty claim under the Song-Beverly Act: (1) presentation of his vehicle to an authorized representative of the manufacturer for repair, and (2) failure of the manufacturer or its representative to fix the defect or nonconformity after a "reasonable number of repairs." *Gonzalez v. Ford Motor Co.*, No. 19-652, 2019 U.S. Dist. LEXIS 50844, at \*14–15 (C.D. Cal. Mar. 22, 2019). As referenced above, the express warranties provided by SOA, forming the basis of

---

[10] The Warranty and Maintenance Booklet for the 2020-2023 Class Vehicles explicitly excludes "firmware or software" updates as repairs covered by the warranty. *See, e.g.*, Walters Decl. Ex. A, at 8 (2020 Wnty. & Maint. Booklet) ("These warranties do not cover the cost of parts or labor involved in performing any normal maintenance services. . . Periodic updates to the firmware or software in your vehicle may be made to improve performance or security. Such updates are considered part of normal maintenance."). Nevertheless, for purposes of this motion only, Subaru is not distinguishing between a warranty repair and repairs that are considered part of normal maintenance.

DMFIRM #408737369 v1

Plaintiffs' express warranty claims, require that the vehicle be presented to an authorized Subaru retailer for warranty repairs. *See, e.g.*, Walters Decl., Ex. A, at 6 (2020 Warranty & Maint. Booklet). Plaintiff Laureano fails to allege that he presented his vehicle to an authorized dealership in accordance with the NVLW. SAC ¶ 41 (Plaintiff Laureano alleges he contacted a dealership via the phone).

Moreover, the Song-Beverly Act allows for a "reasonable number of attempts," implying that "repairs must exceed one attempt" *Knafo v. Jaguar Land Rover N. Am. LLC*, No. 18-01401, 2019 U.S. Dist. LEXIS 210836, at *4–5 (C.D. Cal. July 12, 2019). In this case, Plaintiff Laureano never alleges that he even contacted an authorized dealership a second time regarding issues with the Starlink System. *See generally* SAC.

### 7. Certain Plaintiffs' express warranty claims must fail because they failed to plead the requisite reliance.

New York, Arizona, Massachusetts, Nevada, Illinois and Florida each require a plaintiff to plead reliance in support of a breach of express warranty claim, particularly where privity is lacking. *See supra* at 9-10. Here, Plaintiffs Louis, Doze, Fitzgerald, Ferrelli and Griffin fail to allege that they read or relied upon the express warranties made by SOA when purchasing or leasing their vehicles. *See* SAC ¶¶ 79–86, 109–118. Moreover, even to the extent reliance is not required, in New Jersey, California, Connecticut, Maine, New Hampshire and Washington, Plaintiffs Nancy and Thomas Hennessy, Laureano, Chui, Nieves, MacDonald, Sydoriak, Plavnick, Cilluffo, and Quarles fail to allege that they read, or even were aware of, the warranties prior to purchase such that the same became a basis for their bargain. *See* SAC ¶¶ 20, 25, 42, 50, 55, 60, 78, 91, 100. For those reasons, those Plaintiffs fail to satisfy Rule 8's plausibility standard and their breach of express warranty claims (Count II) must be dismissed.

### 8. The Hennessys' implied warranty claim is subsumed by New Jersey's Product Liability Act.

The Hennessys' implied warranty claim should be dismissed because it is subsumed by New Jersey's Products Liability ("PLA"), N.J.S.A. § 2A:58C-1 *et seq*. The PLA provides "one unified, statutorily defined theory of recovery for harm caused by a product" in product liability

23

actions. *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007). Claims falling within the statute's scope are those that generally allege harms "caused by a manufacturing, warning, or design defect," including economic losses. *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 153, 156 (N.J. 2020). The Supreme Court has clarified that a plaintiff cannot simply avoid application of the NJPLA claims by pleading only economic losses and not seeking damages for personal injury, death, or property damage. *Id.* at 156 ("Sun is mistaken in its heavy reliance on the nature of the damages it seeks, claiming they are economic losses rather than damages for injury to persons or property. The nature of the plaintiff's damages does not determine whether the cause of action falls under the CFA or PLA; rather, it is the theory of liability underlying the claim that determines the recoverable damages."). All "claims that sound in the type of products liability actions defined in the [NJ]PLA must be brought under the [NJ]PLA." *Kaplan v. GE*, No. 22-05296, 2023 U.S. Dist. LEXIS 113125, at *12 (D.N.J. June 30, 2023)(quoting *Fike*, 235 A.3d at 156).

Here, the Hennessys advance their claim only on the theory that their 2022 Subaru Outback was sold not "in merchantable condition and . . . not fit for the ordinary purpose for which vehicles are used." SAC ¶ 185. Accordingly, their breach of implied warranty claim "is based solely on the [Starlink]'s defective nature, and not on representations made by [Subaru]" and thus, their claim for breach of implied warranty is subsumed by the NJPLA. *Kaplan v. GE*, No. 22-05296, 2023 U.S. Dist. LEXIS 113125, at *12 (D.N.J. June 30, 2023)(dismissing a breach of implied warranty claim that only plead damages in the form of economic losses where the claim was based on the theory that the allegedly defective alarm was not fit for the ordinary purpose for which it was intended, and it was not a representation-based claim); *Sun Chem. Corp.*, 981 F.3d 231, 238 (3d Cir. 2020) (holding a claim was subsumed by the PLA because it was ultimately just a claim "that the product did not work").

