**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARCO CILLUFFO, JEFFREY QUARLES, CARL JEAN-LOUIS, RANDALL LAUREANO, JILL YESKO, EDWIN NIEVES, THOMAS HENNESSY, and NANCY HENNESSY, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-01897-RBK-MJS |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| SUBARU OF AMERICA, INC., and SUBARU CORPORATION, | |
| Defendants. | |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

III.  ARGUMENT...................................................................................................... 7

    A.   Plaintiffs Have Standing to Assert Nationwide Claims........................................ 7

    B.   It Is Premature to Determine the Choice of Law Questions And, in Any Event, There Is No Genuine Conflict Applying New Jersey Law .................................... 8

        1.   There Is No True Conflict of States' Laws.................................................. 9

            a.   Implied and express warranty claims............................................. 9

            b.   Fraudulent omission and unjust enrichment ................................. 11

    C.   Plaintiffs Adequately Plead Express And Implied Warranty Claims ................... 11

        1.   Defendants' Challenges to the Express Warranty Claims Fail................. 11

            a.   Plaintiffs state a breach of express warranty claim against SBR... 11

            b.   Defendants' attempt to disclaim its express warranties by representation fails ........................................................................ 12

            c.   Defendants' representations are actionable non-puffery ............. 12

            d.   Defendants' reliance arguments do not warrant dismissal of the express warranty claims ........................................................... 13

            e.   Plaintiffs Jean-Louis and Laureano presented their vehicles for a repair, even though efforts to repair were futile ................... 14

        2.   Defendants' Challenges to the Implied Warranty Claims Fail ................. 16

            a.   Privity is not required for Plaintiff Jean-Louis's and Plaintiff Quarles's implied warranty claims ............................................... 16

            b.   The Hennessy Plaintiffs' implied warranty claim is not subsumed by the New Jersey Product Liability Act .................... 18

    D.   Plaintiffs' Fraud-Based Claims are Sufficiently Pleaded .................................. 199

        1.   Plaintiffs Sufficiently Plead Affirmative Misrepresentations................... 19

        2.   Plaintiffs Adequately Plead Fraudulent Concealment of a Material Fact.. 20

            a.   The existence of the Starlink Defect is a material fact ................. 20

b.  Defendants had a duty to disclose the Defect ............................. 21

  i.  Defendants had superior knowledge of the defect ............ 22

  ii.  Defendants also had a duty to disclose a safety hazard .... 22

c.  Defendants actively concealed material facts ............................. 23

3.  Plaintiffs Sufficiently Establish Causation or Reliance ........................... 24

E.  Plaintiffs' Fraudulent Concealment Claims Are Not Barred by the Economic Loss Rule in California or New Jersey ................................................ 24

F.  Plaintiff Jean-Louis's Fraud-Based Claims Are Adequately Pleaded .................. 25

G.  Plaintiffs' Claims Are Not Time Barred ................................................ 28

1.  Plaintiff's Claims Were Tolled by the Delayed Discovery Rule ............. 28

2.  Subaru's Fraudulent Concealment Tolls the Limitations Period for Plaintiffs' Consumer Claims ................................................. 31

H.  Plaintiffs Thomas And Nany Hennessy Allege Sufficient Ascertainable Losses to State a Viable NJCFA Claim ................................................ 32

I.  The California Plaintiffs' UCL and FAL Claims Seek Appropriate Monetary Relief ................................................................................................ 34

J.  Plaintiffs Have Standing to Seek Injunctive Relief ............................. 35

K.  Plaintiffs' Unjust Enrichment Claim Is Properly Pleaded .................. 37

1.  Plaintiffs Do Not Need to Plead the Absence of Adequate Remedy at Law Nor is this Claim Mooted by the Express Warranty .................... 37

2.  Plaintiffs Do Not Need to Allege a Direct Relationship or Direct Benefit ................................................................................ 38

IV.  CONCLUSION ................................................................................ 38

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 2, 2010)...................................................... 19

*Alin v. Am. Honda Motor Co.*,
No. 08-cv-4825, 2010 WL 1372308 (D.N.J. Mar. 31, 2010)........................................................ 4

*Alpizar-Falla v. Favero*,
908 F.3d 910 (3d Cir. 2018)........................................................................................................ 33

*Amato v. Subaru of Am., Inc.*,
No. 18-cv-16118, 2019 WL 6607148 (D.N.J. Dec. 5, 2019) ...................................................... 26

*April Enterprises, Inc. v. KTTV*,
147 Cal. App. 3d 805 (Ct. App. 1983) ....................................................................................... 29

*Arcand v. Brother Int'l Corp.*,
673 F. Supp. 2d 282 (D.N.J. 2009) ............................................................................................ 11

*Assocs. Com. Corp. v. Wallia*,
211 N.J. Super. 231, 511 A.2d 709 (App. Div. 1986)................................................................ 37

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)...................................................................................................... 37

*Avram v. Samsung Elecs. America, Inc.*,
No. 11-cv-6973, 2013 U.S. Dist. LEXIS 97341 (D.N.J. July 11, 2013)................................... 12

*Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*,
No. 20-cv-6717-JMV-MF, 2021 WL 960875 (D.N.J. Mar. 15, 2021) ....................................... 7

*Baranco v. Ford Motor Co.*,
294 F. Supp. 3d 950 (N.D. Cal. 2018) ....................................................................................... 17

*Bolooki v. Honda Motor Co. Ltd.*,
No. 22-cv-4252, 2023 WL 2627015 (C.D. Cal. Mar. 10, 2023)................................................ 15

*Bosland v. Warnock Dodge, Inc.*,
197 N.J. 543, 964 A.2d 741 (2009)............................................................................................ 33

*California Med. Assoc. v. Aetna Health of California Inc.*,
14 Cal. 5th 1075, 1085, 532 P.3d 250 (2023) ........................................................................... 34

*Canfield v. FCA US LLC*,
No. 17-cv-1789, 2019 WL 1089798 (D. Del. Mar. 8, 2019) ..................................................... 33

iv

*CBS Inc. v. Ziff-Davis Pub. Co.*,
75 N.Y.2d 496 (1990) .................................................................................. 14

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993)......................................................................... 31

*Chamberlan v. Ford Motor Co.*,
369 F. Supp. 2d 1138 (N.D. Cal. 2005) ...................................................... 30

*Chiarelli v. Nissan N. Am., Inc.*,
No. 14-cv-4327, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ................ 26

*Cohen v. JP Morgan Chase & Co.*,
498 F.3d 111 (2d Cir. 2007)........................................................................ 26

*Cohen v. Subaru of Am., Inc.*,
No. 20-cv-8442-JHR-AMD, 2022 WL 714795 (D.N.J. Mar. 10, 2022).... 26

*Cohen v. Subaru of Am., Inc.*,
No. 20-cv-8442-JHR-AMD, 2022 WL 721307 (D.N.J. Mar. 10, 2022)... 8, 24

*Coyle v. Hornell Brewing Co.*,
No. 08-cv-2797-JBS, 2010 WL 2539386 (D.N.J. June 15, 2010) .............. 38

*CytoSport, Inc. v. Vital Pharms., Inc.*,
894 F. Supp. 2d 1285 (E.D. Cal. 2012)....................................................... 28

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ...................................................................................... 8

*Dean v. Beckley*,
No. 10-cv-297, 2010 U.S. Dist. LEXIS 105007 (D. Md. Oct. 1, 2010)...... 21

*DeFrank v. Samsung Elecs. Am., Inc.*,
No. 19-cv-21401-KM-JBC, 2020 WL 6269277 (D.N.J. Oct. 26, 2020)...... 38

*DeFrank v. Samsung Elecs. Am., Inc.*,
No. 19-cv-21401-KM-JBC, 2020 WL 6269277 (D.N.J. Oct. 26, 2020)...... 38

*Dhital v. Nissan N. Am., Inc.*,
300 Cal. Rptr. 3d 715 (2022)....................................................................... 25

*Doe v. Uber Techs,. Inc.*,
551 F. Supp. 3d 341, 368 (S.D.N.Y. 2021) ................................................ 13

*Donachy v. Playground Destination Properties, Inc.*,
No. 10-cv-4038, 2013 WL 379033 (D.N.J. July 19, 2013)......................... 13

*Dzielak v. Whirlpool Corp.*,
26 F. Supp. 3d  304 (D.N.J. 2014) ................................................................................ 10

*Falk v. Gen. Motors Corp.*,
469 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................................ 32

*Feldman v. Mercedes-Benz USA, LLC*,
No. 11-cv-984-WJM, 2012 WL 6596830 (D.N.J. Dec. 18, 2012)............................................ 21

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005)................................................................................................. 29

*Francis v. Gen. Motors, LLC*,
504 F. Supp. 3d 659 (E.D. Mich. 2020) ........................................................................ 17

*Gray v. BMW of N. Am., LLC*,
22 F. Supp. 3d 373 (D.N.J. 2014) ................................................................................ 20

*Grisham v. Philip Morris U.S.A., Inc.*,
151 P.3d 1151 (Cal. 2007) ........................................................................................... 31

*Hernandez v. Radio Sys. Corp.*,
No. 22-cv-1861, 2023 WL 2629020 (C.D. Cal. Mar. 9, 2023)........................................... 13

*Hindermyer v. B. Braun Med. Inc.*,
419 F. Supp. 3d 809 (D.N.J. 2019) .............................................................................. 18

*Ho v. Toyota Motor Corp.*,
931 F. Supp. 2d 987 (N.D. Cal. Mar. 14, 2013)...................................................... 21, 23

*Horvath v. LG Elecs. Mobilecomm U.S.A.*,
No. 11-cv-1576, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) .................................. 37, 38

*Hubbard v. GMC*,
No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) ....................................... 17

*Hudock v. LG Elecs. U.S.A., Inc.*,
No. 16-cv-1220-JRT-KMM, 2020 WL 1515233 (D. Minn. Mar. 30, 2020) ......................... 8

*Hudock v. LG Elecs. U.S.A., Inc.*,
12 F.4th 773 (8th Cir. 2021)........................................................................................... 8

*In re AZEK Building Prods., Inc., Mktg. and Sales Pracs. Litig.*,
82 F. Supp. 3d 608 (D.N.J. 2015) ........................................................................... 19, 20

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
355 F. Supp. 3d 582 (E.D. Mich. 2018) ....................................................................... 25

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
No. 03-cv-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ...................................................... 31

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
No. 03-cv-4558, 2010 WL 2813788 (D.N.J. July 9, 2010)...................................................... 17

*In re Jacoby Airplane Crash Litig.*,
No. 99-cv-6073, 2005 WL 8179785 (D.N.J. Aug. 26, 2005) ................................................. 12

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
No. 16-md-2687-JLL, 2017 WL 3131977 (D.N.J. July 20, 2017).............................................. 8

*In re Mercedes-Benz Tele Aid Cont. Litig.*,
267 F.R.D. 113 (D.N.J. 2010) ................................................................................................. 8

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014) ...................................................................... 15, 22, 23

*In re MyFord Touch Consumer Litig.*,
No. 13-cv-3072, 2015 WL 5118308 (N.D. Cal. Aug. 31, 2015) ................................. 13, 14, 17

*In re Nexus 6P Prod. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................................................ 13, 14

