Neal Walters (020901993)
Casey Watkins (060122014)
Kristen Petagna (324202020)
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel , NJ 08054-0015
(856) 761-3400
(856) 761-1020 fax
waltersn@ballardspahr.com
watkinsc@ballardspahr.com
petagnak@ballardsparh.com

Attorneys for Defendants Subaru Corporation
and Subaru of America, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Marco Cilluffo, Jeffrey Quarles, Carl Jean-Louis, Randall Laureano, Thomas and Nancy Hennessy, Jill Yesko, and Edwin Nieves,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs; <br><br> v. <br><br> **Subaru of America, Inc. and Subaru Corporation,** <br><br> Defendants. | Case No. <br> 1:23-cv-01897-RBK-MJS <br><br> **Defendants Subaru of America, Inc. and Subaru Corporation's Reply Brief in Further Support of their Motion to Dismiss** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   ARGUMENT .......................................................................................... 2

    A.    A choice of law determination is not premature. ...................................... 2

    B.    Plaintiffs' breach of warranty claims fail as a matter of law. .................... 2

        1.    SBR has no contractual privity with Plaintiffs. ........................... 2

        2.    Plaintiffs have not plausibly pleaded a breach of express warranty based on statements outside of the NVLW. ................................. 3

        3.    Even if Plaintiffs had sufficiently pleaded the necessary details for an express warranty claim, none of the statements in the SOA marketing materials cited could give rise to liability. ................................. 4

        4.    Plaintiffs do not plead reliance on, or awareness of, any express warranties. ................................................................................. 4

        5.    Certain Plaintiffs lack the requisite privity. ................................ 5

        6.    The NJPLA subsumes the Hennessys' implied warranty claim. ............ 6

        7.    A "futility" exception does not save Jean-Louis' and Laureano's warranty claims. ........................................................................ 7

    C.    Plaintiffs' fraud claims are deficient. ....................................................... 8

        1.    Plaintiffs do not adequately allege fraudulent concealment. .................... 8

        2.    Plaintiffs fail to plead any actionable statements. ........................ 11

        3.    Plaintiffs' fraud claims must be dismissed because they fail to properly plead causation and/or reliance. .................................. 11

        4.    The Hennessys' alleged ascertainable loss under the NJCFA fails. ......... 11

        5.    The economic loss doctrine bars the New Jersey and California fraudulent concealment claims. ................................................ 12

        6.    Plaintiff Jean-Louis' fraud claims should be dismissed given his knowledge of the alleged defect when purchasing his car. ..................... 13

    D.    Plaintiffs' unjust enrichment claims fails for multiple reasons. ........................ 14

    E.    Plaintiffs lack standing for Nationwide class claims. ............................ 14

    F.    Certain Plaintiffs' untimely claims cannot be saved by reliance on unleaded tolling arguments. ................................................................... 15

III.  CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994)............................................................................................3

*Alpizar-Fallas v. Favero*,
  908 F.3d 910 (3d Cir. 2018)........................................................................................11

*Alvarez v. Am. Honda Motor Co.*,
  No. 22-7422, 2023 U.S. Dist. LEXIS 127485 (C.D. Cal. Mar. 14, 2023)................................12

*Arakelian v. Mercedes-Benz USA, LLC*,
  No. 17-06240, 2018 U.S. Dist. LEXIS 226033 (C.D. Cal. June 4, 2018) ................................8

*Benkle v. Ford Motor Co.*,
  No. 16-1569, 2017 U.S. Dist. LEXIS 222317 (C.D. Cal. Dec. 22, 2017) ................................7

*Bocker v. Hartzell Engine Techs., LLC*,
  No. 21-1174, 2023 U.S. Dist. LEXIS 13331 (D. Del. Jan. 26, 2023).....................................13

*Bolooki v. Honda Motor Co. Ltd.*,
  No. 22-4252, 2023 U.S. Dist. LEXIS 42028 (C.D. Cal. Mar. 10, 2023)................................7

*Canfield v. FCA US LLC*,
  No. 17-1789, 2019 U.S. Dist. LEXIS 37226 (D. Del. Mar. 8, 2019) .....................................11

*Car Carriers v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984), *overruled on other grounds* ....................................................5

*Carder v. Graco Children's Prods.*,
  558 F. Supp. 3d 1290 (N.D. Ga. Aug. 31, 2021) .......................................................5

*In re Chevrolet Bolt EV Battery Litig.*,
  633 F. Supp. 3d 921 (E.D. Mich. Sept. 30, 2022)....................................................7

*Cohen v. Subaru of Am., Inc.*,
  No. 20-8442, 2022 U.S. Dist. LEXIS 42511 (D.N.J. Mar. 10, 2022).....................8, 10, 11, 12

*Cummings v. FCA US LLC*,
  401 F. Supp. 3d 288 (N.D.N.Y. Aug. 1, 2019) ..............................................................5, 6, 13

*Diaz v. FCA US LLC*,
  No. 21-00906, 2022 U.S. Dist. LEXIS 158865 (D. Del. Sept. 2, 2022)..................................6

*Dixon v. Ford Motor Co.*,
  No. 14-6135, 2015 U.S. Dist. LEXIS 146263 (E.D.N.Y. Sept. 30, 2015) ..............................6

*Doe v. Uber Techs., Inc.*,
  551 F. Supp. 3d 341 (S.D.N.Y. 2021)...............................................................................4

*Donachy v. Playground Destination Props.*,
   No. 10-4038, 2013 U.S. Dist. LEXIS 101178 (D.N.J. July 19, 2013)......................................4

