**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
:
MARCO CILLUFFO *et al.*,                          :
:
        Plaintiffs,                               :
:                           Civil No. 23-1897 (RBK/MJS)
        v.                                        :
:                           **OPINION**
SUBARU OF AMERICA, INC. and                       :
SUBARU CORPORATION,                               :
:
        Defendants.                               :
_____ :

**KUGLER**, United States District Judge:

      **THIS MATTER** comes before the Court upon two motions by Defendants Subaru of

America, Inc. and Subaru Corporation ("Defendants" or "Subaru"): (1) a Petition to Compel

Arbitration and Motion to Stay Action Concerning Plaintiffs Doze, Plavnick, Fitzgerald, Griffin,

Sydoriak, MacDonald, Ferrelli, and Chui's Claims ("Motion to Stay" or "Mot. Stay") (ECF No.

37); and (2) a Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion to Dismiss"

or "Mot. Dismiss") (ECF No. 38). For the reasons set forth below, Defendant's Motion to Stay

(ECF No. 37) is **DENIED AS MOOT**, and Defendant's Motion to Dismiss (ECF No. 38) is

**GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**

      A.      **Factual Background**

      Plaintiffs bring a putative class action against Defendants on behalf of themselves "and

all similarly situated persons in the United States or residents of their respective states" who are

current and former owners or lessees of certain 2019–2023 model Subaru vehicles (the "Class

Vehicles") equipped with an allegedly defective Starlink in-vehicle infotainment system

("Starlink" or "Starlink system"). (ECF No. 23, Second Am. Compl. ¶ 1).[1] The Starlink system is a touchscreen multimedia and video interface that includes, among other things, the visual for a backup camera, controls for the audio and radio system, cell phone connectivity, the navigation system, and other features. (*Id.* ¶ 2).

Plaintiffs claim, in short, that the Starlink system does not live up to its billing as a product providing "seamless navigation," "extra safety," and "everyday convenience." (*Id.* ¶ 4). Instead, they argue, the Starlink system causes "serious inconvenience" and "safety concerns for lessees and owners, their passengers, and other drivers on the road." (*Id.*). Specifically, Plaintiffs claim that the Starlink system suffers from a latent defect that causes the system to "freeze, become non-responsive, experience 'ghost touch' or phantom input, shut off, reboot, work intermittently or not at all, and suffer other malfunctions." (*Id.* ¶ 5). Plaintiffs allege that some of these malfunctions result in the disabling of key safety features such as EyeSight, which Defendants advertise as a life-saving feature in their Class Vehicles. (*Id.*). Plaintiffs further allege that Subaru learned of the defect through pre-release vehicle testing; related service bulletins drawing attention to the issue; numerous consumer complaints to the National Highway Traffic Safety Administration (NHTSA); complaints on Subaru online message boards; and consumers who brought in their Class Vehicles for repairs related to the issue. (*Id.* ¶¶ 6–7).

---

[1] Plaintiffs' Second Amended Complaint initially included sixteen individually named Plaintiffs. At this stage, only eight individually named Plaintiffs remain following the voluntary dismissal of Plaintiffs Doze, Plavnick, Fitzgerald, Griffin, Sydoriak, MacDonald, Ferrelli, and Chui. *See* (ECF No. 41). The remaining individually named Plaintiffs include: Marco Cilluffo, a resident of New Hampshire; Jeffrey Quarles, a resident of Washington; Carl Jean-Louis, a resident of New York; Randall Laureano, a resident of California; Edwin Nieves, a resident of California; Nancy and Thomas Hennessy, residents of New Jersey; and Jill Yesko, a resident of Maryland. (Second Am. Compl. ¶¶ 16, 21, 31, 37, 51, 70, 101). We address these Plaintiffs' individual facts in the sections corresponding to their respective state statutory claims. *See* Part IV.B–C, *infra*.

Plaintiffs assert that Defendants were likely aware of the vulnerabilities with its Starlink system because it settled a class action lawsuit in 2019 in this Court centering on similar issues in model year 2017 and 2018 Subaru vehicles.[2] (*Id.* ¶ 9). Plaintiffs also assert that many owners and lessees have had to take their vehicles to their respective dealerships, often on multiple occasions, and continue to have problems with their Starlink systems. (*Id.* ¶ 10).

Plaintiffs' claims consist of violations of New York, New Hampshire, Washington, California, Maryland, and New Jersey state consumer protection laws, breaches of express and implied warranties, common law fraud, and unjust enrichment. (*Id.* ¶ 11). Plaintiffs seek to certify a Nationwide Class, or in the alternative, a series of State Classes corresponding with the home state of each individually named Plaintiff, which at this stage include California, Maryland, New Hampshire, New Jersey, New York, and Washington. (*Id.* ¶¶ 148–49).