### D.    Plaintiffs' statutory and common law fraud claims fail.

#### 1.    Plaintiffs allege no actionable affirmative misrepresentations.

Plaintiffs' common law fraud claim is expressly pleaded as "Common Law Fraud/Fraudulent Concealment," although it also includes allegations that Subaru "made many

24

general affirmative representations . . . which were misleading, deceptive, and incomplete." SAC ¶ 163. Plaintiffs' statutory consumer fraud claims are similarly premised upon alleged fraudulent concealment/omission, but also, at times, refer to alleged misrepresentations. *See, e.g.*, *id.* ¶ 194 (NHCPA); ¶ 205 (NYGBL); ¶ 214 (WCPA); ¶ 224 (ACFA); ¶ 255 (FAL); ¶ 271 (CLRA); ¶ 297 (NJCFA); ¶ 319 (MCPA); ¶ 329 (CUTPA); ¶ 342 (CFDPA); ¶ 351 (IDTPA); ¶ 360 (NDTPA). However, the only affirmative representations alleged in the SAC are statements relating to the safety, quality, and reliability of the Starlink System. *See* SAC ¶¶ 3, 130, 184. As referenced above, it is well-established that such generalized, generic advertising statements concerning quality, safety, and reliability constitute, at most, non-actionable puffery that cannot support a claim of misrepresentation or fraud. *See supra* at 15-16 (collecting cases); *see also Cohen*, 2022 U.S. Dist. LEXIS 42511, at *47-49 (dismissing Plaintiffs' fraud claims to the extent based on affirmative misrepresentations, where the only affirmative representations identified were statements generally promoting the safety, dependability, and reliability of Subaru vehicles).

### 2. Plaintiffs do not allege any facts showing reliance and/or causation.

To prevail under the common-law fraud, fraudulent concealment, and state statutory fraud claims,[11] each Plaintiff must allege that they relied on Subaru's misrepresentations or omissions and/or that their decision to purchase the Class Vehicle was caused by Subaru's misrepresentations or omissions.[12] As written, the SAC does not allege the time, place, manner, and content of any

---

[11] Counts I, V-VII, XI-XIII, XV-XVIII.

[12] *Larkey v. Health Net Life Ins. Co.,* No. 11-0523, 2012 Ariz. App. Unpub. LEXIS 753, at *6 (Ct. App. June 14, 2012) (ACFA requires actual reliance); *Sanders v. Harris*, No. 19-0835, 2021 Ariz. App. Unpub. LEXIS 84, at *12 (Ct. App. Jan. 28, 2021), *vacated on other grounds*, (Arizona common-law fraud claims require actual and reasonable reliance); *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1193-94 (2014) (California requires actual and justifiable reliance); *Myers v. BMW of N. Am.*, LLC, No. 16-00412, 2016 U.S. Dist. LEXIS 140768, at *2 (N.D. Cal. Oct. 11, 2016) (CLRA and UCL require actual reliance and causation); *Pascucci v. Cooper*, No. 125016433, 2014 Conn. Super. LEXIS 209, at *9 (Super. Ct. Jan. 24, 2014) (Connecticut common-law fraud claims require actual reliance); *Sicignano v. Pearce*, No. 22-6126506, 2023 Conn. Super. LEXIS 73, at *26 (Super. Ct. Jan. 19, 2023) (CUTPA claim requires causation); *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 837 (Fla. 2022), *reversed in part on other grounds*, (Florida requires reliance and causation); *Muhammad v. PNC Bank*, N.A., No. 21-1390, 2022 IL App (1st) 211390-U, ¶ 25 (Aug. 12, 2022) (Illinois common-law fraud claims require reliance and

25

specific marketing statements or advertisements, which representations allegedly misguided the Plaintiffs into purchasing their Class Vehicles. Under Rule 9(b), Plaintiffs were required to plead (i) when each Plaintiff viewed, read or heard the representation or lack thereof; (ii) who communicated the fraudulent information, or lack thereof; (iii) and the content of such representation or omission. *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250, 2015 U.S. Dist. LEXIS 70945, at *12 (D.N.J. June 2, 2015); *see also Henderson v. Volvo Cars of North Am.*, LLC, 2010 U.S. Dist. LEXIS 73624, at *14 (D.N.J. July 21, 2010) (the heightened pleading standard is not met by "broad assertions that [the] [d]efendant marketed its vehicles as being of superior quality" without "the context of the alleged statements[] and effect that any of the statements had on [the p]laintiffs"). To the extent the bulk of the SAC, not specified to any individual Plaintiff, alleges generically that Subaru's website contains advertisements about safety and reliability, or that the dealerships influenced their purchasing decision when third-party sales representatives discussed the vehicles' features, SAC ¶¶ 3, 4, 130, 146, 147, 164, the fraud claims fail as a matter of law because they do not identify any actual statements by any actual person or entity, nor do they allege that any actual Plaintiffs viewed such material prior to the relevant purchase date. Plaintiffs' wholly conclusory allegations and unspecified affirmative misrepresentations do not