*In re Subaru Battery Drain Prod. Liab. Litig.*,
No. 20-cv-3095-JHR-JS, 2021 WL 1207791 (D.N.J. Mar. 31, 2021) ................................ 9, 24

*In re Takata Airbag Prod. Liab. Litig.*,
No. 14-cv-24009, 2016 WL 5848843 (S.D. Fla. Sept. 21, 2016) ............................................ 23

*In Re Tobacco II Cases*,
46 Cal. 4th 298 (2009).......................................................................................................... 36

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prod. Liab. Litig.*,
No. 10-ml-2172, 2011 WL 13160303 (C.D. Cal. Jan. 20, 2011)............................................ 32

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
No. 19-md-2875-RBK-SAK, 2022 WL 1013945 (D.N.J. Apr. 5, 2022)................................... 8

*In re Vioxx Class Cases*,
103 Cal. Rptr. 3d 83 (2009)................................................................................................... 34

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
No. 16-cv-2765-JLL, 2017 WL 1902160 (D.N.J. May 8, 2017) ...................................... *passim*

*Johnson v. Nissan North America, Inc.*,
272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................................. 4, 16

*Juarez v. Arcadia Fin., Ltd.*,
   61 Cal. Rptr. 3d 382 (2007) ........................................................................................ 34

*Kanfer v. Pharmacare US, Inc.*,
   142 F. Supp. 3d 1091 (S.D. Cal. 2015) ...................................................................... 35

*Kaplan v. G.E.*,
   No. 22-cv-5296, 2023 WL 4288157 (D.N.J. June 30, 2023) ...................................... 18

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
   No. CV1713544, 2018 WL 4144683 (D.N.J. Aug. 29, 2018) .................................... 20

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ...................................................................... 9, 14, 20

*Kelleher v. Marvin Lumber & Cedar Co.*,
   152 N.H. 813 (2005) .................................................................................................... 13

*Kenney v. M2 Worldwide, LLC*,
   No. 12-cv-1059, 2013 WL 592149 (D.N.J. Feb. 13, 2013) ........................................ 29

*King v. Philip Morris, Inc.*,
   No. 99-C-856, 2000 WL 34016322 (N.H. Super. Ct. 2000) ...................................... 21

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) ........................................................................................ 31

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ........................................................................................ 27

*Lovell v. P.F. Chang's China Bistro, Inc.*,
   No. 14-cv-1152, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ............................ 21

*Majdipour v. Jaguar Land Rover N.A., LLC*,
   No. 12-cv-7849, 2013 WL 5574626 (D.N.J. Oct. 9, 2013).................................... 13, 30

*Marsikian v. Mercedes-Benz USA, LLC*,
   No. 08-cv-4876, 2009 WL 8379784 (C.D. Cal. 2009)................................................ 23

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017)................................................................................................... 36

*McNair v. Synapse Grp. Inc.*,
   672 F.3d 213 (3d Cir. 2012)........................................................................................ 36

*Miller v. Hyundia Motor Am.*,
   No. 15-cv-4722, 2016 WL 5476000 (S.D.N.Y. Sept. 28, 2016)................................ 26

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
175 F. Supp. 2d 489 (S.D.N.Y. 2000) .................................................................... 27

*Nelson v. Nissan N.A., Inc.*,
894 F. Supp. 2d 558 (D.N.J. 2012) ........................................................................ 22

*Neuss v. Rubi Rose, LLC*,
No. 16-cv-2339-MAS-LHG, 2017 WL 2367056 (D.N.J. May 31, 2017) ................. 7

*Neuss v. Rubi Rose, LLC*,
No. 16-cv-2339, 2017 WL 2367056 (D.N.J. May 31, 2017) .................................. 35

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ................................................................................................. 8

*Opheim v. Volkswagen Aktiengesellschaft*,
No. 20-cv-2483-KM-ESK, 2021 WL 2621689 (D.N.J. June 25, 2021) ............ 10, 28

*Oracle Corp. v. SAP AG*,
No. 07-cv-1658, 2008 U.S. Dist. LEXIS 103300 (N.D. Cal. Dec. 15, 2008) ......... 38

*Petersen v. Atrium Med. Corp.*,
No. 18-cv-212, 2019 WL 4261822 (D.N.H. Sept. 9, 2019) ................................... 13

*Philips v. Ford Motor Co.*,
No. 14-cv-2989, 2016 WL 1745948 (N.D. Cal. May 3, 2016) ............................... 31

*Plumlee v. Pfizer, Inc.*,
No. 13-cv-414, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ................................ 28

*Ponzio v. Mercedes-Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020) ..................................................................... 8, 22

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020) ................................................................. *passim*

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ................................................................................. 19

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995) .................................................................................. 21

*Rezendes v. Mitsubishi Motors N. Am., Inc.*,
No. 22-cv-10211-AK, 2023 WL 1864405 (D. Mass. Feb. 9, 2023) ....................... 10

*Rieger v. Volkswagen Grp. of Am., Inc.*,
No. 21-cv-10546, 2023 WL 3271116 (D.N.J. May 4, 2023) .................................. 22

*RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*,
 861 F. Supp. 2d 436 (D.N.J. 2012) ................................................................ 25

*Robinson Helicopter Co. v. Dana Corp.*,
 22 Cal. Rptr.3d 352 (2004) ............................................................................. 25

*Rolland v. Spark Energy, LLC*,
 No. 17-cv-2680-MAS-LHG, 2019 WL 1903990 (D.N.J. Apr. 29, 2019) ................................. 7

*Short v. Hyundai Motor Co.*,
 No. 19-cv-318, 2020 WL 6132214 (W.D. Wash. Oct. 19, 2020) ............................................. 32

*Snyder v. Farnam Cos., Inc.*,
 792 F. Supp. 2d 712 (D.N.J. 2011) .................................................................. 9

*Song Fi, Inc. v. Google, Inc.*,
 No. 14-cv-5080, 2016 U.S. Dist. LEXIS 45547 (N.D. Cal. Apr. 4, 2016) ............................... 21

*State by Abrams v. Gen. Motors Corp.*,
 120 Misc. 2d 371 (N.Y. Sup. Ct. 1983) ......................................................... 22

*Sun Chem. Corp. v. Fike Corp.*,
 981 F.3d 231 (3d Cir. 2020) ............................................................................. 18

*Transnat'l Mgmt. Sys. II, LLC v. Carcione*,
 No. 14-cv-2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016) ................................................ 27

*Udeen, et al. v. Subaru of Am., Inc.*,
 No. 18-17334 (D.N.J. 2019)........................................................................ 1, 22, 25

*Weston v. Subaru of Am., Inc.*,
 No. 1:20-cv-05876, 2022 WL 1718048 (D.N.J. May 26, 2022)............................................. 28

*Wisniewski v. Fisher*,
 857 F.3d 152 (3d Cir. 2017)............................................................................ 11

*Yumul v. Smart Balance, Inc.*,
 733 F. Supp. 2d 1117 (C.D. Cal. 2010)........................................................... 31

**Statutes**

Cal. Bus. & Prof. Code § 17208 ........................................................................ 28

Cal. Bus. & Prof. Code § 17200 ........................................................................ 28

New Jersey Consumer Fraud Act § 56:8-1 ........................................................ *passim*

New Jersey Product Liability Act ..................................................................... 2, 18

**Rules**

Fed. R. Civ. P. 8(e)(2)................................................................................................... 37

## I.  **INTRODUCTION**

The Starlink infotainment systems ("Starlink") in model years 2019-2023 Subaru Outback, Legacy, Forester, Crosstrek, and WRX Vehicles ("Class Vehicles" or "Vehicles") are defective. The Starlink is a touchscreen interface in the Class Vehicles' center console that includes, among other features: the visual for the backup camera, controls for the audio and radio system, cell phone connectivity, the navigation system, and more. A latent defect in the Starlink causes the infotainment system in Class Vehicles to freeze, become non-responsive, experience "ghost touch" or phantom input, shut off, reboot, work intermittently or not at all, and suffer other malfunctions. Malfunctioning infotainment systems pose a driver distraction and interfere with drivers' ability to use safety features in the Class Vehicles, such as the backup cameras. Thus, the defect poses a safety hazard for Class Vehicle lessees and owners, their passengers, and other drivers on the road.

Despite the defect, Defendants Subaru Corporation ("SBR") and Subaru of America, Inc. ("SOA") (together, "Subaru" or "Defendants") specifically tout the Starlink system as promoting safety. Worse yet, Defendants knew about the Starlink defect before selling and leasing the Vehicles to Plaintiffs and class members based on pre-release testing that initially revealed the defect in the Class Vehicles, as well as Subaru also prior litigation concerning similar issues with the Starlink system. *See Udeen, et al. v. Subaru of Am., Inc.*, No. 18-17334 (D.N.J. 2019). Subaru nonetheless took the Class Vehicles with defective Starlink systems to market and continued to sell and lease these dangerous Vehicles to consumers with no consistent, reliable resolve; Subaru's authorized dealerships routinely decline to cover Starlink repairs, cannot permanently repair the defect, and often acknowledge that the defect is a known issue with no solution. Subaru effectively shifted the practical and financial consequences of the Starlink defect to consumers.

Each of Defendants' arguments for dismissal of the Second Amended Complaint ("SAC")

fail. First, Plaintiffs have standing to pursue nationwide claims on behalf of the class, but the issue is premature for resolution at the pleading stage and better addressed at class certification. Second, it is premature to determine choice of law at the pleading stage without the benefit of discovery but, in any case, application of New Jersey law to Plaintiffs' claims would not create a true conflict.

Third, SBR cannot avoid the express warranty claims: both SOA and SBR were responsible for express warranties by representation in the form of published advertisements to consumers, and they cannot abnegate responsibility by relying on an inconspicuous disclaimer in the Warranty Booklet. Further, Defendants' express warranties as to the Vehicles' safety are concrete, specific assurances that are actionable—not puffery. And while a majority of Plaintiffs' home states do *not* require reliance to plead a breach of express warranty claim, even the ones that do require some form of reliance establish a low bar that is satisfied by the existence of an express warranty. Plaintiffs also adequately presented their Vehicles to Defendants for inspection and repair but, in any event, presentment is excused as futile given Defendants' proven inability to repair the Starlink defect. Plaintiffs Jean-Louis and Quarles sufficiently pleaded both the agency theory and third-party beneficiary exceptions to privity to bring a breach of implied warranty claim. And the Hennessy Plaintiffs' NJCFA claim is not subsumed by the NJPLA, because they allege the harm was solely to Plaintiffs' Vehicles as opposed to themselves or their property.

Fourth, Plaintiffs sufficiently allege that Defendants fraudulently concealed the existence of the material safety defect in the Vehicles despite a duty to disclose based on both their superior knowledge and active concealment of the defect. Plaintiffs also sufficiently allege Defendants' pre-sale knowledge and fraudulent concealment, which are extraneous to and distinct from Defendants' later breach of its warranty obligations, so Plaintiffs' claims are not barred by the economic loss doctrine. Plaintiffs' fraud-based claims also were tolled under the discovery rule

2

and Defendants' fraudulent concealment and, thus, are timely. The Hennessy Plaintiffs have pleaded sufficient factual support at the pleading stage to show ascertainable losses under the NJCFA related to the alleged concealment. And the California Plaintiffs seek appropriate monetary relief under the UCL and FAL.