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   355 F. Supp. 3d 582 (E.D. Mich. 2018)..................................................................................12

*In Re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*,
   Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064 (D.N.J. Sep.
   30, 1997) ................................................................................................................................4

*Fusco v. Uber Techs., Inc.*,
   No. 17-00036, 2018 U.S. Dist. LEXIS 126428 (E.D. Pa. July 27, 2018)..............................11

*Gelis v. Bayerische Motoren Werke Aktiengesellschaft*,
   No. 17-07386, 2018 U.S. Dist. LEXIS 187277 (D.N.J. Oct. 30, 2018) ..................................2

*Gotthelf v. Toyota Motor Sales, U.S.A.*,
   525 F. App'x 94 (3d Cir. 2013) ..............................................................................................9

*Hernandez v. Radio Sys. Corp.*,
   No. 22-1861, 2023 U.S. Dist. LEXIS 40038 (C.D. Cal. Mar. 9, 2023)...................................4

*Hickey v. Univ. of Pittsburgh*,
   No. 21-2016, 2023 U.S. App. LEXIS 23650 (3d Cir. 2023) ..................................................15

*Joe v. Ford Motor Co.*,
   No. 18-02814, 2023 U.S. Dist. LEXIS 155614 (C.D. Cal. Aug. 30, 2023).............................12

*Keegan v. Am. Honda Motor Co*,
   284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................................5

*Lento v. Altman*,
   No. 22-4840, 2023 U.S. Dist. LEXIS 111221 (D.N.J. June 27, 2023)...................................14

*Lohr v. Nissan N. Am., Inc.*,
   No. 16-1023, 2017 U.S. Dist. LEXIS 38934 (W.D. Wash. Mar. 17, 2017) .............................5

*McMahon v. Volkswagen Aktiengesellschaft*,
   No. 22-01537, 2023 U.S. Dist. LEXIS 105309 (D.N.J. June 16, 2023)...................................9

*Mills v. Ethicon, Inc.*,
   406 F. Supp. 3d 363 (D.N.J. 2019) ..........................................................................................3

*Mohandas v. Wells Fargo Bank, N.A.*,
   No. 21-03349, 2023 U.S. Dist. LEXIS 121681 .....................................................................14

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ...................................................................................10

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. May 30, 2014).........................................................................7

*Noble v. Samsung Elecs. Am., Inc.*,
   No. 15-3713, 2018 U.S. Dist. LEXIS 21545 (D.N.J. Feb. 8, 2018) ......................................14

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020) ...........................................................................2, 6, 8, 9

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
71 F. Supp. 3d 492 (D.N.J. 2014) .......................................................................................3

*Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*,
449 F. Supp. 3d 449 (D.N.J. 2020) ...................................................................................12

*Rieger v. Volkswagen Grp. of Am., Inc.*,
No. 21-10546, 2023 U.S. Dist. LEXIS 78785 (D.N.J. May 4, 2023) ..............................14, 15

*RNC Sys. v. Modern Tech. Grp., Inc.*,
861 F. Supp. 2d 436 ..........................................................................................................12

*Stratis v. BMW of N. Am., LLC*,
No. 22-06929, 2023 U.S. Dist. LEXIS 72800 (D.N.J. Apr. 26, 2023) .............................14

*In re Subaru Battery Drain Prods. Liab. Litig.*,
No. 20-03095, 2021 U.S. Dist. LEXIS 62373 (D.N.J. Mar. 31, 2021)...............................8

*Suriaga v. GE*,
No. 18-16288, 2019 U.S. Dist. LEXIS 214732 (D.N.J. Dec. 12, 2019)..............................15

*Traxler v. PPG Indus.*,
158 F. Supp. 3d 607 (N.D. Ohio Jan. 27, 2016) .................................................................5

*Womack v. Evol Nutrition Assocs.*,
No. 21-00332, 2022 U.S. Dist. LEXIS 145754 (N.D.N.Y. Aug. 16, 2022) .........................13

**State Cases**

*Gawara v. United States Brass Corp.*,
63 Cal. App. 4th 1341 (1998) ............................................................................................11

**Rules**

Fed. R. Civ. P. 8(e)(2)...........................................................................................................14

Fed. R. Civ. P. 12 ..............................................................................................................3, 14

**Other Authorities**

Complaint
*Kaplan v. GE* (No. 22-05296), ECF No. 1............................................................................6, 7

NHTSA, MOTOR VEHICLE SAFETY DEFECTS AND RECALLS 4 (rev. Aug. 2017),
https://www.nhtsa.gov/ sites/nhtsa.gov/files/documents/14218-
mvsdefectsandrecalls_041619-v2-tag.pd ..........................................................................4

## I.    INTRODUCTION

Before delving into the nuances of the arguments, the Court must be advised of a salient development: a significant 50% of the putative class representatives—8 out of the 16 named Plaintiffs—have voluntarily dismissed their claims in response to Defendants Subaru of America, Inc. and Subaru Corporation's (the "Subaru Defendants" or "Subaru") motion to compel arbitration. The claims advanced by Plaintiffs Doze, Chui, MacDonald, Griffin, Plavnick, Ferrelli, Fitzgerald, and Sydoriak are no longer at issue. Consequently, several counts, including Counts VII, XV, XVI, XVII, and XVIII, have been dismissed entirely. This is not a mere procedural adjustment; it profoundly reshapes the landscape of the claims and classes at play.[1]

Yet, despite this seismic shift, Plaintiffs' core contention stubbornly persists in its flawed premise. Their reliance on amorphous and sweeping descriptions of the Class Vehicle's attributes betrays a foundational weakness. They presume, without actually pleading a definite promise from Subaru, of complete perfection from the software-based infotainment system. Such an assumption is not only unfounded, but it ignores the very nature of software in contemporary vehicles. Regular updates to optimize performance and fix issues are not anomalies; they are industry standards. SOA's New Vehicle Limited Warranty even educates purchasers about this norm, designating updates as routine maintenance. To assail Subaru on grounds intrinsic to iterative software development, particularly when such advancements are aimed at consumer satisfaction, is not merely misguided—it is untenable.