Defendant Subaru Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. (*Id.* ¶ 119). Defendant Subaru of America, Inc., is a New Jersey corporation with its principal place of business in Camden, New Jersey. (*Id.* ¶ 120). Subaru of America, Inc., operates as a wholly owned U.S. sales and marketing subsidiary of Defendant Subaru Corporation, (*id.*), and Plaintiffs contend that there is a unity of ownership between Defendants Subaru Corporation, Subaru of America, Inc., and their agents, such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. (*Id.* ¶ 122). Plaintiffs further contend that the design, manufacture, distribution, service, repair, modification, and installation of the Starlink system within the Class Vehicles was controlled exclusively by the Defendants. (*Id.* ¶ 121).

---

[2] *See Udeen, et al. v. Subaru of America, Inc., et al.*, Civ. No. 18-17334 (D.N.J. June 30, 2020) (Kugler, J.) (granting final approval of a class action settlement between plaintiffs and Subaru relating to a similar defect in the Starlink system in 2017 and 2018 vehicles).

### B.     Procedural History

Plaintiffs filed an initial Complaint on April 4, 2023. (ECF No. 1, Compl.). On April 26, 2023, Plaintiffs filed an Amended Complaint. (ECF No. 11, Am. Compl.). On May 10, 2023, the parties stipulated to a briefing schedule and consented to Plaintiffs filing a second amended complaint. (ECF No. 22.) On May 26, 2023, Plaintiffs filed their Second Amended Complaint. (ECF No. 23, Second Am. Compl.). On August 8, 2023, Defendants filed two separate motions: (1) a Petition to Compel Arbitration and Stay Action Concerning Plaintiffs Doze, Plavnick, Fitzgerald, Griffin, Sydoriak, MacDonald, Ferrelli, and Chui's Claims (the "Arbitration Plaintiffs"), alleging that those eight Plaintiffs were bound by an arbitration provision and class action waiver (ECF No. 37, Mot. Stay); and (2) a Motion to Dismiss Plaintiffs' Second Amended Complaint for failure to state a claim. (ECF No. 38, Mot. Dismiss).

On August 25, 2023, the Arbitration Plaintiffs filed a Notice of Voluntary Dismissal, (ECF No. 41), which this Court approved in an Order on August 29, 2023. (ECF No. 42, Voluntary Dismissal Order).[3] On September 8, 2023, the remaining Plaintiffs filed a brief opposing Defendants' Motion to Dismiss. (ECF No. 43, Opp. Br.). On September 25, 2023, Defendants filed a reply to Plaintiffs' opposition brief. (ECF No. 44, Reply Br.). The matter is fully briefed and ripe for review.

## II.     JURISDICTION

The Court has subject-matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2)(A) (the "Class Action Fairness Act of 2005" or "CAFA"). Plaintiffs brought the matter as a putative class action under Federal Rule of Civil Procedure 23 and allege that at least

---

[3] The Arbitration Plaintiffs dismissed their individual claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

one proposed class member is of diverse citizenship from Defendants, the proposed nationwide

class includes more than 100 members, and the aggregate amount in controversy exceeds

$5,000,000. *See* § 1332(d)(2)(A). The parties do not contest personal jurisdiction or the amount

in controversy. The parties do, however, contest choice of law for the numerous common-law

claims in the Second Amended Complaint. We decline to rule on these claims prior to further

factual discovery. *See* Part IV.A, *infra*. Because we also decline to make any class or standing

determinations at this early stage, we will focus on the claims corresponding to the individually

named Plaintiffs for purposes of resolving Defendants' Motion to Dismiss. *See In re K-Dur*

*Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (declining to address Article III standing

prior to determining class certification). As such, this Court has subject-matter jurisdiction under

CAFA to hear the case.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to

state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a

motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster*

*Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a

plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV.   DISCUSSION

Plaintiffs' Second Amended Complaint contains a total of nineteen claims, including violations of New York, New Hampshire, Washington, California, Maryland, and New Jersey state consumer protection laws and common-law claims for breaches of express and implied warranties, fraud, and unjust enrichment. (Second Am. Compl. ¶ 11). Since the instant motion to dismiss was filed, five of these claims have been mooted as a result of the Arbitration Plaintiffs' voluntary dismissals.[4] *See* (ECF No. 41). Because the Arbitration Plaintiffs and their respective claims are no longer involved in this action, we deny Defendants Motion to Stay (ECF No. 37, Mot. Stay) as moot.

We therefore focus our attention on Defendants' Motion to Dismiss and address the remaining fourteen counts in Plaintiffs' Second Amended Complaint: (1) the four common-law claims brought on behalf of the proposed Nationwide Class; and (2) the ten claims brought under state consumer protection law.[5]

---

[4] Counts VII, XV–XVIII.

[5] Each of Plaintiffs' state statutory claims correspond with the home state of an individually named Plaintiff and their putative State Class. Because we decline to rule on class certification at this stage, we address the state claims only as they relate to each individually named Plaintiff.

### A.  Nationwide Common-Law Claims and Choice of Law

In Counts I–III and XIX, Plaintiffs bring common-law claims for fraud/fraudulent concealment, warranty, and unjust enrichment on behalf of the individually named plaintiffs and putative classes. (Second Am. Compl. ¶¶ 159–88, 373–79). The parties dispute choice of law on these claims and whether it would be premature for the Court to conduct a choice-of-law analysis at the motion to dismiss stage. *See* (Mot. Dismiss at 7–11; Opp. Br. at 8–11; Reply Br. at 2).