---

causation); *Phillips v. DePaul Univ.*, 385 Ill. Dec. 823, 827 (App. Ct. 2014) (ICFA and IUDTPA require causation); *Kalpake v. Regas*, No. 17-1282, 2018 IL App (1st) 171282-U, ¶ 41 (App. Ct. Mar. 30, 2018) (ICFA requires causation); *Martin v. Ort*, No. 15-195, 2016 Me. Super. LEXIS 15, at *11-13 (Sup. Ct. Feb. 3, 2016) (Maine requires actual and justifiable reliance); *Worden v. 3203 Farmington LLC*, No. 1373, 2023 Md. App. LEXIS 381, at *23 (App. June 7, 2023) (Maryland requires reliance and causation); *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 98 (D. Mass. 2021) (Massachusetts requires reliance and causation); *Estate of Cronin v. G4 Dental Enters. Llc*, No. 84075, 2023 Nev. App. Unpub. LEXIS 129, *22 (App. Ct. Apr. 4, 2023) (Nevada requires actual and justifiable reliance); *Guerra v. Dematic Corp.*, No. 18-00376, 2023 U.S. Dist. LEXIS 76093, at *7 (D. Nev. May 1, 2023) (NDTPA requires reliance to prove causation); *King v. Philip Morris, Inc.*, No. 99-856, 2000 N.H. Super. LEXIS 5, at *25-26 (Sup. Ct. Nov. 2, 2000) (New Hampshire requires justifiable reliance by plaintiff); *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379-80 (Super. Ct. App. Div. 2002) (New Jersey requires actual and reasonable reliance); *Ponzio*, 447 F. at 242 (NJCFA requires causation); *Catalano v. BMW of N. Am., Ltd. Liab. Co.*, 167 F. Supp. 3d 540, 559 (S.D.N.Y. 2016) (New York requires justifiable reliance); *id.* at 561 (NYGBL § 349 requires causation); *Kunkle v. W. Wireless Corp.*, Nos. 55067-5-I, 55164-7-I, 2006 Wash. App. LEXIS 1283, at *21-22 (Ct. App. June 19, 2006) (Washington requires reliance); *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wash. App. 220, 229-30, 370 P.3d 25, 30-31 (2016) (WCPA requires causation).

DMFIRM #408737369 v1

suffice. *Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *20 (dismissing plaintiff's NJCFA and common law fraud claims because "the Complaint provides statements from [the] website and warranty booklets, but Plaintiff does not allege when such statements were made or whether Plaintiff was exposed to those statements, . . . and therefore, Plaintiff has not adequately plead that the statements caused him to purchase his vehicle") (internal citations omitted).

In fact, here, no individual Plaintiff pled that they even viewed any promotional material or read the warranty book at all. Instead, they baldly state that "[h]ad Subaru disclosed [the defect] on its website, through its dealerships, in its warranty manuals or elsewhere prior to Plaintiff purchasing his [or her] Class Vehicle, Plaintiff would not have purchased his [or her] Vehicle, or would not have paid the purchase price that it did." SAC ¶ 20, 25, 30, 42, 50, 55, 60, 69, 78, 86, 91, 100, 108, 118. If the Plaintiffs were not reading the warranty manuals, the website, advertisements, etc., prior to the purchase or lease, then they cannot also allege that the absence of information in those materials would have affected their purchasing decisions. In short, regardless of any alleged misstatements or omissions, plaintiffs cannot have been misled by materials they never saw. *See Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1143-44 (D. Or. 2020) (dismissing plaintiff's fraudulent omission claim because "[p]laintiff recite[d] numerous advertisements, brochures, radio ads, and other public statements by Defendant in the Complaint" but failed to "allege that he saw or heard any of those statements" and thus could not have relied "to his detriment" about any concealment of the defect); *see also Gawara v. United States Brass Corp.*, 63 Cal. App. 4th 1341, 1349-50 (1998) ("Since the . . . plaintiffs would not have been aware of the omitted information because they had not read the prospectuses or heard the public communications, they had failed to plead the necessary reliance.").

These allegations are insufficient as a matter of law under Rules 8, 9(b), 12(b)(6), *Twombly*, and *Iqbal*. No Plaintiff alleges they received any affirmative misrepresentations about the alleged

27

DMFIRM #408737369 v1

defect or relied on such representations or omissions when deciding to purchase the vehicle. Such boilerplate allegations may properly be disregarded.[13]

### 3. Plaintiffs' fraud claims fail because they do not plead the requisite element of intent.

In each of the named Plaintiffs' states, to prevail on a fraud claim—whether by common-law or statute—Plaintiffs must plead facts showing it is plausible that Defendants had either (i) knowledge of the defect at the time of the sale or lease of the Class Vehicle or (ii) intent to conceal the defect, which Defendants knew at the time of sale or lease. [14]

---

[13] Plaintiff Jean-Louis' claims for common-law fraud and violation of the NYGBL fail because he purchased his vehicle after driving it for three years and learning of its alleged defect. Having known about the alleged defect at the time of purchase, he cannot now allege that his lack of awareness induced his purchase. *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1168, 201 Cal. Rptr. 3d 390, 408 (2016) (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 232 (2013) ("To allege actual reliance on misrepresentations with the required specificity for a fraud count, '[t]he plaintiff must plead that he believed the representations to be true … and that in reliance thereon (or induced thereby) he entered into the transaction.'")).

[14] *Leigh-Pink v. Rio Props.*, LLC, 512 P.3d 322, 325-26 (Nev. 2022) (citing *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1485, 970 P.2d 98. 110 (1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001)) (in Nevada, the concealment and desire to defraud must be intentional); *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 101-02 (D. Mass. 2021) (Massachusetts requires knowledge); *King*, 2000 N.H. Super. LEXIS 5, *25-26 (in New Hampshire, there must be actual knowledge or a "conscious indifference to its truth with the intention to cause another to rely upon it"); *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 837 (Fla. 2022) (reversed in part on other grounds) (Florida requires reliance and intent to defraud); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) (Washington requires knowledge); S*tueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 322 (2013) (in California the concealment and desire to defraud must be intentional); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 34 (Ariz. 2002) (in Arizona the plaintiff must allege that the defendant concealed the fact which "intentionally prevents the other from acquiring material information"); *Egan v. Dorlon Terrace Ass'n*, No. 21-6052274, 2022 Conn. Super. LEXIS 299, at *7 (Super. Ct. Mar. 10, 2022) (Connecticut requires knowledge of the omission and intent to conceal)*; Walworth Invs.-LG, LLC v. Mu Sigma*, Inc., No. 127177, 2022 IL 127177, ¶ 44 (2022) (Illinois requires an intent to induce reliance); *Kenney v. Hillhouse, Inc.*, No. 10-309, 2011 Me. Super. LEXIS 7, at *6 (2011) (Maine requires intent to induce); *Rivas v. Estate of Melillo*, No. 1531-13, 2015 N.J. Super. Unpub. LEXIS 727, at *7 (Sup. Ct. Ch. Div. Mar. 31, 2015) (New Jersey requires deliberate and knowing concealment); *McIntyre v. McIntyre*, No. 2685, 2020 Md. App. LEXIS 876, at *21 n.7 (App. Sep. 3, 2020) (Maryland requires intent to defraud). New York requires something more than knowledge, but rather necessitates that plaintiffs "allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Catalano v. BMW of N. Am., Ltd. Liab. Co.*, 167 F. Supp. 3d 540, 560 (S.D.N.Y. 2016) (citations omitted). Motive cannot be