Fifth, Plaintiffs allege they currently are experiencing a problem with their Class Vehicles that remains unremedied, and Subaru's violations present a continuing risk to Plaintiffs, the putative Class, as well as to the general public, making injunctive relief appropriate. Finally, Plaintiffs need not demonstrate the absence of an adequate remedy at law to plead a claim for unjust enrichment. Plaintiffs are entitled to plead alternative claims for relief, and Defendants' arguments to the contrary are insufficient to dismiss Plaintiffs' unjust enrichment claims. And, because Plaintiffs' unjust enrichment claims rest on principles of equity, privity between a buyer and a seller is not required.

For these reasons, and as discussed in greater detail below, Subaru's Motion to Dismiss the Second Amended Complaint (ECF No. 38) ("Motion" or "Mot.") should be denied in its entirety.

## II.    <u>BACKGROUND</u>

The Starlink system is Subaru's in-vehicle infotainment system and is, in effect, the nucleus of the Class Vehicles. ¶ 128.[1] It is a touchscreen multimedia and video interface in the center console of Subaru's vehicles that includes the visual for the backup camera, controls the audio and radio systems, cell phone connectivity, weather information, navigation, and more. Using Starlink, drivers can connect their phone to the infotainment console via Bluetooth, Apple CarPlay, or Android Auto to allow for hands-free use of their smartphones. *Id.* Additionally, Starlink is

---

[1] Standalone citations to "¶" refer to paragraphs in the operative Second Amended Class Action Complaint, ECF No. 23.

necessary to receive visuals for the Vehicles' backup camera, which is a critical safety feature that is mandatory in all new vehicles under federal law. ¶ 133. Another feature controlled through Starlink is EyeSight, which Subaru touts as a life-saving feature that "scan[s] the road for unanticipated dangers," "monitors traffic movement, optimizes cruise control, and warns you if you sway outside your lane," and "appl[ies] full braking force in emergency situations, helping you avoid or reduce frontal impacts." ¶¶ 5, 127, 130.

Unfortunately for Plaintiffs and other Vehicle owners and lessees, the Starlink systems in the Class Vehicles are plagued with a dangerous latent defect[2] that causes Starlink to function intermittently or not at all. *E.g.*, ¶¶ 131-36. The Starlink defect causes persistent issues in the infotainment system, including system freezing and rebooting, unintended shutting off, audio skipping when connected to Bluetooth, radio channels skipping, non-responsive touch screen, detection of phantom or "ghost" inputs on the touch screen, and screen flashing, among other manifestations and malfunctions. ¶ 131. The defect is not just a mere inconvenience. Rebooting, freezing, and non-responsive infotainment systems are a driving distraction. ¶¶ 132, 134. The malfunctioning Starlink systems also impact the operability of connected features, such as the

---

[2] Subaru labels the Starlink defect an alleged "design defect," although it did not seek dismissal of any claims on this basis. *See* Mot. at 3–4 (Section II.B., "Background"). The SAC does not plead a design defect and, instead, indicates a defect in "material and/or workmanship." *E.g.*, ¶ 173. Courts routinely reject automakers' attempts to mischaracterize Plaintiffs' allegations as a defect in design as opposed to manufacturing at this stage. *See*, *e.g.*, *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 883 (D.N.J. 2020) ("The Court will decline to dismiss Plaintiff's express warranty claims on this basis at this stage."); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017) (courts in this district have repeatedly "refused to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation."); *Alin v. Am. Honda Motor Co.*, No. 08-cv-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (holding that "where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."); *Johnson v. Nissan North America, Inc.*, 272 F. Supp. 3d 1168, 1177-78 (N.D. Cal. 2017).

backup camera, navigation, and EyeSight. ¶¶ 132-33. The safety-concerns imposed by the Starlink defect do not merely concern owners and lessees of Class Vehicles; the defect creates numerous concerning and dangerous scenarios for Class Vehicle occupants, other unassuming drivers on the road, and pedestrians. ¶¶ 5, 24, 66, 76, 95, 105, 132–34.

Plaintiffs Marco Cilluffo (New Hampshire), Jeffrey Quarles (Washington), Carl Jean-Louis (New York), Randall Laureano (California), Thomas and Nancy Hennessy (New Jersey), Jill Yesko (Maryland), and Edwin Nieves (California) ("Plaintiffs")[3] are owners and lessees of Class Vehicles from seven states. Each Plaintiff purchased or leased a new Class Vehicle from an authorized Subaru dealership. ¶¶ 16-17 (Cilluffo); ¶¶ 21-22 (Quarles); ¶¶ 31-32 (Jean-Louis); ¶¶ 37-38 (Laureano); ¶¶ 70-71 (Hennessys); ¶¶ 101-02 (Yesko); ¶ 52 (Nieves). At the time Plaintiffs purchased their Vehicles, Subaru did not disclose to them that the Vehicles contain a latent safety defect. ¶¶ 20, 25, 55, 78, 86, 91, 108, 161.

Each Plaintiff experienced the defect on one or more occasions. When Plaintiffs sought a repair, they were told that there is no solution, that Subaru is aware of the issue, and/or the repair attempts failed. *E.g.*, ¶ 19 (Cilluffo took his Vehicle for service at an authorized dealer on two separate occasions and both times he was told there was no solution to the defect); ¶ 24 (Quarles presented his Vehicle for repair at an authorized dealership numerous times in two years, and was told there was no solution to the defect); ¶ 54 (Nieves brought his Vehicle to an authorized dealership to resolve the defect on at least four separate occasions and each time received a

---

[3] Plaintiffs voluntarily dismissed the individual claims of Pamela Doze, Karen Fitzgerald, Margo Chui, Paul Griffin, Jacob Plavnick, Theresa Sydoriak, Laura MacDonald, and Marc Ferrelli (but no other Plaintiffs) without prejudice on August 29, 2023. *See* ECF Nos. 42, 43). Plaintiffs reserve all rights as to Subaru's arguments pertaining to those individuals and to re-plead claims on behalf of those individuals, but do not address Defendants' mooted arguments concerning their now dismissed claims.

software update that failed to fix the defect); ¶ 106 (Yesko was told Subaru is aware of the defect but nothing can be done to resolve it); ¶ 135. Had Subaru disclosed the defect to Plaintiffs, they would not have agreed to the prices they paid for the Vehicles or would not have purchased the Vehicles at all. ¶¶ 20, 25, 36, 42, 55, 78, 108.

Subaru knew the Starlink infotainment systems in the Vehicles were defective when it sold and leased them but concealed this fact. ¶¶ 159–67, 302. Subaru's knowledge is supported by related Technical Service Bulletins ("TSBs") acknowledging the issue; a consistent stream of consumer complaints about the defect on the National Highway Traffic Safety Administration ("NHTSA") website—which Subaru regularly monitors—and other websites such as Subaru message boards; Subaru's rigorous pre-sale testing; and the many consumers who have presented their Vehicles for repairs related to the issue to authorized Subaru dealerships. ¶¶ 7, 138–45, 163. Despite its pre-sale knowledge of the defect, Subaru sold and leased (and continues to sell and lease) the Vehicles without disclosing the defect and has offered no effective remedy or repair. ¶¶ 142, 146, 161, 176.

Plaintiffs filed an initial complaint on April 4, 2023. ECF No. 1. An amended complaint was filed on April 26, 2023. ECF No. 11. Plaintiffs filed the operative SAC on May 26, 2023 (ECF No. 23), alleging various common law and state law causes of action. On August 2, 2023, Defendants filed a Motion to Compel Arbitration and Motion to Stay (ECF No. 37) and a Motion to Dismiss Plaintiffs' SAC (ECF No. 38). On August 25, 2023, certain Plaintiffs voluntarily dismissed their individual claims without prejudice (ECF Nos. 41, 42), mooting Defendants' arbitration motion.

For all the reasons set forth herein, each claim asserted in the SAC is adequately pleaded and should proceed to discovery.

## III.  **ARGUMENT**

### A.  **Plaintiffs Have Standing to Assert Nationwide Claims**

Defendants challenge Plaintiffs' ability to pursue claims for breach of express warranty and implied warranty of merchantability (Counts II and III), violations of the NJCFA (Count XIII), and unjust enrichment (Count XIX) on behalf of a nationwide class. Defendants' request to strike these allegations should be treated as a premature class certification challenge and denied accordingly.

This Court recognizes that challenges to nationwide classes at the pleading stage are premature and better left for class certification proceedings when the parties have had the benefit of discovery. *See, e.g.*, *Neuss v. Rubi Rose, LLC*, No. 16-cv-2339-MAS-LHG, 2017 WL 2367056, at \*10 (D.N.J. May 31, 2017) ("Given the early state of the proceedings, the Court denies Defendants' motion to strike the class allegations as premature."); *Rolland v. Spark Energy, LLC*, No. 17-cv-2680-MAS-LHG, 2019 WL 1903990, at \*5 (D.N.J. Apr. 29, 2019) ("[T]he Court is not inclined to dismiss or strike Plaintiff's class allegations at the motion to dismiss stage, and finds this issue better suited for the class certification stage.").

Further, courts in the Third Circuit consistently hold that "as long as the named plaintiff has standing, it can bring claims on behalf of a nationwide class." *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*, No. 20-cv-6717-JMV-MF, 2021 WL 960875, at \*6 (D.N.J. Mar. 15, 2021) (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015)). In fact, "in a *class action that [is] itself still uncertified* there can be no distinction between putative class members and named class members." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,

No. 19-md-2875-RBK-SAK, 2022 WL 1013945, at *4 (D.N.J. Apr. 5, 2022) (emphasis in original).

Defendants hinge their argument to the contrary on a "disagreement in this district court." *See* Mot. at 6 (citing *Cohen v. Subaru of Am., Inc.*, No. 20-cv-8442-JHR-AMD, 2022 WL 721307 (D.N.J. Mar. 10, 2022)). The Cohen court dismissed the claims in states where there was no named plaintiff in reliance on *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 221 (D.N.J. 2020), the basis of which has been explicitly rejected by this Court as "inapposite to the standing issue here." *In re Valsartan*, 2022 WL 1013945, at *3 (rejecting the propriety of *Ponzio*, as well as the application of *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006) and *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) to the standing issue here)). Thus, *Cohen* does not control.

Further, Defendants' specific argument as to the Hennessy Plaintiffs' ability to bring their NJCFA claim on behalf of a nationwide class fails, as Courts extend the reach of NJCFA extra-territorially. *See In re Mercedes-Benz Tele Aid Cont. Litig.*, 267 F.R.D. 113, 123–28 (D.N.J. 2010) (holding that the NJCFA is applicable to out-of-state consumers); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-cv-1220-JRT-KMM, 2020 WL 1515233, at *12 (D. Minn. Mar. 30, 2020), *rev'd and remanded on other grounds*, 12 F.4th 773 (8th Cir. 2021) (same).

Regardless, as discussed *infra*, it is premature to determine this issue at the motion to dismiss stage.