Despite that overarching flaw and the voluntary dismissals, Plaintiffs attempt to shield what claims remain from dismissal. In doing so, Plaintiffs make several errors of law and mischaracterize certain of the Subaru Defendants' arguments in opposing the motions to dismiss

---

[1] Should this matter progress following the Court's adjudication on the motion to dismiss, an impending issue will need attention for the sake of clear and transparent proceedings. A significant proportion of the absent putative class members likely are bound by enforceable arbitration provisions and class action waivers, precluding their participation in this litigation. This significant issue requires management from the beginning, avoiding any inappropriate discovery activities. Additionally, the varied and specific contractual provisions make class certification seem untenable.

- 1 -

the Second Amended Complaint ("SAC"). The most pressing shortcomings are addressed below.[2]

## II.    ARGUMENT

### A.    A choice of law determination is not premature.

Plaintiffs argue for delaying the choice of law analysis, but fail to identify any needed additional facts. Opp'n Br. 8–9. This omission warrants rejection of their argument. *Gelis v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-07386, 2018 U.S. Dist. LEXIS 187277, at *8–9 (D.N.J. Oct. 30, 2018). Subaru has extensively detailed why each Plaintiff's home state law should apply, noting actual conflicts between states' laws.

### B.    Plaintiffs' breach of warranty claims fail as a matter of law.

#### 1.    SBR has no contractual privity with Plaintiffs.

Plaintiffs' breach of warranty claims lack merit; SBR is not part of any express contract related to these claims. Despite Plaintiffs' efforts to obfuscate, SBR's argument is clear: non-parties to a contract cannot be held liable for breach. That "is settled law." Moving Br. 14.

SBR does not make the express warranties to vehicle purchasers in the United States. *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 882 (D.N.J. 2020). Nor does it advertise or market vehicles in the United States. Notably, Plaintiffs can point to no actual warranty made by SBR. The New Vehicle Limited Warranty ("NVLW") was made by SOA, not SBR. Walters Decl. Ex. A at 4, ECF No. 38-2; *Powell*, 502 F. Supp. 3d at 882. Likewise, the "advertisements" referenced by Plaintiffs come from SOA's website, not SBR's. SAC ¶ 3, n.2; Opp'n Br. 11–12. Indeed, the url cited by Plaintiffs in footnote 2 of the SAC clearly indicates it was published subject to a copyright held by SOA. Walters Decl. Ex. B (full image of Starlink web page).

Plaintiffs' attempt to save their express warranty claims against SBR by citing their incorrect and bald assertions in the SAC that SBR "is engaged in the business of designing, manufacturing, warranting, marketing, advertising, selling, and servicing Subaru vehicles around

---

[2] Subaru expressly preserves and does not waive any arguments presented in its moving brief, even if not reiterated in this reply.

the world," is similarly unavailing. SAC ¶ 119. Rule 12's plausibility standard does not permit claims based on allegations contradicted by documents referenced in the complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994). Plaintiffs cannot avoid dismissal by selectively excerpting portions of SOA's website and claiming that "Subaru" published them without distinguishing between the two separate and distinct defendants. The documents relied on by Plaintiffs clearly show that SBR was not their publisher.

### 2.    Plaintiffs have not plausibly pleaded a breach of express warranty based on statements outside of the NVLW.

In trying to impose liability on SBR for an alleged breach of a vaguely-defined express warranty beyond the clear written warranty by SOA, Plaintiffs highlight a key weakness in their allegations: they are too imprecise to constitute an actionable promise.

To successfully plead a breach of express warranty, there must be a clear indication of the promise or statement made, its source, and its content. *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 388 (D.N.J. 2019). Simply listing the elements of a claim and generally identifying possible sources of a warranty without supportive facts is not enough to resist dismissal. *Id.*

Here, Plaintiffs have fallen woefully short. In fact, Count II fails to plead any of the basic information required to bring a claim against either Defendant. It omits the terms, duration, the maker of the alleged warranties, or the obligations that were created. SAC ¶¶ 170–78. Instead, Count II seems to merely mimic the UCC's language for the implied warranty of merchantability. Whether a defendant is a "merchant" or the Class Vehicles are "goods" (SAC ¶¶ 170–71) is irrelevant to an express warranty claim. And, courts frequently dismiss claims asserting breach of an unspecified warranty created by materials like brochures and videos. *See, e.g., Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 500–01 (D.N.J. 2014). This is because defendants cannot counter a breach of warranty claim without sufficient facts pinpointing the supposedly violated warranty. *Id.* at 501. Plaintiffs must specify the actual statements, their source, and the warranty's terms and duration. Falling short of this requires dismissal. *Mills*, 406 F. Supp. 3d at 388.