Federal courts with diversity jurisdiction must apply the choice-of-law principles of the forum state. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). New Jersey follows the "most significant relationship" test, a "case-by-case, qualitative analysis" consisting of two prongs. *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293 (D.N.J. 2009) (citing *P.V. ex rel T.V. v. Camp Jaycee*, 962 A.2d 453, 460–61 (N.J. 2008)). The first prong requires a court to examine the substance of the potentially applicable laws to determine whether an actual conflict exists. *Camp Jaycee*, 962 A.2d at 460 (citing *Lebegern v. Forman,* 471 F.3d 424, 430 (3d Cir. 2006)). If no conflict exists, the analysis ends, and the court applies the law of the forum state. *Id.* at 461. If a conflict does exist, the court turns to the second prong, which requires the court to weigh the factors enumerated in the Restatement section corresponding to the underlying cause of action. *Id.*; *see also* Restatement (Second) Conflict of Laws § 6 (1971).

The Court declines to make any choice-of-law determinations at this stage of the litigation because we find such an analysis to be premature.[6] Specifically, more facts are needed

---

[6] In this way, we agree with Plaintiffs' assertion that "Defendants fail to make any compelling showing as to why the choice of law issue should be determined at this early stage of the litigation, without a full factual record upon which the court may rely in its decision making" and that the Court "should follow well-established precedent and defer this issue until the factual record is developed further." (Opp. Br. at 9).

to adequately address the second prong of the most significant relationship test, an analysis that courts have repeatedly cautioned is "very fact intensive" and "should not be undertaken where a full factual record is required." *See Arcand*, 673 F. Supp. at 293; *see also Harper v. L.G. Elecs.*, 595 F. Supp. 2d 486, 490–91 (D.N.J. 2009) (declining to make choice-of-law determination on motion to dismiss where factual record was insufficient); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 257 (3d Cir. 2010) (Ambro, J., dissenting) (expressing dismay that the majority, in choosing to undertake its own choice-of-law analysis at the motion to dismiss stage, "conduct[ed] a fact-intensive, six-factor inquiry in two sentences"). In so doing, we follow the guidance of other courts in this District that have declined to make choice-of-law rulings at similarly early stages in a complex action. *See, e.g.*, *Arcand*, 673 F. Supp. at 295 (finding that the "fact sensitive analysis" of the second prong cannot be performed on a record consisting solely of a complaint and motion to dismiss); *In re Liquid Aluminum Sulfate Antitrust Litig.*, Civ. No. 16-2687, 2017 WL 3131977, at *16 (D.N.J. July 20, 2017) (declining to conduct choice-of-law analysis when further discovery was needed); *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, Civ. No. 12-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (finding choice-of-law analysis premature at the motion to dismiss stage); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (finding choice-of-law analysis premature at the motion to dismiss phase of a class action); *In re Samsung DLP Television Class Action Litig.*, Civ. No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (same).

The eight remaining Plaintiffs hail from six different states—California, Maryland, New Hampshire, New Jersey, New York, and Washington—and the parties may argue for still other states' laws to apply to the common-law claims if the Nationwide Class were to be certified. Moreover, any choice-of-law determinations may have a direct impact on the certifiability of the

proposed classes, giving us further cause to exercise caution in this area. *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 541 (citing *Amchem Prod. v. Windsor*, 521 U.S. 591, 623–24 (1997) (finding that common issues of law did not predominate where class members were from a variety of states requiring application of multiple different legal standards)).

Because this Court finds a choice-of-law analysis to be inappropriate at this stage, we decline to rule on the four common-law claims brought on behalf of the Nationwide Class. We therefore limit our review to Plaintiffs' claims where choice of law is not in question. Accordingly, we deny Defendants' Motion to Dismiss with regard to Counts I–III and XIX.

### B.     State Statutory Consumer Fraud Claims

We turn next to Plaintiffs' eight fraud claims brought under a variety of state consumer protection laws. Under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (cleaned up). To satisfy this standard, the plaintiff must plead the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

#### i.     Count IV – Violation of New Hampshire Consumer Protection Act

Plaintiff Cilluffo claims that Defendants violated the New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. Ann. § 358-A:2. To state a valid claim under § 358-A:2 of the NHCPA, a plaintiff must demonstrate that the defendant engaged in an "unfair method of competition" or an "unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 107 (D.N.H. 2020) (quoting N.H. Rev. Stat. Ann. § 358-A:2). A misrepresentation is made "within this state" for

purposes of the NHCPA "whenever a person receives a misrepresentation in the State of New Hampshire." *Id.* (citing *Environamics Corp. v. Ferguson Enters., Inc.*, Civ. No. 00-579, 2001 WL 1134727, at *4 (D.N.H. Sept. 24, 2001)).