DMFIRM #408737369 v1

Here, each of the fraud claims, both common-law and statutory, must be dismissed because they do not allege enough facts to plausibly determine that Subaru had knowledge of the defect at the time the dealers sold the Class Vehicles to the Plaintiffs.[15] A defendant cannot intentionally conceal a defect about which it has no knowledge. Plaintiffs' reliance on the alleged failures in the Starlink features *after* the sale of the vehicle is a tacit recognition of this shortcoming in their pleadings.

When "considered in conjunction with the other allegations of pre-sale knowledge," this Court cannot "infer that Defendants recognized what Plaintiffs deem" the defect. *Ponzio*, 447 F. Supp. 3d at 229; s*ee McMahon v. Volkswagen Aktiengesellschaft*, No. 22-01537, 2023 U.S. Dist. LEXIS 105309, at *34 (D.N.J. June 16, 2023) (dismissing plaintiffs' fraudulent concealment claim for failure to plead pre-sale knowledge with allegations similar to this action).

---

assumed from the complaint, but rather the complaint must include "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Id.* (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)) ("[t]o the extent that the [SAC] could be construed as pleading that [Subaru] acted to increase sales/profits, a generalized motive that could be possessed by any corporate actor or director or officer is insufficient."). To properly allege (b) described above, Plaintiff must show Defendants' reckless conduct which is an "extreme departure from the standards of ordinary care." *Id.* at 560-61 (quoting *In re Carter-Wallace, Inc.*, Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000)). "Strong circumstantial evidence of conscious misbehavior or recklessness" cannot be found where there are only conclusory allegations of knowledge coupled with no clear duty to disclose. *Id.*; *see infra* at 33-34; *see also Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) ("The simple knowledge that a statement is false is not sufficient to establish fraudulent intent."); *Connick*, 675 N.E.2d at 593 (ICFA requires that defendant intended for plaintiff to rely on the deceptive act or practice.); *Margolis v. Sandy Spring Bank*, 110 A.3d 784, 795 (Md. 2015) (MCPA requires knowledge and intent to defraud); *Catalano*, 167 F. Supp. 3d at 562 (NYGBL § 349 requires at least knowledge); *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 453 (Ariz. Ct. App. 2012), *vacated on other grounds* (ACFA requires intent); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1023 (Ill. App. Ct. 2014) (ICFA and IUDTPA require intent); *Myers v. BMW of N. Am., LLC*, No. 16-00412, 2016 U.S. Dist. LEXIS 140768, at *9 (N.D. Cal. Oct. 11, 2016) (UCL and CLRA require at least knowledge); *Bachar v. Terry York Motor Cars*, No. 21-18290, 2021 Cal. Super. LEXIS 71621, at *4 (Nov. 18, 2021) (FAL requires that Defendants know, or should have known, about the defect); R.*J. Reynolds Tobacco Co. v. Eighth Judicial Dist. Court*, 514 P.3d 425, 431 (Nev. 2022) (NDTPA requires knowledge); *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 391 P.3d 582, 587 (2017) (WCPA holds that a "[k]nowing failure to reveal something of material importance" is considered deceptive under the Act).

[15] Applicable to Counts I, V-VII, X-XII, XIV, and XVI-XVIII.

29

To support their unfounded assertions, Plaintiffs rely on complaints made to the National Highway Traffic Safety Administration ("NHTSA") and statements appearing in online forums. SAC ⁋ 138, 141. Those complaints were not made to Subaru and provide no support for Plaintiffs' fraud claims. The Third Circuit has held that complaints made to NHTSA, and not the vehicle's manufacturer, are insufficient. *See Gotthelf v. Toyota Motor Sales, U.S.A.*, 525 F. App'x 94, 104 (3d Cir. 2013). That panel held that only when NHTSA launches an investigation and notifies the manufacturer of that investigation could knowledge be imputed. *Id*. Here, there has been no investigation by NHTSA into the alleged defect, and Plaintiffs can point to nothing to support the allegation that Subaru received any of those complaints.