### B. It Is Premature to Determine the Choice of Law Questions And, in Any Event, There Is No Genuine Conflict Applying New Jersey Law

A "choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action lawsuit, especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis." *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-JLL, 2017 WL 3131977, at *16 (D.N.J. July 20, 2017); *see also Snyder v.*

*Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-cv-2765-JLL, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017) (collecting cases). Defendants fail to make any compelling showing as to why the choice of law issue should be determined at this early stage of the litigation, without a full factual record upon which the court may rely in its decision making. This Court should follow well-established precedent and defer this issue until the factual record is developed further. Should the Court choose to decide this issue now, however, New Jersey law should apply to the claims at issue.

### 1. There Is No True Conflict of States' Laws

#### a. Implied and express warranty claims

<u>Express warranty claims</u>. Defendants contend that a conflict exists because certain states require a showing of reliance to plead a breach of express warranty claim. As an initial matter, courts find that resolving the issue of reliance is an inquiry "too fact-intensive to conduct [on] a choice-of-law analysis" on a motion to dismiss. *In re Subaru Battery Drain Prod. Liab. Litig.*, No. 20-cv-3095-JHR-JS, 2021 WL 1207791, at *11 (D.N.J. Mar. 31, 2021); *Powell*, 502 F. Supp. 3d at 880 ("[T]he Court is unable to determine whether Plaintiffs would be able to put forth sufficient evidence of reliance, and" thus "cannot assess whether this would be an actual conflict or a false conflict.").

Even so, no true conflict exists amongst Plaintiffs' states as to reliance, because Plaintiffs' allegations are sufficient to plead reliance in the few states that so require. *See* discussion at Section III.C.1.d, *infra*. As Defendants acknowledge, reliance is not required to maintain an express warranty claim under New Jersey law, and New York law follows suit. *See In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *11; *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 547 (C.D. Cal. 2012) ("New York courts have held that a plaintiff need not

demonstrate reliance when an express warranty has been given"). Under Massachusetts law, pleading the existence of an irreparable defect—such as the latent defect in the Class Vehicles' Starlink system—despite coverage by a warranty promising otherwise is sufficient to show reliance. *Rezendes v. Mitsubishi Motors N. Am., Inc.*, No. 22-cv-10211-AK, 2023 WL 1864405, at *6 (D. Mass. Feb. 9, 2023).

Implied warranty claims. Defendants' argument as to the privity requirements under New York and Washington law similarly fails.[4] Defendants' argument fails in the first instance because privity "is unsuitable for adjudication on a Rule 12(b)(6) motion." *Opheim v. Volkswagen Aktiengesellschaft*, No. 20-cv-2483-KM-ESK, 2021 WL 2621689, at *9 (D.N.J. June 25, 2021) ("this defense, whatever its merits, is unsuitable for adjudication on a Rule 12(b)(6) motion"); *see also Cohen*, 2022 WL 721307, at *15 ("The Court finds that it is premature to dismiss Plaintiffs' implied warranty for lack of privity before discovery on a possible agency relationship between Subaru and its dealerships.").

Even if the Court were to consider Defendants' arguments, New York and Washington law recognize an agency theory or third-party beneficiary exception to privity where dealerships can act as agents for the manufacturers, and Plaintiffs' allegations readily satisfy such exceptions. *See discussion* at Section III.C.2.a., *infra*; *Opheim*, 2021 WL 2621689, at *9 (denying motion to dismiss on privity grounds in auto defect case because most states recognize exceptions to the privity rule); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 322 (D.N.J. 2014) (finding no conflict between New Jersey and several other states that require direct privity to support an express warranty claim).

---

[4] Defendants' challenges as to the potential conflicts with the claims brought by Doze, Fitzgerald, Ferrelli, Griffin, Chui, MacDonald, Sydoriak, and Plavnick are mooted by those individuals' dismissal from this litigation without prejudice. *See* note 3, *supra*.

### b.     Fraudulent omission and unjust enrichment

Defendants suggest a conflict between New Jersey's six-year statute of limitations for common law fraud and unjust enrichment, and the California and Washington three-year limitations period for those claims. Not so. Defendants overlook the statute of limitations tolling provisions under Plaintiffs' separate claims for fraudulent concealment. *See* Section III.G.2., *infra*; *see e.g.*, *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 304 (D.N.J. 2009) (no actual conflict of laws where New Jersey law yields the same outcome). Here, "the allegations [do] not rule out the possibility that the statute of limitations should have been tolled." *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017).

Based on the foregoing, while it is premature to undertake a conflict of law analysis at the pleading stage, Plaintiffs have adequately shown there is no true conflict among the relevant state laws to justify dismissal on this basis. It necessarily follows that this Court need not reach the significant relationship test, an equally fact-intense analysis that requires the benefit of discovery.

### C.     Plaintiffs Adequately Plead Express And Implied Warranty Claims

#### 1.     Defendants' Challenges to the Express Warranty Claims Fail

##### a.     Plaintiffs state a breach of express warranty claim against SBR

Subaru's attempt to shield its Japanese parent company from Plaintiffs' express warranty claims fails. Defendants primarily do so by relying on the Subaru Warranty and Maintenance Booklet ("Warranty"). *See* Mot. at 14. This ignores allegations that Defendants also made warranties by representation outside of the Warranty, and that SOA *and* SBR were responsible for those warranties. *See* ¶ 3 (published advertisements Defendants' promises to consumers); ¶ 119 (alleging SBR is responsible for, *inter alia*, "warranting, marketing, advertising" Subaru vehicles). *Powell*, 502 F. Supp. 3d at 882, which involved express warranty claims rooted solely in the

Warranty, is not dispositive of the issue. SBR's express warranties by representation (*e.g.,* ¶ 3) are separate from claims under the Warranty and are actionable here. *See, e.g., In re Jacoby Airplane Crash Litig.*, No. 99-cv-6073, 2005 WL 8179785, at \*3 (D.N.J. Aug. 26, 2005) (citation omitted) (recognizing that in the Third Circuit, "a seller could be liable for breach of express warranty 'if its representation regarding the goods takes the form of . . . advertisements.'").

<blockquote>

b.      **Defendants' attempt to disclaim its express warranties by representation fails**
</blockquote>

Defendants' argument that the breach of express warranties by representation claim must be dismissed as "unsubstantiated statements made outside of the Warranty and Maintenance Booklet" is unavailing. Mot. at 14-15. In *Avram v. Samsung Electronics America, Inc.*, No. 11-cv-6973, 2013 U.S. Dist. LEXIS 97341 (D.N.J. July 11, 2013), the Court rejected this precise argument because a warranty expressly disclaiming all other warranties cannot effectively negate claims where the "express warranty is displayed to the purchaser when he parts with his money at the store, but the disclaimer appears at page 42 of a manual sealed inside the product's packaging." *Id*. at \*\*29–30. In reaching this conclusion, the Court pointed to the "potential for unfairness." *Id*. The same is true here where Defendants attempt to undermine Plaintiffs' express warranty by representation claim by pointing to an inconspicuous disclaimer buried in the Warranty. Mot. at 14-15. In any event, and "[a]t best, such an alleged disclaimer would present an issue of fact" not fit for adjudication at the pleading stage. *Id*.

<blockquote>

c.      **Defendants' representations are actionable non-puffery**
</blockquote>

Defendants' express warranties by representation are not "non-actionable puffery." Mot. at 15-16. Defendants specifically touted Starlink (and the Vehicles) as safe, because—when working as intended—it is capable of providing "extra safety"; "help[ing] keep you and your Subaru safe"; and providing "hands-free smartphone operation . . . for safe and easy access to your

favorite apps and content." ¶ 3. To the contrary, Plaintiffs allege the defective Starlink is unsafe in it of itself and compromises the safety of the Vehicles as a whole. Courts routinely find such specific assurances about a concrete characteristic, such as safety, actionable. *See, e.g., Donachy v. Playground Destination Properties, Inc.*, No. 10-cv-4038, 2013 WL 3793033, at *7 (D.N.J. July 19, 2013) (statements that deposits for condos "will be safe under all circumstances" were not puffery); *Hernandez v. Radio Sys. Corp.*, No. 22-cv-1861, 2023 WL 2629020, at *5 (C.D. Cal. Mar. 9, 2023) ("[T]he Court finds that Defendant's representations of its PetSafe Products as 'safe' and 'harmless' are not puffery"); *Doe v. Uber Techs,. Inc.*, 551 F. Supp. 3d 341, 368 (S.D.N.Y. 2021) (collecting cases) ("Taken in context, "safe" and "safest" have been found to constitute factual claims, not puffery.").

### d. Defendants' reliance arguments do not warrant dismissal of the express warranty claims[5]

As Defendants acknowledge, there is no reliance requirement for the Hennessys' (New Jersey), Laureano's (California), Nieves's (California), Quarles's (Washington), and Cilluffo's (New Hampshire) express warranty claims. *See* Mot. at 23; *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-cv-7849-WHW, 2013 WL 5574626, at *11 (D.N.J. Sept. 30, 2021) (under New Jersey law no reliance is required other than showing the warranty was part of the basis of the bargain); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 915–16 (N.D. Cal. 2018) (California law does not require reliance for express warranty claims); *Petersen v. Atrium Med. Corp.*, No. 18-cv-212, 2019 WL 4261822, at *5 (D.N.H. Sept. 9, 2019) (citing *Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 842 (2005) (". . . New Hampshire law does not impose a reliance requirement for [warranty] claims."); *In re MyFord Touch Consumer Litig.*, No. 13-cv-

---

[5] Defendants' reliance challenges to the express warranty claims brought by Doze, Fitzgerald, Ferrelli, Griffin, Chui, MacDonald, Sydoriak, and Plavnick are moot. *See* note 3, *supra*.

3072, 2015 WL 5118308, at *6 (N.D. Cal. Aug. 31, 2015) (Washington law does not require actual reliance). In any event, Subaru's contention that these Plaintiffs fail to allege reliance or that the express warranties were the basis of the bargain is belied by a cursory sampling of the allegations in the Complaint. ¶ 20 (Cilluffo); ¶ 25 (Quarles); ¶¶ 38, 42 (Laureano); ¶ 55 (Nieves); ¶ 78 (Hennessy Plaintiffs); ¶¶ 172-75.

Further, under New York law, the terms of the express warranty are presumed to be the basis of the bargain upon which the purchaser relied. *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 503 (1990); *Keegan*, 284 F.R.D. at 547 (citation omitted) ("New York courts have held that a plaintiff need not demonstrate reliance when an express warranty has been given, since the terms of the warranty are the basis of the bargain upon which the purchaser presumably relied."). Under Washington law, for warranties by representation, only "aware[ness] of such representations" is required to be pleaded. *In re Nexus*, 293 F. Supp. 3d at 919. Here, both Plaintiffs Jean-Louis and Quarles "relied upon Subaru to provide the full picture of information regarding his Vehicle" (¶¶ 25, 36), and Defendants' express warranties "formed the basis of the bargain" for Plaintiffs, including Jean-Louis and Quarles (¶ 175). These allegations suffice; reliance is not a basis for dismissal of any Plaintiffs' express warranty claims.