- 3 -

**3.    Even if Plaintiffs had sufficiently pleaded the necessary details for an express warranty claim, none of the statements in the SOA marketing materials cited could give rise to liability.**

Turning to the sparse allegations regarding advertising statements, it is crucial to emphasize that such generic pronouncements are not legally sufficient to establish an express warranty. "[G]eneric, commercial advertising statements, such as 'Quality is Job 1,' generally do not constitute an express warranty" that a vehicle component will not fail or require repairs. *In Re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064, at *50–51 (D.N.J. Sep. 30, 1997). In the absence of actual pleaded facts concerning the terms of any express warranty, the types of statements cited by Plaintiffs (Opp'n Br. 12–13) are insufficient to state a claim. *See id.* Plaintiffs' reliance on cases that do not concern express warranties in the automotive industry fails to offer any persuasive argument that would justify deviating from well-settled law on this issue. *E.g.*, *Donachy v. Playground Destination Props.*, No. 10-4038, 2013 U.S. Dist. LEXIS 101178, at *2–5, 16–18 (D.N.J. July 19, 2013) (addressing puffery in NJCFA context where a representative depicted a condo buyer's deposits as "safe"; not related to vehicle safety); *Hernandez v. Radio Sys. Corp.*, No. 22-1861, 2023 U.S. Dist. LEXIS 40038, at *11–13 (C.D. Cal. Mar. 9, 2023) (addressing fraud claims where a manufacturer made specific pet product safety representations in a Q&A); *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 365–66 (S.D.N.Y. 2021) (discussing a fraudulent misrepresentation case alleging sexual assault by an Uber driver).[3]

**4.    Plaintiffs do not plead reliance on, or awareness of, any express warranties.**

Contrary to the Plaintiffs' argument in their Opposition, Plaintiff Jean-Louis must establish reliance for an express warranty claim, and Plaintiffs Cilluffo, Quarles, Laureano, Nieves, and the Hennessys need to demonstrate awareness of the express warranty as a basis for

---

[3] Further, not every defect or shortcoming can be branded as "safety-related." Ordinary wear and changes integral to maintenance or periodic system updates do not qualify. NHTSA, MOTOR VEHICLE SAFETY DEFECTS AND RECALLS 4 (rev. Aug. 2017), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/14218-mvsdefectsandrecalls_041619-v2-tag.pdf.

their bargain. [4] As detailed in Section II.C.3, these Plaintiffs failed to sufficiently allege both awareness and reliance on any express warranties, necessitating the dismissal of their express warranty claims.

### 5.    Certain Plaintiffs lack the requisite privity.

Plaintiffs cite no authority interpreting Washington law to support their contention that privity is not required for Plaintiff Quarles' implied warranty claim. Washington does not recognize an agency exception to the privity requirement, and Quarles has not included the necessary allegations to invoke Washington's limited third-party beneficiary exception. *Lohr v. Nissan N. Am., Inc.*, No. 16-1023, 2017 U.S. Dist. LEXIS 38934, at \*22–23 (W.D. Wash. Mar. 17, 2017); *Traxler v. PPG Indus.*, 158 F. Supp. 3d 607, 623 (N.D. Ohio Jan. 27, 2016).

Jean-Louis' attempt to circumvent New York's privity requirement is also unsuccessful. Courts in the Second Circuit analyzing New York law have rejected the reasoning of *Hubbard v. GMC*, which Plaintiffs rely on. Opp'n. Br. 17. These courts have found that "no thing-of-danger exception exists under New York law for claims," such as those here that involve "purely economic injury." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 313 (N.D.N.Y. Aug. 1, 2019) (collecting cases); *see also Carder v. Graco Children's Prods.*, 558 F. Supp. 3d 1290, 1321, n.22 (N.D. Ga. Aug. 31, 2021). Additionally, Plaintiffs' agency argument is based on incorrect assertions about how the automotive franchise system works[5] and is not supported by what is pleaded in the SAC. The SAC does not actually allege any facts supporting an agency relationship between SOA and the independent franchise retailers where Plaintiffs purchased their vehicles. Plaintiffs cannot amend the SAC through their opposition brief to salvage unsupportable claims. *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *overruled on other grounds*. Furthermore, "New York courts have been unconvinced by

---

[4] Moving Br. 9–10; *see also Keegan v. Am. Honda Motor Co,* 284 F.R.D. 504, 547 (C.D. Cal. 2012) (relied on by Plaintiffs) (holding that, in New York, reliance is presumed where there is privity); *see infra* Part II.B.5 (explaining Subaru and Plaintiff Jean-Louis are not in privity).

[5] *See* Moving Br. 4 n.5.

allegations attempting to establish agency based on the connection between a vehicle manufacturer and its authorized dealerships" and Plaintiffs' citation to allegations in the SAC and *Baranco v. Ford Motor Co.*, are unavailing because such allegations simply show that Jean-Louis purchased his vehicle from an "authorized dealer"—not Subaru's agent. *Diaz v. FCA US LLC*, No. 21-00906, 2022 U.S. Dist. LEXIS 158865, at *120–21 (D. Del. Sept. 2, 2022).

Lastly, New York law requires Plaintiffs to provide specific factual details about the agreements between Subaru and its retailers for the third-party beneficiary exception. Allegations suggesting that Subaru dealerships have "no rights under the warranty agreements" or that SOA's written warranties benefit vehicle owners are irrelevant. *Diaz*, 2022 U.S. Dist. LEXIS 158865, at *118 n.49, 118–19. Such allegations have "no bearing on the issue of whether" Jean-Louis is a third-party beneficiary of an agreement between Subaru and its dealerships. *Id*.; *Dixon v. Ford Motor Co.*, No. 14-6135, 2015 U.S. Dist. LEXIS 146263, at *16–19 (E.D.N.Y. Sept. 30, 2015). Consequently, courts following New York law have not applied exceptions to the privity requirement in cases with allegations similar to those presented here. *Diaz*, No. 21-00906, Complaint (ECF No. 1); *Cummings*, No. 18-1072, Complaint (ECF No. 1); *Dixon*, 2015 U.S. Dist. LEXIS 146263, at *16–19.