Plaintiff Cilluffo alleges that by selling the Class Vehicles while allegedly omitting or concealing the Starlink system defect, Defendants engaged in at least the following violations of the NHCPA: (1) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; (2) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and (3) "Advertising goods or services with intent not to sell them as advertised." (Second Am. Compl. ¶ 194); N.H. Rev. Stat. Ann. § 358-A:2(V), (VII), (IX).

Plaintiff Cilluffo pleads that in or around December 2021, he purchased a new 2021 Subaru WRX from Prime Subaru, an authorized Subaru dealer and repair center located in Manchester, New Hampshire. (*Id.* ¶ 17). After experiencing problems with the Starlink system within the first six months of his purchase, Plaintiff Cilluffo took in his vehicle for service at Prime Subaru and informed the dealership of the problems he was having. (*Id.* ¶ 19). In or around August 2022, he took his vehicle to another dealership, Granite Subaru in Hudson, New Hampshire, and reported the same problems. (*Id.*). On both occasions, he was told there was nothing the dealerships could do to address the issues, and he continued to experience the Starlink system defect. (*Id.*). Plaintiff Cilluffo alleges that had Defendants disclosed the defect on their website, through their dealerships, in their warranty manuals, or elsewhere prior to his purchase of the Class Vehicle, he would not have bought the vehicle or paid the same purchase price. (*Id.* ¶ 20).

We find that Plaintiff Cilluffo has sufficiently pleaded a claim under the NHCPA. Construing Plaintiffs' facts as true, *see Iqbal*, 556 U.S. at 679, Defendants plausibly engaged in an "unfair or deceptive act or practice" in its sale of a Class Vehicle containing the Starlink system in the state of New Hampshire. *See Ortiz*, 448 F. Supp. 3d at 107. Plaintiff Cilluffo—like the other Plaintiffs in this matter—was promised a product that offers "seamless navigation," "extra safety," and "everyday convenience." (Second Am. Compl. ¶ 4). His problems with the system indicate that he received less than the "standard" and "quality" of the product than was represented at the time of his purchase. *See* N.H. Rev. Stat. Ann. § 358-A:2. These pleaded facts also "inject precision or some measure of substantiation," *see Frederico*, 507 F.3d at 200, and detail how Defendants were possibly aware that the Starlink system was defective at the time Plaintiff made his purchase. *See* (Second Am. Compl. ¶¶ 6–7, 9). In this way, Plaintiff's claims meet the heightened pleading standards under Rule 9(b) by establishing with sufficient particularity the circumstances of Defendants' alleged fraudulent activity, thereby putting Defendants on notice of the "precise misconduct with which [they are] charged." *See* Fed. R. Civ. P. 9(b); *Frederico*, 507 F.3d at 200.

We are not required at this stage to determine as a matter of law whether the issues in the Starlink system may be considered a "defect" or whether Defendants were actually aware of these issues at the time Plaintiff Cilluffo purchased the Class Vehicle. Rather, for Plaintiff's NHCPA claim to survive a motion to dismiss, we need only find that Plaintiff's facts alleging the same were well-pleaded and plausibly give rise to an entitlement for relief. *See Iqbal*, 556 U.S. at 679. Plaintiff Cilluffo has done so here. Accordingly, we deny Defendants' Motion with regard to Count IV.

    ii.        <u>Count V – Violation of New York General Business Law § 349</u>

Plaintiff Jean-Louis claims that Defendants violated New York General Business Law § 349. The statute reads: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). To state a claim of consumer fraud under the statute, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

In or around July 2019, Plaintiff Jean-Louis leased a new 2019 Subaru WRX from Hassett Subaru, an authorized Subaru dealer and repair center located in Wantagh, New York. (Second Am. Compl. ¶ 32). Near the end of the three-year lease, in or around February 2022, he purchased the Class Vehicle. (*Id.* ¶ 33). Plaintiff Jean-Louis noticed problems with the Starlink system "[s]oon after leasing the vehicle," and he informed the dealership about the issue in or around October 2019 during a service appointment. (*Id.* ¶ 35). He claims that at the time of leasing and subsequently purchasing the Class Vehicle, he did not know that it was equipped with a "known defect in the Starlink system." (*Id.* ¶ 36).

Plaintiff claims that Subaru's sale of Class Vehicles with an allegedly defective Starlink system is a "deceptive act or practice" that had an impact on consumers at large under § 349. (*Id.* ¶ 203–04). Plaintiff alleges that, had he been aware that the Class Vehicles he purchased and leased was defective, he would have either not purchased and leased the vehicle or he would have paid significantly less for it. (*Id.* ¶ 36).

Plaintiff Jean-Louis, however, was aware of the problems with the Starlink system prior to his post-lease purchase of the Class Vehicle in 2022. Specifically, he alleges that he started

experiencing problems with the system "soon after leasing" the vehicle and nevertheless elected to purchase the same vehicle—Starlink system and all.(*Id.* ¶ 35). In this way, it is not plausible that Plaintiff Jean-Louis purchased the car as a result of Defendants' material misrepresentations of the Starlink system, as any alleged problems would have already been known to him. His purchase of the car notwithstanding these problems therefore negates any subsequent claim of misrepresentation on Defendants' part.