Plaintiffs' reference to online forums is similarly unavailing. "Courts in this district have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo v. FCA US LLC,* No. 16-153, 2016 U.S. Dist. LEXIS 116573, at *29-30 (D.N.J. Aug. 29, 2016); *see also Fisher v. Honda N. Am., Inc*., No. 13-09285, 2014 U.S. Dist. LEXIS 84570, at *13-14 (C.D. Cal. June 12, 2014) (finding consumer complaints on government website allegedly "tracked" by the defendant could not support presale knowledge); *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2011 U.S. Dist. LEXIS 26754, at *35–36 (D.N.J. Mar. 15, 2011) (declining to view Technical Service Bulletins (TSBs) or other advisories, as well as statements made to third parties, as an admission of knowledge on the part of the defendant). Also, Plaintiffs' conclusory references to customers complaining "directly" to Subaru or "indirectly through its authorized dealerships" via Subaru's access to dealership data "concerning defects and repairs" are insufficient to demonstrate knowledge. *See Ponzio*, 447 F. Supp. 3d at 230-31 (discounting plaintiffs' allegations where they failed to provide "facts showing what data was contained" in dealer databases, factual allegations about when such warranty claims would have occurred, or the number of complaints such that the defendants could be put on notice of the issue). The Court in *McMahon* recently held that pre-sale knowledge could not be deemed plausible where plaintiffs do not allege any facts indicating the number of complaints, on the

30

NHTSA site or other customer complaints, without indicating that the number of such complaints would put defendants on notice. 2023 U.S. Dist. LEXIS 105309, at *33-34 ("And given the undoubtedly large quantity of vehicles sold, even 30 complaints is not an 'unusually high number of complaints' that would infer Defendants knew of the Defect."). Here, Plaintiffs do not allege any specific numbers, but only state that "numerous complaints" put Subaru on notice. Without more specific information, these allegations are not helpful to Plaintiffs' claim. SAC ¶¶ 140-141.

Nor can Plaintiffs' citation to the TSBs issued in May 2022 support a fraud claim because there is no credible allegation that Subaru knew the repairs prescribed in those documents would not resolve each Plaintiff's issues.[16] *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2011 U.S. Dist. LEXIS 26754, at *36-37 (D.N.J. Mar. 15, 2011) ("[T]he Court is hesitant to view technical service bulletins, or similar advisories, as potential admissions of fraudulent concealment of a defect . . . [and] [a]ccepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place.").[17] Even if the TSBs could be considered evidence of knowledge, all but two of the Class Vehicles were sold or leased to the Plaintiffs before these TSBs were issued, and as such, the TSBs should be wholly disregarded for purposes of pre-sale knowledge.[18] *See McMahon*, 2023 U.S. Dist. LEXIS 105309, at *32 ("The Court will give post-sale complaints no weight, as they logically could not provide pre-sale

---

[16] Plaintiffs' reference to the *Udeen* settlement is similarly unavailing, as that class action did not involve the current Class Vehicles. Accordingly, it could not have put Defendants on notice about any alleged issues in these cars. SAC ¶ 145.

[17] The Court in *Ponzio* only analyzed TSBs in conjunction with other stronger allegations, but did not hold that TSBs alone could determine pre-sale knowledge. 447 F. Supp. 3d at 229.

[18] *See* SAC ¶¶17, 22, 27, 32, 38, 44, 52, 57, 62, 80, 93, 102, 110 (Cilluffo, December 2021); (Quarles, September 2019); (Doze, April 2022); (Jean-Louis, July 2019 and February 2022); (Laureano, February 2019); (Chui, May 2020); (Nieves, October 2019); (MacDonald, October 2020); (Fitzgerald, April 2022); (Griffin, April 2022); (Sydoriak, April 2022); SAC 102 (Yesko, August 2020); and (Ferrelli, February 2021)

DMFIRM #408737369 v1

knowledge.").[19] Courts have also rejected attempts to piggyback fraud claims on manufacturers' voluntary remedial measures. *See McQueen v. BMW of N. Am*., LLC, No. 12-06674, 2014 U.S. Dist. LEXIS 21084, at \*17 (D.N.J. Feb. 20, 2014).

Finally, Plaintiffs' broad and sweeping allegations of pre-sale testing, which claim that it "necessarily would have revealed the defect to [Subaru]," are not enough to survive a motion to dismiss because the SAC fails to allege facts showing that the testing actually exposed a defect that provided Subaru with the requisite knowledge. SAC ⁋ 6, 144; *Cummings v. FCA US L.L.C*., 401 F. Supp. 3d 288, 308–09 (N.D.N.Y. 2019). "[T]he mere existence of [pre-production] testing, without any allegations as to what the testing revealed, does not plausibly suggest that Defendant was aware of the alleged defect."[20] *Cummings*, 401 F. Supp. 3d at 308-9; *see also Burdt v. Whirlpool Corp*., No. 15-01563, 2015 U.S. Dist. LEXIS 102761, at \*12 (N.D. Cal. Aug. 5, 2015) ("Plaintiff must allege more than an undetailed assertion that the testing must have revealed the alleged defect. Otherwise, any consumer could bring a [consumer fraud] claim merely by asserting that a manufacturer had knowledge of an alleged defect from its pre-release testing."); *McMahon*, 2023 U.S. Dist. LEXIS 105309, at \*31 ("Because Plaintiffs allege no additional facts or details,

---

[19] To the extent any NHTSA complaints cited by Plaintiffs post-date the sale or lease of the named Plaintiffs' vehicles, they too should be disregarded as evidence of pre-sale knowledge.

[20] In *Ponzio*, the Court found that pre-sale testing was sufficiently pled for the knowledge element, where the plaintiffs "detail[ed] a number of test procedures that allegedly test the paint on its vehicles" including the test procedures developed by specific scientific and regulatory groups (i.e. the American Society for Testing and the Society of Automotive Engineers); plaintiffs explained that the manufacturer would have been required to perform specific quality control tests as part of their membership in the Production Part Approval Process (the group's purpose and requirements were also pled) and the results to such specific tests would likely reveal (i.e. "whether the paint adhered to the surface of the vehicle, whether it corroded or delaminated . . . whether the color or gloss faded, changed, or was retained"); and plaintiffs specifically stated the title and purposes of defendants own standards and testing which would have revealed the alleged defect. 447 F. Supp. 3d at 227-28 (to determine the requisite knowledge pleading the court also relied on plaintiffs' claim that "Mercedes engaged in at least four years of development and testing prior to utilizing the new type of clearcoat paint on the Class Vehicles[;] [t]his included abrasion tests in a laboratory car-wash and extensive testing on the nanoparticle clearcoat in both laboratory and everyday conditions."). Here, no such specificity was provided.