> ### e.    Plaintiffs Jean-Louis and Laureano presented their vehicles for a repair, even though efforts to repair were futile[6]

Defendants argue that Plaintiffs Jean-Louis and Laureano cannot pursue express warranty relief under New York law and the California Song-Beverly Act without having first given Subaru an opportunity to repair their Vehicles. Mot. at 20-21 (Jean-Louis); 22-23 (Laureano). But Plaintiff

---

[6] Defendants' presentment and opportunity to repair challenges to the express warranty claims brought by Griffin and Sydoriak are mooted by those individuals' dismissal from this litigation without prejudice. *See* note 3, *supra*.

Jean-Louis satisfied any presentment requirement when, "[i]n or about October 2019, Plaintiff Jean-Louis informed the dealership of his problems with the Starlink system *during a service appointment*." ¶ 35 (emphasis added).

In any event, Subaru's inability to fix the problem in the Class Vehicles excused Plaintiffs Jean-Louis and Laureano from *any* presentment requirement, let alone numerous presentments. *See Bolooki v. Honda Motor Co. Ltd.*, No. 22-cv-4252, 2023 WL 2627015, at *3 (C.D. Cal. Mar. 10, 2023) (citations omitted) ("Generally, a plaintiff can sustain a breach of express warranty claim despite a lack of presentment when presentment would be futile . . . ."); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) (acknowledging that futility may be a basis for an excuse from presentment requirement). Here, presentment was clearly futile due to the widespread nature of the Starlink defect (¶¶ 137-38, 142-43), and because Defendants' authorized dealerships routinely admit to an issue with Starlink that cannot be fixed. *See, e.g.*, ¶ 19 (two Subaru dealerships told Cilluffo "there was nothing the dealerships could do to address the [Starlink] issues"); ¶ 54 (repeated software updates failed to resolve the issue in Nieves' Vehicle); ¶¶ 106-07 (Subaru representatives told Yesko they "hope the issue would resolve on its own"). Worse yet, Laureano's dealership assured him that "the issues he was having with Starlink were '*normal*' . . . ." ¶ 41 (emphasis added).

Failure to present is not a basis to dismiss Plaintiff Jean-Louis's and Laureano's express warranty claim under New York law and the Song-Beverly Act.

### 2. Defendants' Challenges to the Implied Warranty Claims Fail

### a. Privity is not required for Plaintiff Jean-Louis's and Plaintiff Quarles's implied warranty claims[7]

Defendants' privity challenge to Plaintiff Jean-Louis's and Plaintiff Quarles's implied warranty claims under New York and Washington law fail. *See* Mot. at 16-19.

First, the third-party beneficiary exception applies to Plaintiff Jean-Louis. ¶ 187. Courts applying New York law on the privity issue have required only that plaintiffs plausibly allege—not prove—they are intended third-party beneficiaries. *See, e.g., In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 923 (N.D. Cal. 2018) (finding plaintiffs were third-party beneficiaries under New York law where the warranty is designed to benefit only the end users, not the retailers); *Johnson v. Nissan North America, Inc.*, 272 F. Supp. 3d 1168, 1180–81 (N.D. Cal. 2017) (finding allegations that "Nissan's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers" and plaintiffs "are intended third-party beneficiaries of contracts between Nissan and its dealers" are "sufficient to establish that [plaintiff] is an intended third-party beneficiary."). Plaintiff Jean-Louis similarly alleges that the warranty agreements were designed for, and are intended to benefit, only the ultimate consumers—Plaintiffs and the other class members. ¶ 187. Subaru's Warranty and Maintenance Booklet explicitly confirms this, identifying that "[t]hese warranties are made by SUBARU of America, Inc.," and "[e]very owner of the vehicle during the warranty period shall be entitled to the benefits of these warranties." Mot., Walters Decl., Ex. A at 4.

In any event, the third-party beneficiary relationship is a fact-intensive inquiry not

---

[7] Defendants' privity challenges as to the implied warranty claims brought by Doze, Sydoriak, Griffin, and Fitzgerald, and pre-suit notice challenges as to the implied warranty claims of Griffin and Fitzgerald (Mot. at Section II.C.4) are moot. *See* note 3, *supra*.

appropriately decided at this stage. *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 677 (E.D. Mich. 2020) ("Resolving the applicability of [the third-party beneficiary] exception also is a fact-intensive exercise not amenable to resolution at the pleading stage."). The Court should follow *Johnson* and reject Defendants' argument.

Second, the agency exception to privity applies here because Subaru exerts actual and apparent control over the dealerships by, *inter alia*, issuing TSBs to its dealerships on how to handle issues that come up with Subaru vehicles (¶ 142); directing owners and lessees to present their cars to Subaru authorized dealerships for repairs and service (¶ 140; Mot., Walters Decl., Ex. A at 4); and requiring dealerships to submit detailed data to it regarding repairs performed at dealerships (¶ 140); *see, e.g.*, *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 975 (N.D. Cal. 2018) (finding substantially similar allegations sufficient to support "a plausible inference that the dealers acted as Ford's agents."). These allegations of agency suffice at this stage. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 956 ("the scope of the agency is a factual one for the jury to resolve, especially as information about Ford's precise relationship with its dealers . . . is largely within Ford's possession, custody, or control.").

Privity also is not required for Plaintiff Jean-Louis's claim under New York law because the "thing-of-danger" exception applies. Courts have held that vehicle defects can constitute "things-of-danger" sufficient to eliminate the privity requirement for implied warranties. *See, e.g.*, *Hubbard v. GMC*, No. 95-cv-4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (holding that a defect with the subject vehicle's braking system was a thing-of-danger and the privity requirement did not apply); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-cv-4558, 2010 WL 2813788, at **73-74 (D.N.J. July 9, 2010) (applying New York law finding defective braking systems constituted a thing-of-danger exception to the privity requirement). Here, a failing

infotainment system poses a driving distraction and is an inherently dangerous condition. ¶ 5.

### b. The Hennessy Plaintiffs' implied warranty claim is not subsumed by the New Jersey Product Liability Act

Defendant's attempt to repackage the Hennessy Plaintiffs' breach of implied warranty claim as a product liability claim fails. In considering "whether the NJPLA subsumes a particular claim, the court must ascertain the type of harm that a plaintiff is alleging; namely, whether the harm involves property damage or bodily injury caused by the alleged defective product, or whether the harm was solely to the product, itself." *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 818 (D.N.J. 2019) (involving physical pain from the implantation of a medical device). Defendant's inapposite case law further supports the notion that property damage or bodily injury is a touchstone of a true product liability claim. *See* Mot. at 24 (citing *Kaplan v. G.E.*, No. 22-cv-5296, 2023 WL 4288157, at *1 (D.N.J. June 30, 2023) (alleging the defective fire alarms cause injury by "becoming silent and nonfunctional upon contact with fire rather than alerting those nearby.")); *Sun Chem. Corp. v. Fike Corp.*, 981 F.3d 231, 238 (3d Cir. 2020) (alleging a defective chemical explosion-suppression system "injured several Sun employees and caused significant property damage to the facility" on summary judgment).

Subaru previously made this exact argument under similar factual circumstances in this Court and lost. *See Powell*, 502 F. Supp. 3d at 896 (rejecting Subaru's NJPLA subsumption argument where "Plaintiffs explain that while they allege that defective windshields are a safety hazard, they do not allege that any Plaintiff suffered personal injury or seek to recover for bodily harm."). Like in *Powell,* Plaintiffs here allege harm solely to Plaintiffs' Vehicles as opposed to themselves or their property. The Court should reject Subaru's argument.

**D. Plaintiffs' Fraud-Based Claims are Sufficiently Pleaded[8]**

Plaintiffs ground their common law and statutory fraud-based claims in Subaru's affirmative misrepresentations and fraudulent concealment and/or omission of material facts concerning the defect.

**1. Plaintiffs Sufficiently Plead Affirmative Misrepresentations**

To plead an affirmative misrepresentation, Plaintiffs must allege that Defendants made statements that have the capacity to deceive a reasonable consumer. Critically, whether an advertising statement is deceptive under the "reasonable consumer" standard raises questions of fact that are rarely suitable for resolution on a motion to dismiss. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955, at *17 (E.D.N.Y. July 2, 2010). Here, Plaintiffs allege specific advertising statements made by Defendants concerning the safety, quality, and reliability of their Vehicles (¶¶ 3, 4), all of which do not constitute non-actionable puffery as argued by Defendants. *See* Section III.C.1.c, *supra*. Each Plaintiff was exposed to and aware of Defendants advertising statements "regarding the functionality of the Starlink system in purchasing [the] Vehicle." ¶¶ 42, 55, 78, 108.

Moreover, as part of their fraudulent and deceptive practices, Defendants made specific assurances about their warranty coverage and the corresponding peace of mind that comes with having a safe and properly engineered Vehicle, all of which were not true. ¶¶ 173, 300. A trier of fact could reasonably conclude that Defendants' statements had the capacity to deceive a reasonable, car-buying consumer who would expect Defendants' Vehicles to not pose any safety risk, be free from known defects, and protected by a warranty. *See*, *e.g.*, *In re AZEK Building*

---

[8] Defendants' various challenges to the fraud-based claims brought by Doze, Fitzgerald, Chui, Griffin, Plavnick, Sydoriak, MacDonald, and Ferrelli are moot. *See* note 3, *supra*.

*Prods., Inc., Mktg. and Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 612, 620–21 (D.N.J. 2015) (finding allegations of defendant's misrepresentations sufficient where plaintiffs alleged defendant made general statements of quality and durability in marketing materials while having knowledge of disputed product defects); *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *18 (finding allegations that "the defendant misrepresented that the NVLW would cover all defects . . . despite the fact that they knew it intended to deny coverage for anything that it deemed a 'design defect' . . . were simply not puffery, but actual misstatements of fact.").

### 2. Plaintiffs Adequately Plead Fraudulent Concealment of a Material Fact

"[I]n cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the [Rule 9(b)] standard is relaxed." *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 385 (D.N.J. 2014). This makes sense because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. CV1713544, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018).[9]

### a. The existence of the Starlink Defect is a material fact

Whether an omission is material "is a fact intensive question that asks whether 'a reasonable man would attach importance to its existence of nonexistence in determining his choice of action in the transaction in question." *Keegan,* 284 F.R.D. at 531. Courts routinely find an

---

[9] Courts are justified in relaxing the pleading requirements of 9(b) in the context of fraud by omission because "[l]ike Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place, and contents of the false representations or the identity of the person making the misrepresentation." *Bonfield v. AAMCO Transmissions*, 708 F. Supp. 867, 875 (N.D. Ill. 1989); *see also Cohan v. Pella Corp.*, 2015 WL 6465639, at * 3 (D.S.C. Oct. 26, 2015) (collecting authority for the proposition from across the country).

undisclosed safety risk, such as that posed by the defective Starlink, is per se material. *See Feldman v. Mercedes-Benz USA, LLC*, No. 11-cv-984-WJM, 2012 WL 6596830, at \*11 (D.N.J. Dec. 18, 2012) (finding failure to disclose defect in vehicle's air intake system sufficient to allege material safety concern under UCL and CLRA); *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. Mar. 14, 2013) (finding a headlamp defect causing condensation in a vehicle material to allege fraud by omission).