### 6.      The NJPLA subsumes the Hennessys' implied warranty claim.

Plaintiffs cannot avoid the purview of the NJPLA simply because none of the named Plaintiffs actually experienced personal injury. Moving Br. 23–24; *Compare* Complaint *Kaplan v. GE* (No. 22-05296), ECF No. 1 (failing to allege that the plaintiff suffered any personal injury as a result of the allegedly defective alarm). *Kaplan* and *Sun Chem. Corp.* make clear that the court's focus in *Powell* on allegations specific to the nature of plaintiffs' damages (*i.e.*, allegations that no plaintiff actually suffered any personal injuries, the fact plaintiffs purposefully did not seek to recover for any bodily harm, and plaintiffs' explicit exclusion from all classes any person who has suffered personal injuries) was improper. Instead, the focus should have been on the theory of liability. Here, similar to *Kaplan*, the Hennessys' implied warranty claim rests on

the theory that their 2022 Outback was defective and that their 2022 Outback caused harm in the form of failing to provide safe and reliable transportation, in addition to economic loss allegedly suffered. *Compare Kaplan*, Complaint, ECF No. 1 ¶¶ 37, 40, 113, 118–19 (alleging that defendant's alarms were defective because they did not provide reliable fire alarm life safety protection as promised and that consumers "expected the Alarm System to be reliable," and to "sound[] an audible fire alarm inside the home," and to "function in its intended manner"), *with* SAC ¶ 180 (reincorporating allegations that the alleged Starlink defect presents safety concerns and a safety defect "due to its distracting effects" and "impacts on the Class Vehicles' safety features") ¶¶184–85 (alleging Subaru breached the implied warranty of merchantability because the class vehicles were neither safe nor reliable).

### 7.   A "futility" exception does not save Jean-Louis' and Laureano's warranty claims.

Plaintiffs Jean-Louis and Laureano cannot bypass the presentment requirement by arguing that presentment was futile, for several reasons. First, as acknowledged by a case Plaintiffs cite, no controlling authority establishes a futility exception "to the presentation required by the express terms of the express warranty." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970-71 (N.D. Cal. May 30, 2014). Second, in the few instances where the futility exception was not based on actual personal experience, courts have considered it when the plaintiff claimed "there is a design defect common to all vehicles." *Benkle v. Ford Motor Co.*, No. 16-1569, 2017 U.S. Dist. LEXIS 222317, at *38 (C.D. Cal. Dec. 22, 2017); *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. Sept. 30, 2022). This again corresponds with a case Plaintiffs use to bolster their futility argument. *Bolooki v. Honda Motor Co. Ltd.*, No. 22-4252, 2023 U.S. Dist. LEXIS 42028, at *10 (C.D. Cal. Mar. 10, 2023) ("Without plausibly alleging that *all* vehicles suffer from an unrepairable defect, the individual plaintiffs' awareness of Defendant's inability to repair, or some other indicium of futility as to [each individual], Plaintiffs' futility argument fails."). Here, Plaintiffs concede they are not asserting the alleged Starlink defect is common to *all* vehicles (a design defect). Opp'n Br. 4 n.2.

Thus, the futility exception, if it exists, would not apply to this case. Third, even if it did apply to Plaintiff Laureano, her express warranty claim would still fail because a single repair attempt does not constitute a reasonable number of attempts. *Arakelian v. Mercedes-Benz USA, LLC*, No. 17-06240, 2018 U.S. Dist. LEXIS 226033, at *8 (C.D. Cal. June 4, 2018).

### C.   Plaintiffs' fraud claims are deficient.

#### 1.   Plaintiffs do not adequately allege fraudulent concealment.

While Plaintiffs underscore the more lenient 9(b) pleading standard for fraudulent concealment, both statutory and common law, they cannot neglect the obligation to sufficiently plead each element. The SAC lacks the needed factual support, warranting dismissal. Contrary to Plaintiffs' claim, the relaxed 9(b) standard applies only to aspects like "[m]alice, intent, knowledge, and other conditions of a person's mind," which can be "alleged generally." *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-03095, 2021 U.S. Dist. LEXIS 62373, at *67 (D.N.J. Mar. 31, 2021). Still, Plaintiffs are obligated to provide "alternative means of injecting precision and some measure of substantiation into their allegations" and to plead with heightened particularity the remaining elements, such as reliance and causation. *Id*. Here, they do not, and the SAC falls short of even the plausibility standard.

#### a.   Plaintiffs do not allege the requisite intent.[6]

In their Opposition, Plaintiffs do not contest the need to show (i) the Subaru Defendants' awareness of the alleged defect at the time of sale or that (ii) Subaru intended to deceive them at that juncture—a requirement implying defect knowledge. Though they accurately note that such knowledge need not be pleaded with particularity, they must still accompany their legal theory with factual assertions to make their claims plausible. *Powell*, 502 F. Supp. 3d at 887. By referencing cases with stronger factual underpinnings than theirs, Plaintiffs inadvertently highlight the inadequacy of their claims. *See* Opp'n Br. 22. For example, in *Powell,* the plaintiffs

---

[6] Intent is essential for both fraudulent concealment and affirmative misrepresentations. If the Court dismisses the former, it should also dismiss the latter claims. *Cohen v. Subaru of Am., Inc.,* No. 20-8442, 2022 U.S. Dist. LEXIS 42511, at *46, 50 (D.N.J. Mar. 10, 2022).

pleaded that Subaru had the aforementioned sources of knowledge, as well as "consumer complaints to the NHTSA and resulting notice from NHTSA; dealership repair orders; testing in response to owner or lessee complaints;" and TSBs issued before the sale of the class vehicles. 502 F. Supp. 3d at 888. Plaintiffs' Opposition, regarding knowledge, notably omits any mention of the lackluster NHTSA complaints, online posts, and the TSBs issued after all but one of the Plaintiffs bought their cars. These post-purchase facts must be entirely disregarded as a source of pre-sale knowledge since they occurred after most of the Plaintiffs made their purchases and are not extensive enough to alert Subaru to any potential defects.[7] *See also Gotthelf v. Toyota Motor Sales, U.S.A.*, 525 F. App'x 94, 104 (3d Cir. 2013).