For this reason, Plaintiff Jean-Louis fails to meet the § 349 pleading requirement that the consumer-oriented activity be "misleading in a material respect." *See Spagnola*, 574 F.3d at 74. Accordingly, Plaintiff Jean-Louis has failed to plead a claim under § 349, and we grant the Motion with respect to Count V.

   iii.  <u>Count VI – Violation of the Washington Consumer Protection Act</u>

Plaintiff Quarles claims that Defendants violated the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code §§ 19.86.010 *et seq.* The WCPA states: "Unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce are hereby declared unlawful." § 19.86.020. An adequately pleaded WCPA claim contains five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; and (4) causing; (5) injury to business or property. *Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986).

Plaintiff Quarles purchased a new 2019 Subaru Forester from Rairdon's Subaru of Auburn, an authorized Subaru dealer and repair center located in Auburn, Washington. (Second Am. Compl. ¶ 22). He experienced problems with the Starlink system "soon after purchase," and visited Rairdon's Subaru numerous times between January 2020 and April 2022 to inform the dealership of the issues. (*Id.* ¶ 24). Plaintiff Quarles did not know that his vehicle was equipped

with an allegedly defective Starlink system at the time of purchase, and he would not have purchased it or paid the same purchase price if he had known. (*Id.* ¶ 25).

For substantially the same reasons as Count IV, *supra*, we find that Plaintiff Quarles has adequately pleaded a claim for fraud under the WCPA. Plaintiff Quarles has sufficiently alleged that Defendants, in selling Plaintiff Quarles an allegedly defective Starlink system without his knowledge of its problems, engaged in an unfair or deceptive act that occurred in trade or commerce that had a public interest impact and caused injury to Plaintiff Quarles's property. *See Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d at 535. Defendants' Motion with respect to Count VI is denied.

### iv. Counts X–XII – Violation of California's False Advertising Law; Consumer Legal Remedies Act; and Unfair Competition Law

Plaintiffs Laureano and Nieves claim violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*,[7] Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*,[8] and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*[9] Because the same standard for fraudulent activity governs all three statutes, courts tend to analyze the three statutes together. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) ("Courts often analyze these statutes together because they share similar attributes."); *Consumer Advocates v.*

---

[7] The FAL prohibits the dissemination of any statement concerning property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

[8] The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). One practice proscribed by the CLRA is "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." *Id.* § 1770(a)(7).

[9] The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200.

*Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 29 (Cal. Ct. App. 2003) (reviewing claims under the UCL, FAL, and CLRA together).

To state a claim under the FAL, CLRA, and UCL, a plaintiff must allege facts satisfying the "reasonable consumer" standard—that is, whether members of the public are likely to be deceived. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003). "Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

In or around February 2019, Plaintiff Laureano purchased a new 2019 Subaru WRX STI from Subaru Pacific, an authorized Subaru dealership located in Hawthorne, California. (Second Am. Compl. ¶ 38). Prior to the purchase, he inspected the "Monroney" window sticker posted by Defendants on his vehicle, which did not mention the Starlink issues. (*Id.*).[10] Plaintiff Laureano began experiencing problems with the Starlink system "shortly after purchasing" his vehicle. (*Id.* ¶ 40). He called Subaru Pacific "approximately three months after he bought his vehicle" to report the problems he was experiencing with the system and to request help resolving the issues. (*Id.* ¶ 41). The dealership informed him that the issues he was experiencing were "normal," and it took no measures to remedy the Starlink system. (*Id.*). Plaintiff Laureano was not aware of the

---

[10] Plaintiffs allege that Defendants create and provide the applicable warranties for the Class Vehicles, as well as jointly design, determine the substance of, and affix to Subaru vehicles the window stickers visible on every new Subaru vehicle—called "Monroney" stickers—offered for sale at their authorized dealerships. (Second Am. Compl. ¶ 125). Defendants control the content of these "Monroney" stickers, and their authorized dealerships have no input with respect to their content. (*Id.*).

issues with the Starlink system at the time of purchase, and he claims that he relied on Defendants' representations and omissions regarding the functioning of the Starlink system in purchasing the vehicle. (*Id.* ¶ 42). He claims that he would not have purchased the vehicle, or would have paid a substantially different price, had he known of the Starlink issues. (*Id.*).

In or around October 2018, Plaintiff Nieves purchased a new 2019 Subaru WRX STI from Kearny Mesa Subaru, an authorized Subaru dealer and repair center located in San Diego, California. (*Id.* ¶ 52). He began experiencing issues with the Starlink system within a year of purchasing the vehicle. (*Id.* ¶ 54). To address the problem, he took in his vehicle for dealership inspections on numerous occasions: to RK Subaru in April 2019; Kearny Mesa Subaru in January 2020, October 2020, and June 2021; and Cypress Coast Subaru in October 2020. (*Id.*). Each time, he was given a software update, but the updates did not fix the issues with the system. (*Id.*). Plaintiff Nieves claims he was not aware of the issues with the Starlink system at the time of purchase and that he relied on Defendants' representations and omissions regarding the functioning of the Starlink system when purchasing the vehicle. (*Id.* ¶ 55). He claims that he would not have purchased the vehicle, or would have paid a substantially different price, had he known of the issues with the Starlink system. (*Id.*).