32

pre-sale knowledge cannot be inferred from merely the broad categories of pre-sale design, manufacturing, and testing data.").

Here, Plaintiffs have failed to allege who at SOA or SBR knew about the alleged defect, what type of testing procedures were used, or when that knowledge was allegedly gained. Therefore, Count I must be dismissed as to each of the Plaintiffs, and the statutory claims (Counts V-VII, X-XII, XIV, XVI-XVIII) must also be dismissed. Even if this court determines that it is plausible that Subaru knew of an alleged defect prior to the sale of the Class Vehicles, it did not plead the requisite fraudulent intent required for California (common law), Arizona, Connecticut (common law), Illinois, Maine, New Jersey (common law), Maryland, New York (common law), and Nevada/Florida (common law). Thus, at a minimum, Plaintiffs Doze, Laureano, Chui, Nieves, MacDonald, Nancy and Thomas Hennessy, Griffin, Plavnick, Sydoriak, Yesko, Jean-Louis, Cilluffo, and Fitzgerald's fraud claims must be dismissed.

### 4.    Subaru did not owe a duty to disclose any alleged defect.

Certain Plaintiffs' fraud claims should be dismissed because they fail to sufficiently establish a duty to disclose.

First, in states where a duty to disclose based on superior knowledge is recognized, dismissal of Plaintiffs' fraud claims is warranted because Plaintiffs have failed to plead that Subaru has superior knowledge of a defect in the Starlink System. *See supra* at 28-33.

Second, even if the Court concludes Plaintiffs have sufficiently alleged superior knowledge, the law in certain states imposes a duty to disclose only when there is a fiduciary or special relationship between the plaintiff and the defendant; such a relationship is absent here. Courts interpreting the laws of New Jersey (common law fraud and NJCFA), Illinois (common law fraud and ICFA), Connecticut (common law), Maryland (common law), Massachusetts (common law), and Maine (common law) have concluded that "no fiduciary relationship establishing a duty to disclose exists in arms-length transactions." *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *56 (no duty under New Jersey, Connecticut, Illinois, Maryland, Massachusetts, and Nevada common law); *Burd*, 2021 U.S. Dist. LEXIS 62373, at *74-5 (no duty under New Jersey

and Illinois common law, NJCFA, and ICFA); *Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*, 693 F.3d 48, 55-56 (1st Cir. Aug. 29, 2012) (no duty under Maine common law).[21] Accordingly, Counts I (under New Jersey, Illinois, Connecticut, Maryland, Massachusetts, and Maine law), XIII (NJCFA), and XVI (ICFA) should be dismissed to the extent they are based on alleged omissions.

Finally, to the extent Plaintiffs claim Subaru also owed a duty to Plaintiffs based on partial disclosure of information, Plaintiffs fail to allege any <u>actionable</u> statements or representations Subaru made that were partial disclosures. Instead, each particularized statement identified in the SAC is nonactionable puffery. *See supra* at 15-16. Accordingly, those allegations cannot save Plaintiffs' fraud claims.

### E. Certain Plaintiffs' fraudulent concealment claims are barred by the economic loss doctrine.

Under the laws of California, Illinois, and New Jersey, claims for common-law fraudulent omission, which, as in this case, allege only economic loss and are not based on actionable representations or statements, are barred by the economic loss rule. *Burd*, 2021 U.S. Dist. LEXIS 62373, at *85 (holding California, Illinois, and New Jersey each recognize an exception to the economic loss rule for affirmative fraudulent misrepresentations but decline to apply the exception to claims of fraudulent concealment or omission); *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *70 (holding there is no conflict between California and New Jersey law regarding the economic loss doctrine because each state's fraud exception to the economic loss rule only applies to "affirmative misrepresentations rather than omissions or concealment").

In addition, Plaintiffs fail to satisfy another requirement of California's economic loss doctrine: that the alleged misrepresentation exposes the plaintiff to liability for "personal damages

---

[21] Maine also recognizes a duty to disclose where plaintiff sufficiently alleges that the defendants actively concealed material information. *Siegemund v. Shapland*, 307 F. Supp. 2d 113, 116-7 (D. Me. 2004). However, in this case, Plaintiffs "do not plead any facts to support their conclusory allegation that Subaru 'concealed information,' and '[m]ere non-disclosure does not constitute active concealment.'" *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *59 (quoting *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013)); *see generally* SAC.

34

independent of [their] economic loss." *Pineda v. Nissan N. Am., Inc.*, No. 22-0239, 2023 U.S. Dist. LEXIS 8065, at *12 (C.D. Cal. Jan. 17, 2023) (quoting Robi*nson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 276 (Cal. 2004)) (failing to address the implications of the *Dhital v. Nissan* decision and dismissing plaintiff's common-law fraud claim for failure to plead the additional requirement of the fraud exception). Accordingly, Count I (under New Jersey, California, and Illinois law) should be dismissed because the economic loss doctrine bars each of these claims.

    **F.    Plaintiff Jean-Louis purchased his leased vehicle years after experiencing issues with the Starlink System and thus, fails to plead a common-law or statutory fraud claim.**

Plaintiff Jean-Louis' statutory and common-law fraud claims, Counts I and V, fail because he did not rely on any material omission. To succeed on a fraud claim in New York, a plaintiff must plead that "(1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; . . . (4) injury [and (5)] the defendant had a duty to disclose the material information." *Bannister v. Agard*, 125 A.D.3d 797, 798 (N.Y. 2d Dep't 2015); *see also Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (holding "that to state a claim under GBL §349, a plaintiff must allege . . . the acts are misleading in a material way")).