Plaintiffs allege that the Starlink defect is a safety concern due to the "distracting effects on occupants . . . its impact on Vehicles' safety features" such as "EyeSight, which Defendants advertise as a life-saving feature . . . and the "impact[ed] use of backup camera functions, which is a critical and mandatory safety feature." ¶¶ 5, 127, 132, 134. A reasonable consumer would find—and, in fact, did find—the existence of the safety defect to be material. ¶¶ 24, 76, 78, 103, 105, 138 (collecting consumer complaints referencing safety), 161. These allegations reflect an unreasonable safety hazard sufficient to demonstrate materiality.

### b. Defendants had a duty to disclose the Defect[10]

Plaintiffs adequately plead Defendants' duty to disclose the defect based on their superior knowledge, the safety hazard caused by the defect, and Subaru's active concealment of the fact.

---

[10] The laws of Plaintiffs' home states "recognize a duty to disclose where the defendant possesses exclusive or superior knowledge or actively conceals the omitted information." *In re Volkswagen Timing Chain*, 2017 WL 1902160, at \*19 n.9 (acknowledging the applicable laws from New York, California, New Hampshire, Maryland, and Washington and finding a duty to disclose a latent vehicle defect under all); *see also Song Fi, Inc. v. Google, Inc.*, No. 14-cv-5080, 2016 U.S. Dist. LEXIS 45547 (N.D. Cal. Apr. 4, 2016); *Dean v. Beckley*, No. 10-cv-297, 2010 U.S. Dist. LEXIS 105007, \*16 (D. Md. Oct. 1, 2010); *King v. Philip Morris, Inc.*, No. 99-C-856, 2000 WL 34016322 (N.H. Super. Ct. 2000); *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483-84 (2d Cir. 1995); *Lovell v. P.F. Chang's China Bistro, Inc.*, No. 14-cv-1152, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015).

###### i. Defendants had superior knowledge of the defect

In the simplest terms, "[i]f one party has superior knowledge or has means of knowledge not available to both parties, then he is under a legal obligation to speak and the silence would constitute fraud." *Ponzio*, 447 F. Supp. 3d at 231 (quoting *State by Abrams v. Gen. Motors Corp.*, 120 Misc. 2d 371 (N.Y. Sup. Ct. 1983)). "[K]nowledge need not be pled with particularity." *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-cv-10546, 2023 WL 3271116, at \*24 (D.N.J. May 4, 2023).

Here, Plaintiffs allege Subaru knew about the defect through sources not available to consumers, including but not limited to pre-sale testing data (¶¶ 6, 144), consumer complaints about the defect to Subaru directly to its dealers (¶¶ 7, 140), and aggregate data from Subaru's dealers such as warranty reimbursement claims (¶ 140). Such allegations have previously been deemed sufficient to establish exclusive knowledge on behalf of Subaru, as well as other vehicle manufacturers. *See*, *e.g.*, *Powell*, 502 F. Supp .3d at 888 (finding substantially similar allegations of "exclusive knowledge" sufficient to satisfy Rule 9(b)); *Nelson v. Nissan N.A., Inc.*, 894 F. Supp. 2d 558, 568 (D.N.J. 2012) (same).

Subaru's pre-sale knowledge is reinforced by the similar Starlink litigation in *Udeen, et al. v. Subaru of Am., Inc.*, No. 18-17334 (D.N.J. 2019)—a class action lawsuit that settled in 2019—by which "Subaru was also alerted to the defect due to prior similar failures in and issues with Starlink in prior Subaru model years." ¶¶ 9, 145

###### ii. Defendants also had a duty to disclose a safety hazard

In addition to the above, a duty to disclose may arise "when there is a known defect in a consumer product and there are safety concerns associated with the product's use." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 958–960 (applying California, Alabama, Arizona,

Colorado, Connecticut, Florida, New Jersey, New York, North Carolina, Ohio, Pennsylvania, and Texas law and finding "a reasonable jury could find a safety concern here with respect to [the defect] that gives rise to a duty to disclose."); *see also In re Takata Airbag Prod. Liab. Litig.*, No. 14-cv-24009, 2016 WL 5848843, at *7 (S.D. Fla. Sept. 21, 2016) (finding duty to disclose facts about vehicle safety under Massachusetts law). As established *supra*, Section III.D.1, the Starlink defect posed an unreasonable safety hazard to Plaintiffs and the putative class which triggered a duty to disclose on behalf of Defendants. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 959 (finding "a reasonable jury could find that a suddenly malfunctioning [infotainment] system could create a safety risk, particularly if the system were to suddenly crash while a person was driving.").

### c. Defendants actively concealed material facts

Plaintiffs allege Subaru actively concealed the defect in several ways, including systematically withholding information about the defect from consumers (¶ 161), including rigorous pre-sale testing that alerted Subaru to the defect (¶ 144), affirmatively advertising the Vehicles as safe and reliable (¶ 3), failing to issue corrective TSBs and/or recalls (¶ 142), and, in some instances, representing to consumers that the Vehicles were defect-free and performing as "normal." (¶ 41). This is more than enough to allege active concealment sufficient to impose a duty to disclose. *See Marsikian v. Mercedes-Benz USA, LLC*, No. 08-cv-4876, 2009 WL 8379784, at *6 (C.D. Cal. 2009) (finding active concealment where plaintiffs alleged defendant's bulletins provided only temporary fix, indicating defendant knew about problem, developed selected responses to complaints, but concealed problem from general customer base); *Ho*, 931 F. Supp. 2d at 998–99 (same).

### 3. Plaintiffs Sufficiently Establish Causation or Reliance

As explained in Section III.C.1.d, *supra*, Plaintiffs sufficiently plead reliance on Defendants' alleged misrepresentations and/or omissions. Here, reliance is apparent based on Defendant's exclusive knowledge of the Starlink defect, as well as the allegations that Defendants actively concealed the same from Plaintiffs and those similarly situation. Plaintiffs allege the Defendants fraudulently concealed the defect, and that they "relied on Subaru's misrepresentations and omissions regarding the functionality of the Starlink system in purchasing [the] Vehicle." ¶¶ 30, 42, 50, 55, 69, 78, 86, 91, 100, 108. Plaintiffs further state that "[h]ad Subaru disclosed this on its website, through its dealerships, in its warranty manuals, or elsewhere prior to Plaintiff purchasing his Class Vehicle, Plaintiff would not have purchased his Vehicle, or would not have paid the purchase price that he did." ¶¶ 20, 25, 30, 42, 50, 55, 60, 69, 78, 86, 91, 99, 108, 118. In *Cohen v. Subaru of Am., Inc.*, No. 20-cv-8442-JHR-AMD, 2022 WL 721307, at *18 (D.N.J. Mar. 10, 2022), the Court held such allegations sufficiently pleaded reliance and causation for statutory and common-law claims to survive a motion to dismiss. *See also In re Volkswagen Timing Chain*, 2017 WL 1902160, at *24 (finding similar allegations sufficient to plead reliance under the consumer protection laws of New Jersey, California, Maryland, New Hampshire, and New York). As such, nothing more is needed.

### E. Plaintiffs' Fraudulent Concealment Claims Are Not Barred by the Economic Loss Rule in California or New Jersey

The theory behind the economic loss rule is to "preclude plaintiffs from recovering under fraud and other intentional tort theories of liability where the tort claims are based on the same facts as the breach of contract claims." *In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *29 (citing California, Florida, New Jersey, and Illinois cases).

First, Plaintiffs' fraudulent concealment claim alleges pre-sale conduct by Subaru (concealment) distinct from Subaru's later conduct in breaching its warranty obligations. ¶ 145 ("Subaru was also alerted to the defect due to prior similar failures in and issues with Starlink in prior Subaru model years that were the subject of the settled *Udeen* Starlink litigation."); ¶ 139 ("Subaru is and at all relevant times has been aware of the latent defect in the Starlink system described above."); ¶ 146 ("Despite knowing about these problems with the head units . . . Subaru continued . . . continued to sell and lease these vehicles . . . without disclosing it to Plaintiffs and class members . . . .").

Further, Plaintiffs' allegations of fraudulent concealment fall within the exception to the economic loss rule in California and New Jersey. *Dhital v. Nissan N. Am., Inc.*, 300 Cal. Rptr. 3d 715, 727 (2022) ("Fraudulent inducement claims fall within an exception to the economic loss rule recognized by [the California] Supreme Court (*Robinson Helicopter Co. v. Dana Corp.*, 22 Cal. Rptr.3d 352, 358 (2004)); *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) ("Fraud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations.") (citation omitted). Because Plaintiffs' fraudulent concealment claim sufficiently alleges presale knowledge and concealment Subaru, which are extraneous to and distinct from Subaru's alleged later breach of its warranty obligations, Plaintiffs' claim is not barred by the New Jersey economic loss doctrine. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 592 (E.D. Mich. 2018).

**F.      Plaintiff Jean-Louis's Fraud-Based Claims Are Adequately Pleaded**

Subaru contends that Plaintiff Jean-Louis's statutory and common-law fraud claims fail because "he cannot claim that he justifiably relied on a misrepresentation or material omission

because he purchased his car years after knowing that this car contained the alleged defect." Mot. at 34 (alterations omitted). Subaru's position fails for two reasons.

First, contrary to Subaru's unilaterally imposed heightened pleading requirement, "Plaintiff[] need neither prove nor plead actual reliance on [his] § 349 claim." *Miller v. Hyundia Motor Am.*, No. 15-cv-4722, 2016 WL 5476000, at *17 (S.D.N.Y. Sept. 28, 2016) (rejecting the defendant's argument that plaintiffs' § 349 claim fails because "not one plaintiff alleges that—had he or she known that [defendant] would not cover all component replacements and maintenance services—he or she would have acted differently."); *see also Cohen v. Subaru of Am., Inc.*, No. 20-cv-8442-JHR-AMD, 2022 WL 714795, at *31 (D.N.J. Mar. 10, 2022) (noting that § 349 "does not require proof of justifiable reliance."). The materiality inquiry under § 349 is "objective," under which "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (internal quotations omitted). Plaintiff Jean-Louis alleged that Subaru concealed "material" facts about the Class Vehicles allegedly faulty Starlink infotainment system, and that he expected "Defendants to provide the full picture of information regarding his Vehicle and relied upon the idea that Defendants would not withhold material information about this Vehicle." ¶ 36. Nothing more is required. *See Chiarelli v. Nissan N. Am., Inc.*, No. 14-cv-4327, 2015 WL 5686507, at *11 (E.D.N.Y. Sept. 25, 2015) (finding allegations that "Nissan failed to disclose information about the latent defect . . . that was relevant to consumers, including Plaintiff" sufficient to survive a motion to dismiss); *see also Amato v. Subaru of Am., Inc.*, No. 18-cv-16118, 2019 WL 6607148, at *17 (D.N.J. Dec. 5, 2019) (finding allegations that "[a]t the time of purchase, the defendant fraudulently omitted to disclose material matter regarding the defects in class vehicles as described in the complaint, including their impact on future repairs, operating costs and vehicle reliability"

26

sufficient to state a claim under § 349).