Even assuming that pre-sale testing and monitoring customer complaints was sufficient to establish Subaru's knowledge of the defect, Plaintiffs still fail because the knowledge element of a fraud claim would be indiscriminately attributed to every manufacturer based solely on product creation, presumed pre-sale testing, and third-party retailers' awareness of a minimal number of complaints if the Court found Plaintiffs' allegations sufficient. *See McMahon v. Volkswagen Aktiengesellschaft,* No. 22-01537, 2023 U.S. Dist. LEXIS 105309, at *31 (D.N.J. June 16, 2023) (finding that because the complaint failed to "'detail[] a number of test procedures' and why those procedures would likely result in knowledge of the defect" the knowledge element was not met based on allegations of pre-sale testing). Because Plaintiffs have not satisfied even their "relaxed" requirement, all the fraud claims should be dismissed. Even if the Court finds the Subaru Defendants knew of the supposed defect, Plaintiffs neglect to discuss jurisdictions that require more than mere awareness in the SAC or Opposition. Plaintiffs only introduce intentionality as a legal conclusion in some of the state statute counts, without providing additional supporting facts. Moving Br. 28–29 n.14.

---

[7] Even considering the NHTSA complaints, only 18 of the 30 complaints pre-date the Hennessys' purchase in August 2022. SAC ¶¶ 71, 138. In a similar case, a fraud claim was dismissed because even 30 complaints were not deemed significant given the vast number of vehicles sold. Moving Br. 30–31. Furthermore, no NHTSA complaints or online posts exist before Plaintiff Nieves' 2018 purchase. SAC ¶ 52.

### b.      The Subaru Defendants had no duty to disclose.

In their Opposition, Plaintiffs blend laws from various states, cherry-picking favorable aspects without fully addressing the issues. First, in New Jersey, the duty to disclose for fraudulent concealment arises solely in fiduciary or special relationships of trust. Moving Br. 33. Such a relationship is absent here, and Plaintiffs do not contest this. Therefore, the Hennessys' claims in Counts I and XIII must be dismissed.

Under Maryland law, a duty to disclose arises only within fiduciary or confidential relationships or when a party offers a partial statement. *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *59 (citations omitted). Similarly, in California, a duty can arise where there is a fiduciary relationship or a defendant partly discloses and omits a material fact. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013). No special relationship exists between a manufacturer and customers buying through third-party retailers. Subaru's only statements must be deemed "puffery." Moving Br. 34. Such broad statements do not create a duty to disclose, requiring the dismissal of the Maryland and certain California claims to the extent they rely on partial disclosures.

Subaru acknowledges that a duty may emerge when it possesses exclusive knowledge of a defect or knowledge of a safety concern.[8] However, as stated previously, Plaintiffs have not adequately pleaded knowledge, so no duty arises.

In subsection (c) of the Opposition, Plaintiffs argue that active concealment creates a separate duty to disclose. This assertion is misleading for two reasons. First, active concealment only establishes a duty in California (of the applicable states), affecting only Laureano and Nieves. *Mui Ho*, 931 F. Supp. 2d at 996. Second, to prevail, Plaintiffs must still prove knowledge, intent, and causation, *id*. at 998, which they haven't, as illustrated in Sections II.C.1 and II.C.3. Laureano and Nieves' claims, based on active concealment, must be dismissed.

---

[8] Only Plaintiffs Quarles, Yesko, and the Hennessys allege that the supposed defect presented a safety issue and Plaintiffs provide no case law asserting that in their respective states a duty arises where there is a known safety concern.

- 10 -

### 2. Plaintiffs fail to plead any actionable statements.

Statements attributed to SOA regarding the Class Vehicles' safety, including the Starlink System, are broad and non-specific, thus falling under non-actionable puffery. These general statements are not phrased in absolute terms, which is required for such materials to *possibly* contain an actionable misrepresentation. *Fusco v. Uber Techs., Inc.*, No. 17-00036, 2018 U.S. Dist. LEXIS 126428, at *17 (E.D. Pa. July 27, 2018).

### 3. Plaintiffs' fraud claims must be dismissed because they fail to properly plead causation and/or reliance.[9]

While Subaru recognizes that the Court must accept Plaintiffs' claim of reliance on a misrepresentation or omission as true, this is just a part of the causation or reliance analysis.

For both affirmative fraud and omission-based fraud, Plaintiffs must at least detail their exposure to the misleading content. Moving Br. 27. Unlike in *Cohen*, where plaintiffs detailed their reliance on specific advertisements, here, Plaintiffs do not even cursorily specify any encounter with Subaru advertisements or representatives. *Compare Cohen,* No. 20-08442 Consolidated Amended Complaint (ECF No. 33). Merely pleading reliance is insufficient. *See Gawara v. United States Brass Corp.,* 63 Cal. App. 4th 1341, 1349–50 (1998).  Practically, it is unreasonable to assume that even if Subaru had disclosed the alleged defect on any platform, Plaintiffs would have been aware of such disclosure. Thus, the fraud claims, lacking factual support, must be dismissed under all standards.