Defendants argue that all three of Plaintiffs Laureano and Nieves's claims under the FAL, CLRA, and UCL are untimely. (Mot. Dismiss at 37). The operative statutes provide for three- or four-year limitations periods for Plaintiffs' claims. *See* Cal. Code Civ. Proc. § 338(a) (three-year period for FAL); Cal. Civ. Code § 1783 (three-year period for CLRA); Cal. Bus. & Prof. Code § 17208 (four-year period for UCL); Cal. Com. Code § 2725 (four-year period for breach of warranty); *see also Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 882 (N.D. Cal. 2019) (citing same). Plaintiffs argue that because Subaru intentionally concealed material facts at the

time Plaintiffs purchased or leased their Class Vehicles, and continue to do so today, equitable tolling should apply "to *all* Plaintiffs' claims challenged as untimely"—including the Plaintiffs Laureano and Nieves. (Opp. Br. at 31 (emphasis in original)). In support, Plaintiffs cite numerous California class actions in which courts have held that fraudulent concealment tolls the statute of limitations for California fraud actions. *See, e.g.*, *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007) ("A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable."); *Philips v. Ford Motor Co.*, Civ. No. 14-2989, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) ("Several courts have determined that fraudulent concealment tolling applies to claims brought under the Song–Beverly Act."); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, Civ. No. 03-4558, 2008 WL 4126264, at *22 n.12 (D.N.J. Sept. 2, 2008) (recognizing the availability of "principles of fraudulent concealment or equitable tolling as methods of tolling . . . their unjust enrichment claims").

"In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Mills v. Forestex Co.*, 134 Cal. Rptr. 2d 273, 286 (Cal. Ct. App. 2003). Moreover, under Rule 9(b)'s heightened pleading requirements, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.")).

17

We have already declined to address Plaintiffs' underlying claim of fraudulent concealment in Count I because of the complications posed by the choice-of-law issue. *See* Part IV.A, *supra*. Because Plaintiffs' tolling argument rests upon a determination of whether Plaintiffs have adequately pleaded fraudulent concealment, we also decline to address Defendants' statute of limitations argument relating to Plaintiffs' FAL, CLRA, and UCL claims. It is possible that Plaintiffs adequately pleaded fraudulent concealment, and that, as a result, equitable tolling appropriately applies to Counts X–XII. To assess whether Plaintiffs have met this burden, however, requires this Court to review the sufficiency of the underlying fraudulent concealment claim in Count I, which we have already expressed an unwillingness to do at the motion to dismiss stage. Therefore, for the same reasons that we consider choice-of-law determination to be premature, we also consider the determination of whether Counts X–XII are time-barred to be premature. Accordingly, we deny Defendants' Motion as to Counts X–XII.

     v.     <u>Count XIII – Violation of the New Jersey Consumer Fraud Act</u>

Plaintiffs Thomas and Nancy Hennessy bring claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.* To state a claim under the NJCFA, a plaintiff must allege that: (1) the defendant engaged in an unlawful practice; (2) the plaintiff suffered an ascertainable loss; and (3) there exists a causal relationship between the defendant's unlawful practice and the plaintiff's loss. *Frederico*, 507 F.3d at 202–03.[11]

In August 2022, the Hennessy Plaintiffs purchased a new 2022 Subaru Outback from Pinebelt Subaru, an authorized Subaru dealership located in Lakewood, New Jersey. (Second

---

[11] An "unlawful practice" is defined in N.J. Stat. Ann. § 56:8-2 as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or

Am. Compl. ¶ 71). Within weeks of purchasing the vehicle, they experienced problems with the Starlink system, wherein it would "unexpectedly freeze, lag, and blackout completely" while the vehicle was in use. (*Id.* ¶ 73). That same month, the Hennessy Plaintiffs brought the vehicle to the Pinebelt dealership to alert them of the issue, and the dealership provided a software update that only briefly resolved the issue. (*Id.* ¶ 74). In May 2023, they brought the vehicle to the dealership a second time and received another software update that did not resolve the issue. (*Id.* ¶ 75). The Hennessy Plainitffs did not know that the vehicle had a defective Starlink unit at the time of purchase. (*Id.* ¶ 78). They allege that if they had known, they would not have purchased the vehicle or paid the same purchase price. (*Id.*).

For substantially the same reasons as Count IV, *supra*, we find that the Hennessy Plaintiffs have adequately pleaded a claim for fraud under the NJCFA. The Hennessy Plainitffs have sufficiently alleged that Defendants, in selling the Plaintiffs an allegedly defective Starlink system without their having any knowledge of its problems, engaged in an unlawful practice as defined by the NJCFA that caused the Hennessy Plaintiffs an ascertainable loss. *See Frederico*, 507 F.3d at 202–03. Defendants' Motion with respect to Count XIII is denied.

vi.      Count XIV – Violation of the Maryland Consumer Protection Act

Plaintiff Yesko claims violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101(1), *et seq.* To state a claim under the MCPA, a plaintiff must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md. Feb. 20, 2014) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

---

omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person . . . .