Plaintiff Jean-Louis cannot claim that he "justifiabl[y] relied on [a] misrepresentation or material omission" because he purchased his car years after knowing that his car contained the alleged defect. SAC ¶ 33-35 (explaining that Plaintiff Jean-Louis leased the Class Vehicle in July 2019, noticed the alleged defect "soon after leasing" the same, and then purchased the allegedly defective car in February 2022). To be clear, Defendants deny that the Starlink system is defective, but in trying to claim otherwise, Plaintiff Jean-Louis alleges performance issues that occurred *prior* to his purchase of the vehicle. It is implausible for him to allege he purchased the car *because of* affirmative representation or omissions about an alleged he already claims to have experienced. Plaintiff Jean-Louis drove the car for three years, was aware of its alleged "problems," and

purchased it *despite* the alleged fraudulent assertions—not because of them. As such, Count I and V must be dismissed.

### G.    Plaintiff Doze's common law fraud claim fails because she was never a party to the same transaction with Subaru.

Under Arizona law, being a party to a transaction with Subaru is a necessary element of Plaintiff Doze's fraudulent concealment claim. *See supra* at 10. Plaintiff Doze alleges that she purchased her vehicle from Findlay Subaru, an independent authorized dealership in Arizona—not Subaru. SAC ⁋ 27. Accordingly, Plaintiff Doze has failed to plead a transaction between herself and Subaru, and her fraudulent concealment claim (Count I) must be dismissed. *See Yagudayev*, 2020 U.S. Dist. LEXIS 212385, at *24 (dismissing an Arizona common law fraud claim for failure to plead a "transaction" between the plaintiff and BMW where the plaintiff alleged "he purchased the Vehicle from Chapman BMW, not directly from Defendant").

### H.    Certain Plaintiffs' claims are untimely.

#### 1.    Plaintiff Jean-Louis' NYGBL claim

Plaintiff Jean-Louis' NYGBL claim (Count V) must be dismissed because it is barred by the statute of limitations. According to the statute, actions must be initiated within three years of the date the plaintiff is "injured by a deceptive act or practice." *See Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (N.Y. 2001). When the theory of liability is based on alleged misrepresentations and omissions before the sale, the NYGBL claim accrues at the time of purchase. *Tomassini v. FCA US LLC*, No. 14-1226, 2020 U.S. Dist. LEXIS 70683, at *25 (N.D.N.Y. Apr. 22, 2020). In this case, Plaintiff Jean-Louis' NYGBL claim relies on misrepresentations and omissions made before he purchased his vehicle in July 2019. *See* SAC ⁋⁋ 31-36. As a result, his NYGBL claim expired in July 2022. Consequently, Count V must be dismissed.

#### 2.    Certain California Plaintiffs' claims

The statute of limitations for CLRA (Count XI), UCL (Count XII), FAL (Count X), and common law California fraud and unjust enrichment claims commences on the date the improper

36

consumer practice is alleged to have been committed, which, in this case, is the date of purchase. *See* SAC ⁋⁋ 160-67, 252-294; Cal. Civ. Code § 1783 (CLRA – 3 years); Cal. Code Civ. Proc. § 338(a)(FAL – 3 years); Cal. Bus. & Prof. Code § 17208 (UCL – 4 years); *Sarkesian*, 2023 U.S. Dist. LEXIS 67999, at *9 (S.D. Cal. Apr. 17, 2023) (common law fraud – 3 years); Cal. Civ. Proc. Code § 338(d) (unjust enrichment claims sounding in fraud – 3 years); *Plumlee v. Pfizer, Inc.*, No. 13-00414, 2014 U.S. Dist. LEXIS 23172, at *24 (N.D. Cal. Feb. 21, 2014). Similarly, the statute of limitations for the California Plaintiffs' breach of implied warranty claims under the UCC (Count III) and Song-Beverly Act (Count IX) runs from the date of delivery to the first purchase. Cal. Com. Code § 2725 (UCC – 4 years); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. Mar. 31, 2014)(holding the four-year statute of limitations of California Commercial Code § 2725 applies to Song-Beverly implied warranty claims and recognizing "the latest each Plaintiff could have brought a claim was four years after the car was purchased"). Plaintiffs Laureano, Chui, and Nieves' CLRA, FAL, and common law fraud claims expired in February 2022, on May 2, 2023, and in October 2021, respectively—three years following their purchases. Additionally, Plaintiffs Laureano and Nieves' UCL and breach of implied warranty claims expired on February 2023 and October 2022, respectively—four years following their purchases. Therefore, all of these claims are untimely.

## I.      Plaintiff Quarles' common law fraud and unjust enrichment claims

Under Washington law, the statute of limitations for unjust enrichment claims is three years from "when a party has a right to apply to a court for relief." *In re Miller Testamentary Credit Shelter Tr.*, 462 P.3d 878, 883 (Wash. App. Div. 2020) (citing Wash. Rev. Code § 4.16.080(3)). Plaintiff Quarles's unjust enrichment claim is based on the sale of his vehicle. *See* SAC ⁋ 374-9. Plaintiff Quarles purchased his vehicle in September 2019 and accordingly, his unjust enrichment claim is untimely as it expired on September 2022.