Second, as to Plaintiff Jean-Louis's fraud-based claims, "Court[s] fail to understand how a plaintiff's state of mind—with regard to a legal claim that requires, as essential elements, allegations of knowledge, materiality and [] reliance at the time of the transaction in question—could be judged as of any other point than the time when the claimant is about to make the particular investment." *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F. Supp. 2d 489, 494 (S.D.N.Y. 2000). Reliance is not, as Subaru would have it, contingent on post-transaction behavior—especially when such cited behavior occurred three years after the transaction at issue. ¶¶ 33–35. Plaintiff Jean-Louis relied on Subaru's "representations about the qualities of [his] vehicle[] with respect to the Starlink system, including references as to convenience, safety, and general operability" when he paid to lease his Vehicle in July of 2019. ¶¶ 36, 161–167. Jean-Louis was justified in relying on Subaru's representations because "when matters are held to be peculiarly within the defendant's knowledge," such as a latent defect, "plaintiff may rely without prosecuting an investigation because the plaintiff would have no independent means of ascertaining the truth." *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, No. 14-cv-2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016).

In any event, "the reasonableness of a plaintiff's reliance is a nettlesome and fact-intensive question which we, like our Circuit's many district courts, will not lightly dispose of at the motion-to-dismiss stage." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 n.19 (2d Cir. 2015); *see also Powell*, 502 F. Supp. 3d at 880 ("[T]he Court is unable to determine whether Plaintiffs would be able to put forth sufficient evidence of reliance," making the analysis premature at the pleading stage). The Court should reject Subaru's motion to dismiss Plaintiff Jean-Louis' fraud-based claims *en toto*.

### G. Plaintiffs' Claims Are Not Time Barred

Subaru challenges the timeliness of the following claims based on the respective statute of limitations, all of which Subaru argues accrued from the Plaintiffs' date of purchase: Plaintiff Jean-Louis's NY GBL claim (3 years); Plaintiffs Laureano's and Nieves's CLRA, FAL, and common law fraud claims (3 years);[11] Plaintiffs Laureano's and Nieves's UCL and breach of implied warranty claims (4 years); and Plaintiff Quarles's common law fraud and unjust enrichment claims (3 years). *See* Mot. at 36–38. While Plaintiffs largely agree as to the relevant statutes of limitations as outlined by Subaru,[12] the limitations period has not run on *any* of Plaintiffs' common law or statutory claims, because Plaintiffs adequately invoke the discovery rule and plead fraudulent concealment with sufficient particularity. Further, "any determination as to whether the statute of limitations should be tolled is premature and necessarily requires discovery as to the relevant facts." *Weston v. Subaru of Am., Inc.*, No. 1:20-cv-05876, 2022 WL 1718048, at *7 (D.N.J. May 26, 2022) (citing *Opheim*, 2021 WL 2621689, at *9).

### 1. Plaintiff's Claims Were Tolled by the Delayed Discovery Rule

Plaintiffs Laureano and Nieves' CLRA, FAL, UCL, and common law fraud claims, as well as Plaintiff Quarles' common law fraud claim, are subject to the delayed discovery rule. *See Plumlee v. Pfizer, Inc.,* No. 13-cv-414, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) ("The

---

[11] Defendants' timeliness challenges as to the claims brought by Chui are moot. *See* note 3, *supra*.
[12] As the FAL is part of the UCL statutory scheme, the applicable statute of limitations is 4 years. *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1294 (E.D. Cal. 2012) ("VPX brings both its False advertising Law ("FAL") and UCL claims under the UCL, which has a four year statute of limitations."); Cal. Bus. & Prof. Code § 17200 ("As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) or Part 3 of Division 7 of the Business and Professions Code."); Cal. Bus. & Prof. Code § 17208 ("Any action to enforce *any cause of action pursuant to this chapter* shall be commenced within four years after the cause of action accrued.") (emphasis added).

delayed discovery rule is available to toll the statute of limitations under the CLRA, UCL, and FAL."); *Kenney v. M2 Worldwide, LLC*, No. 12-cv-1059, 2013 WL 592149, at *4 (D.N.J. Feb. 13, 2013) (finding "the discovery rule applicable to the instant case to toll the statute of limitations for the fraud claims."). It is well-settled that a cause of action does not accrue until the plaintiff discovers or could have discovered through the exercise of reasonable diligence, all facts essential to his cause of action, including his injury and its cause. *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 826–27 (Ct. App. 1983). To invoke the discovery rule, Plaintiffs need only allege the (1) time and manner of discovery and (2) the inability to make an earlier discovery despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). Equally well-settled is that whether the plaintiff exercised reasonable diligence in discovering his injury and its cause are questions for the trier of fact. *Id.*; *see also Id.* at 810.

Plaintiffs allege sufficient facts regarding the precise time and manner of the discovery of their claims:

> ***Plaintiff Laureano*:** After experiencing the defect shortly after purchasing his new Vehicle in February 2019, Plaintiff Laureano called Subaru Pacific, an authorized Subaru dealership, to request help with resolving the issue. ¶¶ 38, 40. The dealership informed him that the Starlink system problems he was experiencing—and continues to experience to this day—were "*normal*," and, accordingly, took no measures to remedy the issues. ¶ 41.

> ***Plaintiff Nieves*:** Plaintiff Nieves purchased his Vehicle in or about October 2018 and, within one year, began experiencing the Starlink infotainment system's defect. ¶¶ 52, 54. To resolve the issue, Plaintiff took his Vehicle to RK Subaru in or about April 2019, Kearny Mesa Subaru in or about January 2020, October 2020, and June 2021, and Cypress Coast Subaru in or about October 2020. ¶ 54. Each time—irrespective of the authorized dealership—Plaintiff was "*told he needed a software update*, which was performed" but failed to resolve the issues. *Id.*

> ***Plaintiff Quarles*:** Shortly after purchasing his Vehicle in September 2019, Plaintiffs' Vehicle started experiencing manifestations of the defect. ¶¶ 23-24. Plaintiff took his Vehicle to Rairdon's Subaru, an authorized Subaru dealership, several times between January 2020 and April 2022 complaining of the Starlink issues. ¶ 24. Each time, the Subaru dealership told him "there was nothing they could do to address his issues" because his Vehicle "had the most up to date software and hardware."

Plaintiffs' allegations similarly demonstrate that each showed reasonable diligence by seeking out Subaru-authorized dealerships for repairs after their Vehicles began exhibiting problems with the Starlink infotainment system. Though Plaintiffs experienced a variety of issues with the Starlink infotainment system across discrete instances, it was only after Subaru's authorized dealerships' band-aid repair attempts repeatedly failed to resolve those issues that Plaintiffs were put on sufficient notice of their claims. *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005) ("The mere fact that a consumer's manifold failed does not necessarily mean that that person should have discovered Defendant's alleged non-disclosure at that time."); *Majdipour*, 2013 WL 5574626, at *22 (rejecting the notion that "latent defects must be discovered and reported to the seller within the specified time" of a durational limit).

Accordingly, Plaintiff Laureano's claims did not accrue until, at earliest, May 2023, when he initiated this litigation, since Subaru's representations lulled him into the false, yet reasonable, belief that his Vehicle's Starlink system functions as "normal." ¶ 41. Plaintiff Nieves' claims did not accrue until, at earliest, June 2021, the date of his last failed software update at an authorized Subaru dealership. ¶ 54. Plaintiff Quarles' claims did not accrue until April 2022 at earliest, when an authorized Subaru dealership told Plaintiff his Vehicle had the most updated software and hardware. ¶ 24.

Accepting Plaintiffs' allegations as true and construing them in the light most favorable to Plaintiff, as the Court must do at this stage, Subaru's attempt to undermine Plaintiffs' claims as untimely must fail because Subaru's repeated false assurances at the time of these repairs prevented Plaintiffs from discovering the widespread Starlink defect, as well as Subaru's misrepresentations, even with diligent investigation.

Thus, Plaintiffs' claims are properly tolled under the delayed discovery rule.

## 2. Subaru's Fraudulent Concealment Tolls the Limitations Period for Plaintiffs' Consumer Claims

The doctrine of fraudulent concealment also applies to *all* Plaintiffs' claims challenged as untimely, because Subaru intentionally concealed material facts at the time Plaintiffs purchased or leased their Vehicles, and continue to do so today, as properly and sufficiently pleaded. *See Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007) ("A defendant's fraud in concealing a cause of action against him will toll the statute of limitations"); *Philips v. Ford Motor Co.*, No. 14-cv-2989, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) ("Several courts have determined that fraudulent concealment tolling applies to claims brought under the Song-Beverly Act."); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. 03-cv-4558, 2008 WL 4126264, at *22 n.12 (D.N.J. Sept. 2, 2008) (recognizing the availability of "principles of fraudulent concealment or equitable tolling as methods of tolling . . . their unjust enrichment claims."). To establish fraudulent concealment, a plaintiff must plead "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (citation omitted); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (same). "Since the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, whether a claim is time-barred is not generally amenable to resolution on a Rule 12(b)(6) motion." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (internal citations omitted).

Plaintiffs plead fraudulent concealment with sufficient particularity to meet Rule 9(b)'s pleading standard, as discussed in Section IV.D, *supra*. Specifically, Subaru concealed or suppressed material information that the Vehicles were equipped with a defective Starlink infotainment system (¶¶ 2, 4); Subaru had a duty to disclose this information to Plaintiffs due to

its exclusive knowledge of the irreparable defect (¶ 163); Subaru intentionally concealed or suppressed the presence of the defect with intent to defraud Plaintiffs (¶¶ 161–66); Plaintiffs were unaware of the defect and would not have acted as they did had they known of the concealed fact (¶ 164); and Plaintiffs were damaged as a result of the concealment (¶ 167). Such allegations are sufficient to establish fraudulent concealment to toll the statute of limitations as to the challenged claims and survive a motion to dismiss. *See*, *e.g.*, *Falk v. Gen. Motors Corp.*, 469 F. Supp. 2d 1088, 1100 (N.D. Cal. 2007) (tolling the statute of limitations of statutory claims where "Plaintiffs plead that GM, as the company who produced the trucks, had superior knowledge and should have known that the speedometers were defective.")

Even if the Court were not to accept Plaintiffs' tolling arguments, Courts routinely and liberally grant leave to amend to allege sufficient facts entitling them to tolling of the statute of limitations. *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prod. Liab. Litig.*, No. 10-ml-2172, 2011 WL 13160303, at **6–7 (C.D. Cal. Jan. 20, 2011).

Ultimately, while Subaru disputes the date which Plaintiffs had sufficient information to put them on adequate notice of their causes of action, such determinations are "more appropriately raised in a motion for class certification or in a motion for summary judgment" once further discovery is had. *Id.*; *see also Short v. Hyundai Motor Co.*, No. 19-cv-318, 2020 WL 6132214, at *11 (W.D. Wash. Oct. 19, 2020) (applying fraudulent concealment to find that "implied warranty claims are not time-barred, regardless of whether the limitation period began when the cars were delivered to the dealerships or when Plaintiffs purchased them."). Thus, Subaru's motion to dismiss Plaintiffs' claims as untimely is wrong and should otherwise be rejected as premature.

## H. Plaintiffs Thomas And Nany Hennessy Allege Sufficient Ascertainable Losses to State a Viable NJCFA Claim

Again, Subaru makes an unavailing attempt to gerrymander the requisite pleading to state

a claim for relief under the NJCFA by arguing that "the Hennessys never alleged they were required to pay for the software updates in August 2022 or May 2023" and, instead, only proffered "conclusory allegations." *See* Mot. at 38. Subaru is wrong on both accounts.