### 4. The Hennessys' alleged ascertainable loss under the NJCFA fails.

It is clear that Plaintiffs have the responsibility to detail facts showing they have experienced an ascertainable loss. Opp'n Br. 33. Plaintiffs' references to *Canfield* and *Alpizar-Fallas* are inapposite. In those cases, the plaintiffs provided factual evidence of their real losses due to out-of-pocket expenses or other substantial harms. *Canfield v. FCA US LLC*, No. 17-1789, 2019 U.S. Dist. LEXIS 37226, at *14 (D. Del. Mar. 8, 2019); *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018). The Hennessys' assertions lack this depth, aligning more with the

---

[9] Although blatantly ignored by Plaintiffs, causation or reliance, depending on the jurisdiction, must be pleaded for both fraudulent concealment and fraud through misrepresentation.

inadequate claims dismissed in *Ponzio* and *Cohen*. Moving Br. 38-39.

### 5.     The economic loss doctrine bars the New Jersey and California fraudulent concealment claims.

Just as in *Cohen* and *Burd*, this Court should dismiss Plaintiffs' efforts to circumvent the dismissal of their fraudulent omission claims in California and New Jersey by contending that such claims fall under the fraudulent inducement exceptions. First, it is well-settled that New Jersey's fraudulent inducement exception has narrow applicability to claims where a plaintiff alleges "pre-contractual misrepresentation" (*i.e.*, affirmative misrepresentations)—not omissions or concealment. *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 465 (D.N.J. 2020).[10] Second, this Court should continue to follow the rule of law that fraudulent concealment claims do not fit within the narrow exception to economic loss rule, which "appears to remain the majority view" in the California district courts. *Joe v. Ford Motor Co.*, No. 18-02814, 2023 U.S. Dist. LEXIS 155614, at *44-45 (C.D. Cal. Aug. 30, 2023); *Alvarez v. Am. Honda Motor Co.*, No. 22-7422, 2023 U.S. Dist. LEXIS 127485, at *10 (C.D. Cal. Mar. 14, 2023). This is because "any uncertainty arising from" California's exception to the economic loss rule "should be resolved so as to limit rather than expand liability." *Joe*, 2023 U.S. Dist. LEXIS 155614, at *44. Furthermore, there is no need to address the implications of the *Dhital* decision where—as here—Plaintiff Laureano fails to allege "personal damages independent of [their] economic loss," which is another required element. Moving Br. 34–35; *see also Joe*, 2023 U.S. Dist. LEXIS 155614, at *44 (dismissing Plaintiffs' fraudulent omission claims where Plaintiff failed to allege, among others, "liability for personal damages independent of their economic loss").

---

[10] Plaintiffs' reliance on *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 592 (E.D. Mich. 2018) and *RNC Sys. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451-52, D.N.J. 2012 is ineffective. Opp'n Br. 25. In *In re FCA USA LLC*, the district court based its holding exclusively on *Coastal Group, Inc. v. Dryvit Sys., Inc.* In that case, the Appellate Division ruled that a plaintiff's NJCFA claim, premised on pre-contractual representations, was not precluded by the economic loss doctrine. This ruling stands in stark contrast to the well-settled case law in New Jersey, which distinguishes between claims of fraudulent concealment/omission and claims of fraudulent inducement. Furthermore, *RNC* addresses affirmative pre-contractual misrepresentations and does not concern omissions.

### 6.      Plaintiff Jean-Louis' fraud claims should be dismissed given his knowledge of the alleged defect when purchasing his car.

Contrary to Plaintiffs' interpretation, Subaru does not argue that reliance is dependent on "post-transaction behavior." Opp'n Br. 27. Instead, Subaru underscores the information Jean-Louis had when he *purchased* his car, not at the point of leasing. The SAC explicitly indicates that Jean-Louis knew about the alleged defect when he made his purchase, yet he opted to buy the Class Vehicle at its full price. SAC ¶¶ 33–36. This illuminates several critical considerations:

First, he was not substantially misled by any purported misrepresentations or omissions. After all, a reasonable consumer, after experiencing the opposite for three years, would not have been deceived by such claims or their absence. *Cummings*, 401 F. Supp. 3d at 304–05. Second, Subaru did not singularly possess and then conceal this information; Jean-Louis was presumably informed about the alleged defect based on personal experience driving the car for years before buying. *Womack v. Evol Nutrition Assocs.*, No. 21-00332, 2022 U.S. Dist. LEXIS 145754, at *8–9, (N.D.N.Y. Aug. 16, 2022) (dismissing a NYGBL claim based on an omission where there was publicly available information online). Third, the defect was not material and did not caused any injury because a reasonable person, who values the proper functioning of the Starlink system, would not have purchased the car knowing about the alleged defect. Here, the alleged defect formed the basis of his decision at the time of sale.[11]

While this Court must accept Plaintiffs' allegations as true, it does not have to accept the claim that Plaintiff Jean-Louis relied on Subaru's representations about the Starlink system at the time of purchase, or that these representations or omissions caused his purchase, as these allegations contradict the factual portions of the SAC, showing that the car was purchased at full price despite his knowledge of the alleged defect. *Bocker v. Hartzell Engine Techs., LLC*, No. 21-1174, 2023 U.S. Dist. LEXIS 13331, at *12–13 (D. Del. Jan. 26, 2023) (holding that contradictory allegations in the complaint need not be accepted as true).