Plaintiff Yesko alleges that Defendants violated the MCPA by: (1) Failing to disclose material facts that deceived and had the tendency to deceive; and (2) engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) the promotion or sale of consumer goods or services; or (ii) the subsequent performance of a merchant with respect to an agreement of sale or lease. (Second Am. Compl. ¶ 316); Md. Code Ann., Com. Law §§ 13-101(3), (9)(i) and (iii).

In or around August 2020, Plaintiff Yesko purchased a 2020 Subaru Outback from Heritage Subaru, an authorized Subaru dealership located in Catonsville, Maryland. (Second Am. Compl. ¶ 102). She claims that she bought the vehicle "with the full expectation that it would be as safe and reliable as her prior Subaru vehicles." (*Id.* ¶ 103). She claims she relied upon Defendants' advertising on their vehicles' reliability and safety. (*Id.*). She also claims that she read online reviews of the 2020 Subaru Outback prior to her purchase, and none mentioned any defect with the Starlink system. (*Id.*). Plaintiff Yesko alleges that she started experiencing problems with the Starlink system "[w]ithin a few months after purchasing the vehicle and while it was still under warranty," including while driving on the freeway. (*Id.* ¶ 104–05). She alleges that within the past two years, she has taken the vehicle to Heritage Subaru "for investigation and repair of the defect on multiple occasions." (*Id.* ¶ 106). On these occasions, she alleges that "Subaru's dealership representative admitted both awareness of the issues" and that there were "numerous other individuals complaining of the same defect." (*Id.*). She claims that she would not have purchased the vehicle, or would not have paid the same purchase price, had she known of the issues with the Starlink system at the time of purchase. (*Id.* ¶ 108).

Plaintiff Yesko claims that Defendants concealed, suppressed, or omitted material facts relating to the Starlink system in conducting trade or commerce with the intent that Plaintiff Yesko would reasonably rely on the omission of these facts in the purchase of her vehicle. (*Id.* ¶ 318). She contends that Defendants are actively concealing material information about the vehicles and the Starlink system by representing to Plaintiff Yesko and others that the vehicles are defect-free or otherwise omitting related material facts to the contrary. (*Id.* ¶ 319).

For substantially the same reasons as Count IV, *supra*, we find that Plaintiff Yesko has adequately pleaded a claim under the MCPA. Plaintiff Yesko has sufficiently alleged that Defendants, in selling Plaintiff Yesko an allegedly defective Starlink system without her having any knowledge of its problems, engaged in an unfair or deceptive practice under the MCPA that Plaintiff Yesko relied upon in making her purchase of the Class Vehicle, resulting in a purchase she would not have made had she known of the issues with the Starlink system. *See Bey*, 997 F. Supp. 2d at 319. As such, Defendants' Motion with respect to Count XIV is denied.

**C.      State Statutory Contract Claims**

Lastly, we turn to Plaintiffs Laureano and Nieves's two warranty claims under California's Song–Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*

i.     Count VIII – Violation of the Song–Beverly Consumer Warranty Act for
       Breach of Express Warranties

Plaintiffs Laureano and Nieves brings statutory claims for beach of express warranty under Cal. Civ. Code §§ 1791.2[12] and 1793(d).[13] Plaintiffs stating a breach of express warranty claim under the Song–Beverly Act must meet the following elements: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repairs. *Gonzalez v. Ford Motor Co.*, Civ. No. 19-652, 2019 WL 1364976, at *5 (C.D. Cal. Mar. 22, 2019) (citing *Arteaga v. Carmax Auto Superstores W. Coast, Inc.*, Civ. No. 14-1888, 2014 WL 3505527, at *3 (C.D. Cal. July 11, 2014)).

The Plaintiffs allege that Defendants provided them with express warranties regarding their respective Class Vehicles as defined in the statutes, "including that the Starlink system would function properly." (Second Am. Compl. ¶ 233). They allege that Defendants breached the express warranty by selling and leasing vehicles with the alleged Starlink defect and subsequently refusing to remedy the defect, which Plaintiffs allege requires Defendants to

---

[12] Cal. Civ. Code § 1791.2 defines "express warranty" as:

> (1) A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance; or
> (2) In the event of any sample or model, that the whole of the goods conforms to such sample or model.

[13] Cal. Civ. Code § 1793(d)(2) states in relevant part:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer.

provide free repairs or replacements. (*Id.* ¶ 234). Defendants failed to promptly replace or buy back the Class Vehicles from Plaintiffs Laureano and Nieves. (*Id.*).

Defendant Subaru Corporation refutes that it made any express warranties regarding the Starlink system with respect to Plaintiffs' vehicles because any such warranty would have been made solely by Defendant Subaru of America. (Mot. Dismiss at 14). Additionally, they argue that Plaintiff Laureano fails to allege that he sufficiently presented his vehicle to an authorized dealership as required by the statute. (*Id.* at 22–23).