In addition, the statute of limitations for common law fraud claims is three years from when the "plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action." *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1038 (W.D. Wash. Sept. 4,

2019) (citing Wash. Rev. Code § 4.16.080(4)). Plaintiff Quarles' complaint fails to plead when he first encountered issues with his Starlink System. The only information provided is that he experienced problems shortly after buying his vehicle in September 2019 and made his first visit to a Subaru dealership in January 2020 to report the issues with his Starlink System (SAC ⁋ 24). Even assuming that Plaintiff Quarles' common law fraud claim didn't arise until his initial dealership visit, the claim still expired in January 2023—four months prior to the initial filing of his claims in this case.

### J.    The Hennessys' NJCFA claim should be dismissed for failure to allege facts establishing an ascertainable loss.

The NJCFA requires an ascertainable loss, defined as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Ponzio*, 447 F. Supp. 3d at 244. "An actionable loss is not hypothetical or illusory." *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *72-3 Instead, "what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received." *Id.* at *73. Here, the Hennessys fail to allege any facts establishing an ascertainable loss. The Hennessys never alleged they were required to pay for the software updates in August 2022 or May 2023. Moreover, the Hennessys' conclusory allegations that they "would not have purchased the Vehicle or would not have paid the purchase price that they did" and "received less than what they paid for their Vehicle and did not receive the benefit of their bargain" without any facts supporting such conclusions are insufficient to establish ascertainable loss under a loss-in-value or benefit-of-the-bargain theory. SAC ⁋ 78; *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *72-75 (dismissing a NJCFA claim where the complaint included conclusory allegations that an alleged defect has caused "Plaintiff(s) out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle" or that the Plaintiff "would have paid less" for a vehicle without any supporting facts); *Ponzio*, 447 F. Supp. at 244 (concluding allegations that the plaintiff "suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle

38

has been diminished as a result of the Paint Defect" are conclusory allegations that failed to establish an ascertainable loss). Accordingly, Count XIII should be dismissed.

### K.    Plaintiffs Laureano, Chui, Nieves, and MacDonald's UCL and FAL claims must be dismissed to the extent they seek monetary relief.

The only relief available under the UCL and FAL is injunctive relief or restitution. To the extent any other relief is sought, it is not available and must be dismissed. *Burd*, 2021 U.S. Dist. LEXIS 62373, at *79 (limiting plaintiffs' remedies available under the UCL to injunctive relief and restitution); *Roffman v. REBBL, Inc.*, No. 22-05290, 2023 U.S. Dist. LEXIS 16166, at *13 (N.D. Cal. Jan. 31, 2023)("It is well-established that claims for relief under the FAL and the UCL are limited to restitution and injunctive relief.").

### L.    Plaintiffs seek injunctive relief they lack standing to pursue.

Among other relief, Plaintiffs seek "[a]n order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in" the SAC. SAC at 112. To the extent Plaintiffs are basing their fraud claims on supposed false advertising, they lack Article III standing to purchase such injunctive relief as past purchasers. *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223-26 (3d Cir. 2012); *Burd*, 2021 U.S. Dist. LEXIS 62373, at *91-92 (dismissing Plaintiffs' request to enjoin Subaru from engaging in false advertising for lack of standing).

### M.    Plaintiffs do not adequately allege claims for unjust enrichment.

#### 1.    Plaintiffs fail to allege the absence of an adequate remedy at law.

Plaintiffs' failure to plead, let alone establish, the absence of an adequate remedy at law, see SAC ¶¶ 373-379, is fatal to their unjust enrichment claims. *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *92 (dismissing unjust enrichment claims against Subaru because Plaintiffs failed to identify an equitable remedy that was unavailable "through one of their 50+ legal claims" and recognizing "it is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment").

DMFIRM #408737369 v1

**2.**    **The subject of Plaintiffs' unjust enrichment claim is identical to the subject of their warranty claims against Subaru.**

There is no dispute that Plaintiffs' NVLW is an express warranty that governs the underlying conduct at the heart of this case, and unlike in *Ponzio*, Plaintiffs' complaint does not contest the enforceability of the NVLW by suggesting it is unconscionable. *Ponzio*, 447 F. Supp. at 259. Plaintiffs who belabor that SOA breached its express warranties to them should not also be able to claim that those same express warranties do not govern when it serves them in equity. Accordingly, Plaintiffs' unjust enrichment claim fails on the basis that an express warranty exists.

**3.**    **Plaintiffs' unjust enrichment claims fail because Plaintiffs did not purchase their vehicles directly from Subaru.**

Plaintiffs each alleged that they purchased their vehicles from independent third parties, not directly from Subaru. Furthermore, they did not allege any direct relationship with Subaru or that they directly provided any benefit to Subaru that the company retained to their detriment. That is fatal to their unjust enrichment claims. *Defillippo v. Whirlpool Corp.*, No. 18-12523, 2019 U.S. Dist. LEXIS 148304, at *38 (D.N.J. Aug. 30, 2019)("[I]n the majority of cases concerning claims similar to the ones asserted here—fraud and breach of warranty claims against a product manufacturer—a plaintiff may not maintain an unjust enrichment claim against the manufacturer if he did not purchase the product directly from the manufacturer."); *see also Cohen*, 2022 U.S. Dist. LEXIS 42511, at *92 (dismissing unjust enrichment claims where the Plaintiffs "did not purchase any of the Class Vehicles directly from Subaru, but rather from an authorized dealer"); *Burd*, 2021 U.S. Dist. LEXIS 62373, at *88-9 (same).

**IV.    CONCLUSION**

For all these reasons, Subaru respectfully requests this Court enter an order granting Subaru's Motion to Dismiss the SAC.

Dated: August 2, 2023

Respectfully submitted,

*s/ Neal Walters*
Neal Walters, Esq.

DMFIRM #408737369 v1