The New Jersey Supreme Court "ha[s] not always equated an ascertainable loss with one that is demonstrated by an immediate, out-of-pocket expense suffered by a consumer." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558–59, 964 A.2d 741, 750 (2009). In fact, the Court rejected Subaru's precise argument and, instead, "held that requiring a consumer to actually make the expenditures needed to incur the loss would be contrary to the remedial purposes of the CFA." *Id.* At this stage, "the CFA does not demand that a plaintiff necessarily point to an actually suffered loss or an incurred loss, but only one that is 'ascertainable.'" *Id.*; *see also Canfield v. FCA US LLC*, No. 17-cv-1789, 2019 WL 1089798, at *5 (D. Del. Mar. 8, 2019) ("The Third Circuit has previously stated that a plaintiff is 'not required to allege the nature of the loss or present evidence of it at the motion to dismiss stage.'") (citing *Alpizar-Falla v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018)).

The Hennessy Plaintiffs allege that "[a]s a direct and proximate result of Defendants' actions, [they] and the New Jersey Class Members have suffered economic damages" including "loss use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages." ¶ 307. Here, Plaintiffs have pleaded sufficient facts at the pleading stage to show ascertainable losses related to the alleged concealment of deficiencies in the Starlink infotainment system and have adequately pleaded a plausible claim of a violation of the NJCFA by Defendants. *See*, *e.g.*, *Canfield*, 2019 WL 1089798, at *5.

Subaru's motion to dismiss the Hennessy Plaintiffs' NJCFA claim should be denied.

**I.** **The California Plaintiffs' UCL and FAL Claims Seek Appropriate Monetary Relief**

Plaintiffs are not seeking damages under the FAL and UCL. Rather, they seek both restitution and restitutionary disgorgement, which are appropriate forms of monetary relief. ¶¶ 264, 292. Their allegations as to suffering actual damages go to their standing to seek such relief as having sustained injury in fact and a loss of money or property as a result of the acts and practices of Defendants, allegations which are not challenged here.

As the California Supreme Court recently reaffirmed in *California Med. Assoc. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 1085, 532 P.3d 250, 257 (2023), "[t]he UCL affords private plaintiffs the ability *to seek injunctive relief and restitution* in response to unfair conduct. *Id.* (citations omitted). "These limited remedies are not exclusive, however; they '*are cumulative to each other* and to the remedies or penalties available under all other laws of this state.'" *Id.* (emphasis added, citations omitted).

In terms of restitution as a form of monetary relief, Plaintiffs seek the amount they paid and/or overpaid for these defective Vehicles, both in terms of a price premium for the Vehicles and for a defective system that must now be replaced. ¶¶ 259, 290 ("[Plaintiffs] would not have purchased or leased the Class Vehicles or would have paid significantly less for them."). These are appropriate measures of recoverable restitution: "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (2009). In addition, Plaintiffs also properly seek restitutionary disgorgement in terms of the amount of money Subaru unjustly made and retained both from the sales of these defective vehicles and their savings from not investing in and providing consumers non-defective Starlink Systems. *Juarez v. Arcadia Fin., Ltd.*, 61 Cal. Rptr. 3d 382, 402 (2007) (recognizing the availability of disgorgement as including "the monies the plaintiffs in this

case seek to recover are monies that [defendant] is alleged to have wrongfully collected from the plaintiffs, and any interest [defendant] may have earned on these monies.").

### J. Plaintiffs Have Standing to Seek Injunctive Relief

Defendants contend that Plaintiffs do not have standing to seek injunctive relief because they already purchased their Vehicles, positing a theory that if accepted would result in no person ever having standing to seek injunctive relief. First, this is not a proper basis for a motion to dismiss under Rule 12(b)(6), as a request for injunctive relief is not a cause of action. "Injunctive relief is a remedy, not a cause of action subject to a motion to dismiss." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1107 (S.D. Cal. 2015); *Neuss v. Rubi Rose, LLC*, No. 16-cv-2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) ("injunctive and declaratory relief are remedies—not independent causes of action.").

Second, Plaintiffs allege they currently are experiencing a problem with their Class Vehicles that remains unremedied and thus is the proper subject of injunctive relief. ¶ 135 ("Class Vehicle owners and lessees who experience the defect are without a functioning in-vehicle infotainment system"); ¶ 293 ("Plaintiffs and California Class members request injunctive relief to remedy the violations of the UCL by Subaru, including a full repair of the defect and replacement of all necessary parts, an extension of the warranties for Class Vehicles so that all repairs and parts replacements related to the defect are covered by such warranties and do not result in out-of-pocket costs to Plaintiffs and California Class members, the provision of loaner vehicles while the work to correct the defect is being performed, and all other applicable relief."). These are remedies for on-going harms and do not depend on whether they intend to purchase another vehicle. Plaintiffs are thus not solely seeking relief for actions that will not reasonably recur—they seek injunctive relief to address an immediate, ongoing safety related issue that will

lead to future injury and that Defendants have so far refused to remedy. The holding in *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012), that "[i]n order to have standing to seek injunctive relief, Estrada must establish that she is 'likely to suffer future injury' from the defendant's conduct," is thus satisfied. Defendants' argument only goes to the scope of the injunctive relief sought, not the availability of the remedy in its entirety. Such allegations are sufficient to establish their standing to seek at least some form of injunctive relief.

Third, at least under California law, plaintiffs who have alleged a loss of money or property as a result of an unlawful business practice can seek injunctive relief if they may no longer be exposed to the practice at issue. In *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017), the Supreme Court found:

> We conclude that these provisions do not preclude a private individual who has 'suffered injury in fact and has lost money or property as a result of' a violation of the UCL or the false advertising law (Bus. & Prof. Code, §§17204, 17535)—and who therefore has standing to file a private action—from requesting public injunctive relief in connection with that action. . . . This remains true even if the person seeks, as one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.

*Id*. Here, "Subaru's violations present a continuing risk to [California Plaintiffs] and California Class members, as well as to the general public. Subaru's unlawful acts and practices complained of herein affect the public interest." ¶¶ 132-134, 26. As the California Supreme Court held in *In Re Tobacco II Cases*, 46 Cal. 4th 298 (2009), "[t]he purpose of such relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks. *An injunction would not serve the purpose of prevention of future harm if only those who had already been injured by the practice were entitled to that relief.*" *Id.* at 320 (emphasis added). Thus, Plaintiffs have standing to seek injunctive relief.

**K.** **Plaintiffs' Unjust Enrichment Claim Is Properly Pleaded**

    **1.** **Plaintiffs Do Not Need to Plead the Absence of Adequate Remedy at Law Nor is this Claim Mooted by the Express Warranty**

Plaintiffs' Count XIX asserts a common law claim for unjust enrichment based on principles of quasi-contract and assumpsit. Plaintiffs plead (1) Defendants knew, should have known, or were obligated to understand that the Starlink system contained inherent latent defects but sold vehicles installed with this defective system anyway without disclosing the defect (¶¶ 139-47), (2) as a result thereof Defendants received money or property from Plaintiffs and Class members from the sales and leases of such vehicles that either they would not have paid the prices they did or paid for them at all (¶¶ 376-77), and (3) under such circumstances, as between Plaintiff and the Class and Defendants, equity and good conscience militate against Defendants retaining such monies (¶ 379). This states a claim under both California and New Jersey law. *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015); *Assocs. Com. Corp. v. Wallia*, 211 N.J. Super. 231, 243, 511 A.2d 709, 716 (App. Div. 1986) ("To recover under this doctrine, the plaintiff must prove that the defendant 'received a benefit, and that retention of the benefit without payment therefor would be unjust.'").

Defendants argue that because only the express warranties provided by Subaru establish Plaintiffs' rights to any form of recovery, Plaintiffs are precluded from seeking recovery under any other theory, including unjust enrichment. Plaintiffs need not plead they do not have an adequate remedy at law to assert such a claim at the pleadings stage. Plaintiffs can properly allege this claim as an alternative to their warranty claims. Fed. R. Civ. P. 8(e)(2). For example, in *Horvath v. LG Elecs. Mobilecomm U.S.A.*, No. 11-cv-1576, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012), the defendant argued that "because there are written agreements establishing Plaintiffs' rights and LG Electronics' obligations, these quasi-contract theories are inapplicable." *Id.* at *11. The Court

rejected this argument: "[Rule] 8(e)(2) permits pleading in the alternative, and the Court concludes that at this point, dismissal of Plaintiffs' common law claims is premature." *Id.* New Jersey law is in accord. *See DeFrank v. Samsung Elecs. Am., Inc.,* No. 19-cv-21401-KM-JBC, 2020 WL 6269277, at *21 (D.N.J. Oct. 26, 2020).

Accordingly, "[a]t this stage in the proceedings, it would be premature to dismiss Plaintiff's unjust enrichment claim, pled as an alternate theory of recovery, based on the mere presence of possible legal remedies." *Coyle v. Hornell Brewing Co.*, No. 08-cv-2797-JBS, 2010 WL 2539386, at *5 (D.N.J. June 15, 2010). Further, "Defendants are not entitled to have a cause of action dismissed for failure to state a claim simply because plaintiff may be entitled to recover on another claim." *Oracle Corp. v. SAP AG*, No. 07-cv-1658, 2008 U.S. Dist. LEXIS 103300, at *24 (N.D. Cal. Dec. 15, 2008).

### 2. Plaintiffs Do Not Need to Allege a Direct Relationship or Direct Benefit

Privity between a buyer and a seller is also not an element of this Count. "New Jersey law permits suits against manufacturers [for unjust enrichment] even when the plaintiff purchased his or her dryer from a third-party intermediary." *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-cv-21401-KM-JBC, 2020 WL 6269277, at *23 (D.N.J. Oct. 26, 2020). At this stage of the proceedings, the Court must deny Defendants' request to dismiss Plaintiffs' unjust enrichment claim. Even if privity was required (it is not), as discussed at length in Section III.C.2.a, *supra*, Plaintiffs' allegations establish that they are third-party beneficiaries of any warranty or purchase agreements between Defendants and their agent-dealerships. ¶ 187.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Subaru's motion to dismiss in its entirety. Should the Court grant any portion of Subaru's motion, Plaintiffs

respectfully request that the Court grant Plaintiffs leave to amend their pleading.

Dated: September 8, 2023

Respectfully submitted,

*/s/ Andrew W. Ferich*
Andrew W. Ferich (NJ Bar No. 015052012)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Robert R. Ahdoot (admitted *pro hac vice*)
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
rahdoot@ahdootwolfson.com

Bradley K. King (NJ Bar No. 081472013)
**AHDOOT & WOLFSON, PC**
521 5th Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177
bking@ahdootwolfson.com

Gayle M. Blatt (admitted *pro hac vice*)
P. Camille Guerra (admitted *pro hac vice*)
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
gmb@cglaw.com
camille@cglaw.com

*Interim Co-Lead Class Counsel*

Alan M. Mansfield (admitted *pro hac vice*)
**WHATLEY KALLAS, LLP**
16870 W. Bernardo Drive

Suite 400
San Diego, CA 92127
Telephone: (619) 308-5034
Facsimile: (888) 341-5048
amansfield@whatleykallas.com

*Additional Counsel for Plaintiffs*