---

[11] Subaru is not conceding that such defect exists, but instead is only drawing attention to the inherent flaw in Plaintiff Jean-Louis' argument.

**D.      Plaintiffs' unjust enrichment claims fails for multiple reasons.**

First, this Court has consistently held plaintiffs cannot assert unjust enrichment claims alternatively under Rule 8(e)(2) when, as in this case, neither party contests the validity of the NVLW. *See, e.g.*, *Lento v. Altman*, No. 22-4840, 2023 U.S. Dist. LEXIS 111221, at *42–43 (D.N.J. June 27, 2023); *see also Mohandas v. Wells Fargo Bank, N.A.*, No. 21-03349, 2023 U.S. Dist. LEXIS 121681, at *50–51 (same under California law). Second, Plaintiffs have not shown, nor claimed, a lack of a sufficient legal remedy. Moving Br. 39. Third, "[c]ourts of this District regularly dismiss unjust enrichment claims where a plaintiff fails to establish a direct relationship with an automotive manufacturer" and have rejected the minority position Plaintiffs now advance. *Stratis v. BMW of N. Am.*, *LLC*, No. 22-06929, 2023 U.S. Dist. LEXIS 72800, at *35–37 (D.N.J. Apr. 26, 2023); *see also Noble v. Samsung Elecs. Am., Inc.*, No. 15-3713, 2018 U.S. Dist. LEXIS 21545, at *16–17 (D.N.J. Feb. 8, 2018). Plaintiffs attempt to sidestep this by urging the Court to apply exceptions to the privity requirement. However, they fail to present any case where such exceptions were upheld for unjust enrichment claims.[12]

**E.      Plaintiffs lack standing for Nationwide class claims.**

Plaintiffs have not established "standing for claims under the common law of states other than those in which they purchased their class vehicles or reside." *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-10546, 2023 U.S. Dist. LEXIS 78785, at *14–15 (D.N.J. May 4, 2023). Here, the remaining Plaintiffs' common law or NJCFA claims either arise under, or depend on, six states. Plaintiffs therefore lack standing to assert state claims on behalf of class members who purchased the Class Vehicles or reside in one of the remaining forty-four states. Thus, Counts I, III, XIII, and XIX should be dismissed to the extent brought on behalf of a proposed nationwide Class of individuals residing outside of the named Plaintiffs' states.[13]

---

[12] Even if the Court were to consider these arguments, Plaintiffs still fail. *See supra* Part II.B.5.

[13] Subaru respectfully contends that *In re Valsartan*, which rejected dismissal under Rule 12 of nationwide class state law claims for lack of standing even when named plaintiffs were not from all states should be revisited. That decision relied on an opinion that misunderstood *Neale* and *Mielo* as binding precedent on the issue. No. 19-2875, 2022 U.S. Dist. LEXIS 63536, at *52 (D.N.J. Apr. 4, 2022) (citing *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, No. 20-6717, 2021 U.S. Dist. LEXIS 47791, *19 (D.N.J. Mar. 15, 2021)). In *Neale v. Volvo Cars*, the

**F.    Certain Plaintiffs' untimely claims cannot be saved by reliance on unleaded tolling arguments.**

Plaintiffs attempt to make a tolling argument to rescue the untimely claims of Jean-Louis, Laureano, Chui, and Nieves. Opp'n Br. 28–32. However, Plaintiffs do not actually plead statute of limitations tolling anywhere in the SAC. That pleading failure is fatal to any tolling argument Plaintiffs attempt to raise in opposition. *Suriaga v. GE*, No. 18-16288, 2019 U.S. Dist. LEXIS 214732, at *8 (D.N.J. Dec. 12, 2019).

## III.    CONCLUSION

For all these reasons, and the reasons stated in their moving papers, the Subaru Defendants respectfully request this Court enter an order dismissing Plaintiffs' claims as stated above and in their moving papers.

Dated: September 25, 2023

Respectfully submitted,

*s/Neal Walters*

Neal Walters (020901993)
Casey Watkins (060122014)
Kristen Petagna (324202020)
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel , NJ 08054-0015
(856) 761-3400
(856) 761-1020 fax

Attorneys for Defendants Subaru Corporation
and Subaru of America, Inc.

---

Third Circuit addressed a different question—whether absent class members are required to have Article III standing and found putative class members are not required to have Article III standing so long as at least one named plaintiff has standing. 794 F.3d 353, 359-60, 364 (3d Cir. 2015). Accordingly, *Neale* recognizes there is a threshold issue "[i]n class actions [that] at least one class representative must have experienced a concrete injury for each asserted claim." *Hickey v. Univ. of Pittsburgh*, No. 21-2016, 2023 U.S. App. LEXIS 23650, at *23 (3d Cir. 2023)(citing *Neale*, 794 F.3d at 359). Moreover, in *Mielo v. Steak 'N Shake Operations, Inc.*, the plaintiffs sought to enforce rights nationwide under the ADA and moved to enjoin defendants on a national basis by requiring the defendant to adopt corporate policies relating to ADA compliance. 897 F.3d 467, 474 (3d Cir. July 26, 2018). There, the named Plaintiffs' ADA claims arose from federal law—not the laws of their home states. Accordingly, neither *Neale* nor *Mielo* is inconsistent with the dismissal of *state* law claims asserted on behalf of a nationwide class where none of the named plaintiffs reside or purchased a vehicle (i.e. have standing) in those states. *Rieger*, 2023 U.S. Dist. LEXIS 78785, at *15.

- 15 -