Because we are still at an early stage of a complex class action, the Court declines to distinguish the liability or severability of Defendants Subaru Corporation and Defendant Subaru of America at this juncture. *See also* (Second Am. Compl. ¶ 122 (pleading that there is a unity of ownership between Defendants Subaru Corporation and Subaru of America)). Thus, for the purposes of resolving this Motion to Dismiss, we treat Defendants as indistinguishable entities and consider as true Plaintiffs' claim that an express warranty was made regarding the Starlink system. *See Iqbal*, 556 U.S. at 679. We therefore turn to whether Plaintiffs sufficiently presented the issue to an authorized representative for repair, as required by the statute.

It is not disputed that Plaintiff Nieves sufficiently presented his vehicle for repair; he did so on at least five occasions. *See* (Second Am. Compl ¶ 54). Defendants dispute, however, whether Plaintiff Laureano sufficiently presented the problems with the Starlink to his dealership or made a "reasonable number of attempts" to do so pursuant to § 1793(d)(2). *See* (Mot. Dismiss at 22–23). As discussed above, Plaintiff Laureano made his problems with the Starlink system known by calling his dealership, Subaru Pacific, "approximately three months after he bought his vehicle" to report the problems he was experiencing with the system and to request help resolving the issues. (Second Am. Compl. ¶ 41). The dealership informed him on that call that

the issues he was experiencing were "normal," and it took no measures to remedy the Starlink system in his vehicle. (*Id.*). As a result of this call, Plaintiffs argue that Defendants' inability to fix the problem excused Plaintiff Laureano from any presentment requirement. (Opp. Br. at 15).

"Generally, a plaintiff can sustain a breach of express warranty claim despite a lack of presentment when presentment would be futile." *Bolooki v. Honda Motor Co. Ltd.*, Civ. No. 22-4252, 2023 WL 2627015, at *3 (C.D. Cal. Mar. 10, 2023) (citations omitted); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) (acknowledging that futility may be a basis for an excuse from presentment requirement). Plaintiffs argue that presentment was clearly futile in this instance due to the widespread nature of the Starlink defect and because of Defendants' assertion that the Starlink issues were "normal." (Opp Br. at 14).

The Court agrees. Based on Subaru Pacific's assurance to Plaintiff Laureano that the Starlink problems were "normal"—and in light of Plaintiff Nieves seeking repairs to no avail on five occasions—it is plausible that any further attempt by Plaintiff Laureano to remedy the issue would have been futile. In the larger context of this case, Plaintiffs can plausibly plead that futility exists with regard to Plaintiff Laureano and that no "reasonable number of attempts," *see* § 1793(d)(2), would have prompted the sufficient repair of his Starlink system.

Accordingly, because Plaintiffs Laureano and Nieves have adequately pleaded that their Starlink systems were covered by an express warranty provided by at least one of the Defendants, that their systems were sufficiently presented to an authorized dealership for repair, and that the dealerships did not repair the issue after a reasonable number of repairs, we find that they have made a plausible claim for breach of express warranty under the Song–Beverly Act. *See Gonzalez*, 2019 WL 1364976, at *5. Defendant's Motion regarding Count VIII is denied.

      ii.       <u>Count IX – Violation of the Song–Beverly Consumer Warranty Act for</u>
<u>Beach of Implied Warranties</u>

Lastly, Plaintiffs bring a claim for breach of implied warranty under the Song–Beverly

Act, Cal. Civ. Code §§ 1791.1 and 1792. As a threshold matter, Defendants argue that Count IX

is untimely. Breach of implied warranty claims under the Song–Beverly Act have a four-year

statute of limitations stemming from the date of purchase. *MacDonald v. Ford Motor Co.*, 37 F.

Supp. 3d 1087, 1100 (N.D. Cal. Mar. 31, 2014) (holding that the four-year statute of limitations

of Cal. Civ. Code § 2725 applies to Song–Beverly implied warranty claims and recognizing that

"the latest each Plaintiff could have brought a claim was four years after the car was

purchased"). Because Defendants' timeliness claim rests upon whether Plaintiffs' claim can be

tolled due to fraudulent concealment, we decline to rule on the timeliness of Count IX for the

same reasons expressed in Counts X–XII. *See* Part IV.B(iv), *supra*. We also suspend our review

of the underlying merits, because doing so requires examining the same privity and reliance

relationships underpinning the common-law breach of implied warranty claim in Count III. As

discussed, *see* Part IV.A, *supra*, such an analysis would be premature. Accordingly, we deny

Defendants' Motion as to Count IX.

## V.      CONCLUSION

For these reasons, Defendant's Motion to Stay (ECF No. 37) is **DENIED AS MOOT**.

Defendant's Motion to Dismiss (ECF No. 38) is **GRANTED IN PART** and **DENIED IN**

**PART**. An Order follows.

Dated:  March 26, 2024                 /s/ Robert B. Kugler
                                         ROBERT B. KUGLER
                                         United States District Judge